IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: 1-20-CR-239 |
| v. | ) | Hon. T.S. Ellis III |
| | ) | |
| EL SHAFEE ELSHEIKH, | ) | |
| | ) | |
| Defendant. | ) | Trial: January 18, 2022 |

**THE UNITED STATES' OBJECTIONS TO
DEFENDANT'S PROPOSED JURY INSTRUCTIONS**

I.      Identical Instructions .................................................................................. 2

II.     Additional Instructions to which the Government Has No Objection ................... 2

III.    Objections. ................................................................................................ 3

        A.    Defense Instruction #6: Presumption of Innocence, Burden of
              Proof, and Reasonable Doubt ..................................................... 3

        B.    Defense Instruction #10: Transcripts of Recordings ................................. 5

        C.    Defense Instruction #13: Credibility of Witnesses – Inconsistent
              Statements ............................................................................... 6

        D.    Defense Instructions #15 & #16: Statement of Defendant ........................ 7

        E.    Defense Instruction #17: Defendant as a Witness ................................... 10

        F.    Defense Instructions #19 & #20: Conspiracy – Existence and
              Membership ............................................................................ 11

        G.    Defense Instruction #21: Multiple Versus Single Conspiracy................. 14

        H.    Defense Instruction #22: Withdrawal Affirmative Defense .................... 15

        I.    Defense Instruction #24: Summary Charts ............................................. 17

        J.    Defense Instruction #25: Material Support to a Foreign Terrorist
              Organization............................................................................ 18

        K.    Defense Instruction #26: Definition of Other Related Terms –
              Personnel................................................................................. 19

        L.    Defense Instruction #27: Definition of Other Related Terms –
              Services .................................................................................. 20

ADDENDUM A:  Transcripts of Recordings.................................................................. 22

ADDENDUM B: Credibility of Witnesses – Inconsistent Statements............................. 24

ADDENDUM C: Conspiracy – The Affirmative Defense of Withdrawal ....................... 25

ADDENDUM D: Material Support to a Foreign Terrorist Organization ........................ 29

ADDENDUM E: Definition of Other Related Terms – Personnel .................................. 30

\* \* \*

The United States respectfully submits its responses and objections to the defendant's

proposed jury instructions.

## I.      Identical Instructions

The government has identified a number of defendant's proposed instructions that are

substantively identical to those proposed by the government. For the Court's convenience, the

government has created a table identifying these instructions, to which the government has no

objection.

| Def. Instruction | Govt. Instruction | Topic |
|:---:|:---:|:---:|
| 1 | 5 | Objections and Rulings |
| 2 | 3 | Court's Questions to Witnesses |
| 3 | 11 | Judging the Evidence |
| 4 | 13 | Jury's Recollection Controls |
| 7 | 8 | The Indictment Is Not Evidence |
| 8 | 15 | Expert Witnesses |
| 11 | 14 | Credibility of Witnesses – Generally |
| 18 | 33 (final paragraphs) | Aiding and Abetting / Mere Presence |

Defense Instruction #23 (Number of Witnesses) is similar but not identical to

Government Instruction #16 (Number of Witnesses Not Controlling), and the government defers

to the Court on which it would prefer to give.

## II.      Additional Instructions to which the Government Has No Objection

The government has no objection to the following instructions being given in addition to

those proposed by the government:

- Defense Instruction #5: The Question Is Not Evidence

- Defense Instruction #9: Expert Witness – Dual Role

- Defense Instruction #12: Law Enforcement or Department of Defense Witness

- Defense Instruction #14: Credibility – Cooperating Witness

## III.   Objections.

The government respectfully submits objections to the following instructions.

### A.   Defense Instruction #6: Presumption of Innocence, Burden of Proof, and Reasonable Doubt

The content of defense's proposed instruction substantially overlaps with the government's, except as to order and two substantive points. First, the defense instruction contains an additional statement that the defendant is not on trial for any act or crime not contained in the indictment. The government has no objection to this statement but simply notes that it has proposed a separate instruction, Government Instruction #10, that is identical in content.

Second, however, the jury instruction contains the additional sentence (also found in the O'Malley pattern instruction): "If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury must, of course, adopt the conclusion of innocence."

The Fourth Circuit has "frequently admonished district courts not to attempt to define reasonable doubt in their instructions to the jury absent a specific request from the jury itself." *United States v. Headspeth*, 852 F.2d 753, 755 (4th Cir. 1988), *abrogated on other grounds by Taylor v. United States*, 495 U.S. 575 (1990); *accord United States v. Hawkins*, 776 F.3d 200, 212 n.9 (4th Cir. 2015). That rule has only become stronger since its inception, as the Fourth Circuit has now "repeatedly held that a district court need not, and in fact should not, define the term 'reasonable doubt' even upon request." *United States v. Williams*, 152 F.3d 294, 298 (4th

Cir. 1998); *see also United States v. Reives*, 15 F.3d 42, 46 (4th Cir. 1994) ("The underlying premise in all of our cases is that trying to explain things will confuse matters, and we cannot see why a jury request should change this premise." (citing cases in footnote)).

Because of the Fourth Circuit's consistent and strong admonitions on this point, the government does not believe the Court should attempt to define or explain how reasonable doubt should apply when the jury is considering the evidence, even when such an instruction is requested by the defense or by the jury. *See, e.g.*, *United States v. Makwana*, 445 F. App'x 671, 672 (4th Cir. 2011); *Headspeth*, 852 F.2d at 755. "[T]he term reasonable doubt has a self-evident meaning comprehensible to the lay juror, which judicial efforts to define generally do more to obscure than to illuminate." *Headspeth*, 852 F.2d at 755; *see also Reives*, 15 F.3d at 45 ("Essentially, the reason for not giving a definition is that there is no need to, and, in any event, there is no better way of explaining the concept.").[1] Rather, "[r]easonable doubt cannot be divorced from its specific context any more than the concepts of 'reason' or a 'reasonable person'" and "through the community participation and shared responsibility that results from that group's determination of guilt or innocence, the jury itself defines reasonable doubt and applies its own definition to the specific case before it." *United States v. Walton*, 207 F.3d 694, 699 (4th Cir. 2000) (en banc) (opinion of Ervin, J.) (internal quotation marks and citations omitted).

---

[1] This point is reinforced by the similarity of the defense's proposed instruction to the equipoise rule, an outdated sufficiency-of-the-evidence rule that conflicts with the Fourth Circuit's standard (*see, e.g.*, *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006) (en banc)) and with Supreme Court precedent, as three en banc federal circuits have held when overruling their own use of the equipoise rule (*see United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc); *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431–32 (3d Cir. 2013) (en banc); *United States v. Nevils*, 598 F.3d 1158, 1165–67 (9th Cir. 2010) (en banc)).

This premise is particularly reinforced when the jury is instructed, as both the defense and the government have requested, that it should treat the evidence reasonably and carefully, using its good sense and common knowledge, and state whether the government has proved defendant guilty beyond a reasonable doubt or not. *See* Govt. Instr. #11; Def. Instr. #3. The government instruction on reasonable doubt thus properly concludes with an instruction that if the jury possesses a reasonable doubt "after careful and impartial consideration of all the evidence in the case," "it must acquit" without an attempt to explain what a reasonable doubt is or how the jury should determine whether one exists. *See* Govt. Instr. 9, ECF No. 182, at 16.

### B.    Defense Instruction #10: Transcripts of Recordings

The government does not object to the instruction insofar as it addresses the transcripts of English-language recordings. However, as to the translations of Arabic-language recordings, absent any disputed translation proffered by the defense, the government believes that the jury should be instructed that it must accept the translation by a court-certified translator as conclusive.[2]

On this issue, the Fourth Circuit has held that "[i]t is integral to the promise of a fair trial that all jurors in a particular case base their decision on the same evidence." *United States v. Cabrera-Beltran*, 660 F.3d 742, 750 (4th Cir. 2011) (citing *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966)). However, if an Arabic-speaking juror relies on their own translation, the juror "is effectively deciding to base his verdict in the case on evidence different than that considered by the other jurors." *Ibid.* Even if that juror were to communicate their own translation to the rest of the jury, the juror has, in essence, become an expert witness, and the jury is relying on facts and

---

[2] *See also* Kevin O'Malley et al., 1A Fed. Jury Prac. & Instr. § 11.10 (6th ed. 2018, updated August 2021) ("This instruction is not applicable in trials, for example, in which transcripts are translations from a foreign language and are, in fact, admitted into evidence.").

opinions not presented in open court under this Court's supervision. In holding that a district

court may "require the jury to accept, as evidence, in-court translations by court-certified

translators," the Fourth Circuit relied on a number of Supreme Court cases that emphasized the

need for juries to render their verdict "based on the evidence *presented in court*." *Id.* at 749

(quoting *Patton v. Yount*, 467 F.3d 1025, 1037 n.12 (1984)) (emphasis in original); *see also id.* at

750 (quoting *Sheppard* for "the requirement that the jury's verdict be based on evidence received

in open court, not from outside sources"); *cf. United States v. Fuentes-Montijo*, 68 F.3d 352, 355

(9th Cir. 1995) ("The rules of evidence and the expert testimony would prove of little use if a

self-styled expert in the deliberations were free to give his or her opinion on this crucial issue,

unknown to the parties.").

In the preliminary hearing in this case, the Court has already certified the translators

through whom the government intends to introduce the Arabic-to-English translations. Currently,

the defense has not noticed any experts in Arabic-to-English translation to provide alternative

evidence. Accordingly, the Court should instruct the jury that it is to treat the English translations

introduced as conclusive. If the defense does present alternate translations, the Court should

instruct the jury that it should evaluate the accuracy of the competing translations in light of the

parties' expert witness testimony and other evidence, except as to their own language skills. The

government has proposed an alternate Defense Instruction #10 in Addendum A.

## C. Defense Instruction #13: Credibility of Witnesses – Inconsistent Statements

The defense's proposed instruction fails to inform the jury that they serve as independent

judges of whether an attempt to impeach actually demonstrates inconsistency or undermines a

witness's credibility. The government submits that the Court should only give this instruction if

an attempt to impeach has actually occurred at trial. If one has, the Court should give the more

detailed instruction found in 1 Modern Federal Jury Instructions – Criminal P. 7.01 (2021), which the government has adapted in Addendum B.

### D.    Defense Instructions #15 & #16: Statement of Defendant

The government does not object to Defense Instruction #15 insofar as it describes the jury's prerogative to consider the voluntariness of the defendant's statements. However, the government objects to the instruction's final sentence; the vast weight of authority instructs that the corroboration rule is not a jury question but a question for the judge alone.

The federal corroboration rule is a relaxed version of the common-law *corpus delicti* rule. *See Opper v. United States*, 348 U.S. 84, 92–94 (1954); *United States v. Singleterry*, 29 F.3d 733, 737 & n.2 (1st Cir. 1994). More than a century ago, the Supreme Court held that a trial court was not required to instruct the jury on this rule when there was circumstantial corroborating evidence of the crime and the jury had been properly instructed on the reasonable-doubt standard. *See Perovich v. United States*, 205 U.S. 86, 91 (1907). The law has not changed, and no such instruction should be given here.[3]

Since *Perovich*, five federal circuits have expressly held that because the corroboration rule is largely a doctrine governing the admissibility of a defendant's confessions (or instructing courts when to enter a directed verdict), it need not or should not be the subject of instructions to the jury. *See, e.g.*, *United States v. Dickerson*, 163 F.3d 639, 642–43 (D.C. Cir. 1999) ("The corroboration rule is undeniably, in part, a rule governing the admissibility of a defendant's out-of-court statements. And it is well settled that preliminary facts relating to the admissibility of

---

[3] In addition, the corroboration rule is irrelevant when the government introduces independent evidence sufficient to establish each element of the charged offenses. *See United States v. Calderon*, 348 U.S. 160, 169 (1954); *see also Smith v. United States*, 348 U.S. 147, 156 (1954) ("All elements of the offense must be established by independent evidence or corroborated admissions ….").

evidence are questions for the court and not for the jury."); *see also United States v. Kourani*, 6 F.4th 345, 355 & n.33 (2d Cir. 2021); *United States v. McDowell*, 687 F.3d 904, 912 (7th Cir. 2012); *United States v. Singleterry*, 29 F.3d 733, 736 (1st Cir. 1994); *D'Aquino v. United States*, 192 F.2d 338, 357 (9th Cir. 1951). As one state court observed, despite some contrary authority, the position that courts should not instruct juries on the corroboration rule "has been adopted in both federal and state courts and, as noted, is generally agreed upon by the commentators." *Riggins v. State*, 843 A.2d 115, 141 (Md. Ct. Spec. App. 2004) (internal quotations omitted).[4] Among the federal circuits, only the Sixth Circuit has held otherwise, in a case that appears not to have considered *Perovich* and has been rejected by every circuit to have considered its rule since then. *See, e.g.*, *United States v. Marshall*, 863 F.2d 1285, 1285–86 (6th Cir. 1988).

The Fourth Circuit has not directly ruled on the question, though it has observed that "a number of our sister circuits have held that a court need not instruct juries on the corroboration rule, even if requested to do so." *United States v. Abu Ali*, 528 F.3d 210, 234 n.8 (4th Cir. 2008) (citing these cases). Because Abu Ali had not requested the instruction in the district court, the Fourth Circuit held that he could not show that any error was plain but did not decide the question in the first instance. *Ibid.* However, the Fourth Circuit has previously held that the corroboration rule is a doctrine of admissibility. *See United States v. Sapperstein*, 312 F.2d 694,

---

[4] The authority among state courts is similarly lopsided, as "the majority of jurisdictions that have considered this issue have rejected [the defendant's] argument that the sufficiency of corroboration evidence is a question for the jury." *Fowler v. United States*, 31 A.3d 88, 91 (D.C. Ct. App. 2011); *see also State v. Boyum*, No. A13-1901, 2014 WL 4494285, at *2 & n.2 (Minn. Ct. App. 2014) (citing *State v. Weber*, 137 N.W.2d 527 (Minn. 1965)); *Riggins*, 843 A.2d at 139–42; *Smith v. State*, 908 So.2d 273, 295 (Ala. Crim. App. 2000); *State v. Weller*, 644 A.2d 839, 841–42 (Vt. 1994); *Baldree v. State*, 784 S.W.2d 676, 686–87 (Tex. Crim. App. 1989) (en banc); *Watkins v. Commonwealth*, 385 S.E.2d 50, 54–56 (Va. 1989); *People v. Rosario*, 519 N.E.2d 1020, 1028–29 (Ill. App. Ct. 1988). *But see People v. Reade*, 191 N.E.2d 891, 893–94 (N.Y. 1963).

696–97 (4th Cir. 1963). Alternately, the Fourth Circuit has applied the corroboration rule as a component of a court's Rule 29 function. *See, e.g.*, *United States v. Rodriguez-Soriano*, 931 F.3d 281, 290–91 (4th Cir. 2019). In either scenario, however, the focus has been on the court's role, rather than the jury's determination about corroborating evidence. As *Dickerson* points out, rules governing admissibility are solely for the judge to decide, not the jury. *See Dickerson*, 163 F.3d at 642. Moreover, both *Abu Ali* and *Rodriguez-Soriano* cited the Supreme Court's admonition that "since this corroboration rule 'infringes on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them.'" 528 F.3d at 235 (quoting *Smith*, 348 U.S. at 153) (alterations omitted). It is difficult to see how the corroboration rule could "infringe" on the jury's role if it is, in fact, a jury question. Accordingly, the government objects to the final sentence of Defense Instruction #15 as an improper instruction for the jury.

The government objects to Defense Instruction #16 as largely duplicative of the voluntariness instructions contained in Defense Instruction #15 or, where not duplicative, inadvisable. The Fourth Circuit has rejected the need for special instructions when dealing with evidence of oral admissions by the defendant, noting that the general witness credibility and evidentiary assessment instructions suffice. *See United States v. Brown*, 615 F.2d 1020, 1022 (4th Cir. 1980). Although *Brown* notes that some cases may present a situation where failure to give the instruction would be an abuse of discretion, there is no reason to that think that is the case here. Defense Instruction #15, which instructs the jury to examine whether the statement was made voluntarily and to accord it such weight as the jury feels the statement deserves, more than suffices.

Indeed, for Defense Instruction #15, the defendant relies on Instruction 5-19 of the Modern Federal Jury Instructions. The drafters of that instruction expressly declined to explain or enumerate the kind of criteria that appears in Defense Instruction #16, noting in the accompanying commentary: "there seems to be no compelling reason for the trial court to highlight particular criteria when the weight to be given a confession must turn on the facts of each individual case. In this regard, counsel's closing argument should provide sufficient guidance for the jury to decide how much effect to give a confession." Determining what criteria to include may improperly suggest argumentation to the jury, and a less-than-exhaustive list of factors—an impossible task, given the totality of circumstances analysis—risks improperly focusing the jury on some factors to the exclusion or minimization of others. As the commentary further notes, "the other portions of the charge directing the jury to consider all of the evidence and providing guidelines for evaluating credibility are sufficient when coupled with the recommended language in Instruction 5-19." The government agrees and believes that the inclusion of Defense Instruction #15, as modified to eliminate mention of the corroboration rule, is adequate to instruct the jury correctly.

E.       **Defense Instruction #17: Defendant as a Witness**

The government objects to Defense Instruction #17 only to note that, if the defendant testifies, Government Instruction #18, Part B, should be given instead of the defense's proposed language. In particular, as cited in the government's proposal, the Fourth Circuit and several other circuits have all held that it is proper to instruct a jury about a defendant's own vital interest in his case. *See United States v. Figurski*, 545 F.2d 389, 392 (4th Cir. 1976); *see also* Govt. Instructions, ECF No. 182, at 26–27 (citing other cases). Just as the defense is entitled to an instruction about the potential interests and biases of cooperating witnesses and law

enforcement witnesses, so too the government is entitled to note that the defendant has such an interest, coupled with the caveats that those interests do not automatically make his testimony suspect.

The government does not object to Defense Instruction #17's first proposal if the defendant does not testify.

### F.    Defense Instructions #19 & #20: Conspiracy – Existence and Membership

Both Government Instruction #22 and Defense Instruction #19 rely on the pattern instructions found in O'Malley's Federal Jury Practice and Instructions § 31.04. However, the government's modifications more accurately reflect the law of conspiracy and should control.

Defense Instruction #19 states that a criminal conspiracy is an agreement "by at least two people to violate the law by some joint or common plan or course of action." Def. Instr. #19, ECF No. 183, at 20. Government Instruction #22 states instead that a criminal conspiracy is an agreement "by at least two people to achieve a certain objective that is itself a crime." Govt. Instr. #22, ECF No. 182, at 31. The government's statement avoids the incorrect implication in the defense instruction that a conspiracy requires specific intent to violate the law. It is well established that a conspiracy requires only the mental state required to commit the substantive offense; that is, if a substantive offense can be committed knowingly, the conspiracy requires only the agreement to engage in the knowing conduct and does not require knowledge of the unlawful nature of the act or a specific intent to violate the law. *See, e.g.*, *United States v. Feola*, 420 U.S. 671, 687–88, 693–95 (1975); *see also United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) ("[T]he essence of a conspiracy is an agreement to commit an unlawful act."); *cf. Bryan v. United States*, 524 U.S. 184, 192–93 (1998) (discussing the difference between "willfully" and "knowingly").

11

Sitting en banc, the Fourth Circuit's seminal conspiracy precedent overruled a prior decision that required the government to prove "a *specific* agreement to commit a *specific* crime." *United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996) (en banc) (emphasis in original). Because none of the crimes charged in the indictment require a specific intent to violate a particular law or even of general unlawfulness, the government's wording focusing on the achieving of an "objective" that "is itself a crime" is the more accurate statement of the law. *See, e.g.*, *Salinas v. United States*, 522 U.S. 52, 63–64 (1997) ("The partners in the criminal plan must agree to pursue the same criminal objective …."); *Burgos*, 94 F.3d at 860 (noting that "black letter conspiracy law" requires "an agreement between two or more persons" and "an intent thereby to achieve a certain objective which, under the common law definition, is the doing of an unlawful act or a lawful act by unlawful means"). For the same reasons, the government's framing in the second paragraph (*i.e.*, "would pursue some endeavor which, if completed, would satisfy all the elements of a substantive criminal offense") is more accurate than the defense's alternative ("would violate some specified law by means of some common plan or course of action"), as it is taken directly from Supreme Court precedent. *See Salinas*, 522 U.S. at 65 ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.").

Similarly, the defense instruction's use of "some joint or common plan or course of action" incorrectly suggests that a conspiracy requires a defendant to be a co-participant in the conduct elements of the crime. But again, the law is to the contrary: "A conspiracy may exist even if a conspirator does not agree to facilitate or commit each and every part of the substantive offense." *Salinas*, 522 U.S. at 63, 65. Instead, "[a] defendant must merely reach an agreement

with the 'specific intent that the underlying crime *be committed*.'" *Ocasio v. United States*, 578

U.S. 282, 288 (2016) (quoting 2 K. O'Malley, J. Grenig, & W. Lee, Federal Jury Practice and

Instructions: Criminal § 31:03, p. 225 (6th ed. 2008)) (emphasis in original). Moreover, a person

may be liable for conspiracy even when he is incapable of committing the substantive offense

himself. *Ocasio*, 578 U.S. at 289 (citing *Salinas*). Bedrock conspiracy law is that "the criminal

agreement itself is the *actus reus*"; where, as here, nearly all the charged statutes require no overt

act, a defendant's knowing and deliberate joining of the agreement with the intent to further its

purpose completes his crime without any further need for action.[5] *United States v. Shabani*, 513

U.S. 10, 16 (1994). Focusing on the conspirators' intent to "achieve an objective that is itself a

crime" and to "pursue some endeavor which, if completed, would satisfy all the elements of a

substantive criminal offense" thus properly describes the intent that the crime *be committed*,

rather than suggest that the defendant needs to agree to take some specific personal action to

commit the crime.

Government Instruction #23 corrects similar mis-implications in Defense Instruction

#20.[6] *Compare* Govt. Instrs. #23, ECF No. 182, at 33, *with* Def. Instrs. #20, ECF No. 183, at 21.

The government's instruction also correctly contains a middle paragraph that recites black-letter

---

[5] Only Count Six, charging a conspiracy to murder U.S. nationals abroad, requires an overt act (*see* 18 U.S.C. § 2332), but that element makes no material difference on this question.

[6] Govt. Instruction #23, ¶ 1: "…the evidence in the case must show beyond a reasonable doubt that the defendant knew the purpose or goal of the agreement or understanding and deliberately entered into the agreement intending, in some way, that the underlying crime be committed. It is not necessary that the defendant agree to commit the offense or any element of the offense personally, but he must agree and intend that the underlying crime be committed by some member of the conspiracy."

Def. Instruction #20, ¶ 1: "the evidence in the case must show beyond a reasonable doubt that Mr. Elsheikh knew the purpose or goal of the agreement or understanding and then deliberately entered into the agreement intending, in some way, to accomplish the goal or purpose by this common plan or joint action."

conspiracy law directly from *Burgos*, 94 F.3d at 858, 861. The final paragraphs of both proposed instructions are identical.

Accordingly, the government submits that its instructions on conspiracy are the more complete and more accurate statements of the law and should be given instead of the defense instructions.

### G.     Defense Instruction #21: Multiple Versus Single Conspiracy

While the defense instruction accurately states the law on multiple conspiracies, "[a] multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved *only* in separate conspiracies *unrelated* to the overall conspiracy charged in the indictment." *United States v. Squillacote*, 221 F.3d 542, 574 (4th Cir. 2000) (emphasis in original); *see also United States v. Bartko*, 728 F.3d 327, 344 (4th Cir. 2013) ("A court need only instruct on multiple conspiracies if such an instruction is supported by the facts."). The Fourth Circuit enforces the requirement of separateness, holding that even where a particular activity "could be viewed as separate from the original conspiracy, it was certainly closely related to the conspiracy charged in the indictment, a conspiracy in which the evidence overwhelmingly established the involvement of [the two co-defendants]." *Squillacote*, 221 F.3d at 574. Moreover, the Fourth Circuit has noted that spillover prejudice from multiple conspiracies usually requires a defendant to prove "that there are so many defendants and so many separate conspiracies before the jury that the jury was likely to transfer evidence from one conspiracy to a defendant involved in an unrelated conspiracy." *Id.* at 575; *see also United States v. Hines*, 717 F.2d 1481, 1490 (4th Cir. 1983).

Here, there is one defendant at trial charged with conspiracy offenses that are all related and share common operative facts and circumstances; there is no risk of spillover prejudice, and

to the extent the defendant is concerned that the jury may convict for uncharged conduct, Government Instruction #10 specifically instructs them to consider only the acts and offenses charged. Accordingly, absent any proof at trial that there are somehow multiple conspiracies threatening spillover prejudice with this single defendant, a multiple conspiracies instruction is not appropriate.

### H.    Defense Instruction #22: Withdrawal Affirmative Defense

The government objects to Defense Instruction #22 on several grounds.

First, for conspiracy charges where the conspiracy does not require an overt act, a withdrawal defense has extremely narrow application. A conspiracy without an overt act requirement is complete upon formation of the agreement and thus, a defendant remains guilty of the conspiracy offense "through every moment of the conspiracy's existence." *Smith v. United States*, 568 U.S. 106, 111 (2013). In such cases, withdrawal does not negate guilt of the conspiracy offense, and to instruct the jury so would be an incorrect statement of law. *See United States v. Salazar*, 751 F.3d 326, 331 (5th Cir. 2014) ("If the conspiracy does not even require the commission of an overt act, a defendant can never timely withdraw and can never negate liability as to the conspiracy charge."); *see also United States v. Williams*, 374 F.3d 941, 949–50 (10th Cir. 2004); *United States v. Rogers*, 102 F.3d 641, 644 (1st Cir. 1996); *United States v. Nava-Salazar*, 30 F.3d 788, 799 (7th Cir. 1994); *United States v. Francis*, 916 F.2d 464, 466 (8th Cir. 1990); *United States v. LoRusso*, 695 F.2d 45, 55 n.5 (2d Cir. 1982).

The only charge against the defendant containing an overt act requirement is Count Six, conspiring to murder U.S. nationals abroad. As to the conspiracy charges in Counts One, Seven, and Eight, no overt act is necessary and therefore the withdrawal defense has limited, if any, relation to those charges. For those counts, withdrawal is relevant only to a statute of limitations

defense, as a defense to *Pinkerton* liability on Counts Two through Five through Count One's conspiracy, or as a ground to exclude post-withdrawal co-conspirator statements under Rule 801(d)(2)(E). *See Smith*, 568 U.S. at 111; *Williams*, 374 F.3d at 951 n.11. There are no statute of limitations defenses in this case.[7] Co-conspirator statements are preliminary determinations of admissibility and solely for the Court; that application cannot give rise to a jury instruction.

Accordingly, the only available uses for a withdrawal defense in this case are (1) as an affirmative defense to Count Six and (2) as an affirmative defense to *Pinkerton* liability on Counts Two through Five. As with any affirmative defense, the Court may decline to give the jury instruction if a defendant has not adduced sufficient evidence to support any element of that defense. *See United States v Gutierrez*, 963 F.3d 320, 338–39 (4th Cir. 2020) (affirming district court's refusal to give withdrawal instruction where defense evidence was insufficient); *see also United States v. Sarno*, 24 F.3d 618, 621 (4th Cir. 1994) (citing *United States v. Bailey*, 444 U.S. 394, 413 (1980)); *United States v. Crittendon*, 883 F.3d 326, 330 (4th Cir. 1989).

In light of these principles, the government objects to a withdrawal defense instruction being given unless, by the conclusion of evidence, the defense has adduced sufficient evidence from which a reasonable jury could hold that that the defendant withdrew either (1) from the Count Six conspiracy prior to any co-conspirator taking an overt act or (2) from the Count One conspiracy prior to a co-conspirator's commission of the hostage-taking offenses charged in Counts Two through Five.[8] Absent such evidence, the defense is not entitled to the instruction.

---

[7] None of the charged counts have a statute of limitations. Counts One through Five are capital offenses (*see* 18 U.S.C. § 3281), and Counts Six through Eight are terrorism offenses that resulted in, or created a foreseeable risk of, death or serious bodily injury to a person (*see* 18 U.S.C. § 3286(b)).

[8] The withdrawal defense requires a defendant to "show affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach his

Second, even should the defense adduce sufficient evidence at trial, the narrowness of the defense's application warrants limiting its discussion to the specific count or theory it seeks to rebut. The government requests that the instruction be given directly after the *Pinkerton* charge and/or after the elements of Count Six, as necessitated by the defense's evidence, in order to clarify how the defense applies to those specific charges. In addition, the government requests that the instruction be modified to state that the burden of proving the withdrawal defense on the defendant by a preponderance of evidence and articulate the allocation of the burden between the government and the defense appropriately. *See generally Smith*, 568 U.S. 106. The government has enclosed proposed modifications as Addendum C.

## I.      Defense Instruction #24: Summary Charts

The government has proposed Government Instruction #17 to handle the issue of demonstrative charts or exhibits and believes its instruction more clearly reflects the law and the evidence that will be presented. The government does not currently anticipate introducing any summary charts under Rule 1006 in lieu of voluminous underlying records. Rather, the government intends only to seek the admission of demonstrative exhibits permitted by Rule 611(a), which summarize or otherwise explain documents or records already in evidence. *See, e.g.*, *United States v. Simmons*, 11 F.4th Cir. 239, 262 (4th Cir. 2021) (explaining the difference between Rule 1006 and Rule 611(a) exhibits). The Fourth Circuit recently confirmed that such demonstrative exhibits may be admitted into evidence so long as they are accompanied, as the government has proposed, by an instruction that the exhibits are not independent evidence. *See id.* at 262 & n.12 (citing *United States v. Johnson*, 54 F.3d 1150, 1159 (4th Cir. 1995)).

---

co-conspirators." *United States v. Walker*, 796 F.2d 43, 49 (4th Cir. 1986) (citing *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978)).

The defense instruction blurs the line between summary exhibits (which are admitted instead of the underlying evidence) and demonstrative exhibits (which are admitted alongside the underlying evidence to explain it). In the former case, unless the underlying documents are ordered produced by the Court, the summary exhibits are substantive evidence on which the jury can rely. In the latter case, they are merely aids to understanding the evidence to which they refer. Given that the government intends to introduce only Rule 611 exhibits, its proposed instruction is clearer and more precise under Fourth Circuit law and should control.

## J.   Defense Instruction #25: Material Support to a Foreign Terrorist Organization

The government does not object to the giving of this instruction but submits it should be modified to state the law more accurately.

In particular, the instruction erroneously suggests that a defendant may not be found guilty under § 2339B if he provides material support only to one member of a foreign terrorist organization. That is not the law, nor do defendant's cited cases so hold. A defendant is still guilty of violating § 2339B in cases where he provides material support to a member of an FTO if he also knows "that the intended recipient of his contribution was a designated FTO, or an organization that engages in terrorist activity." *United States v. Warsame*, 537 F. Supp. 2d 1005, 1022 (D. Minn. 2008). The requisite mens rea for a violation of § 2339B is "knowledge about the organization's connection to terrorism, not specific intent to further the organization's terrorist activities." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 16 (2010). Thus, if a defendant knows his material support will benefit the organization, even if that support is provided to only one member of that organization, he remains guilty.

The government has enclosed proposed modifications as Addendum D.

18

### K.      Defense Instruction #26: Definition of Other Related Terms – Personnel

The government does not object to giving this instruction in addition to the definition of personnel contained in Government Instruction #45 but submits it should be modified to state the law more accurately as it relates to the facts of this case.

In particular, the defense instruction suggests that communicating with others in a terrorist group or taking an oath of allegiance does not suffice as providing personnel. While that may be accurate in the context of a substantive § 2339B charge, the defendant here is charged with conspiracy, not the completed offense. In such a case, communicating with others in a terrorist group or taking an oath of allegiance should be considered by the jury in determining whether the defendant reached an agreement with another to provide a person, including himself, who *would* work under ISIS's direction or control. *See, e.g.*, *United States v. Min*, 704 F.3d 314, 321 (4th Cir. 2013) ("It is well-established that the inchoate crime of conspiracy punishes the agreement to commit an unlawful act, not the completion of the act itself."). In this context—particularly given § 2339B's lack of an overt act requirement—taking an oath of allegiance if done as part of an agreement with another person and with the genuine intent to work under an FTO's direction or control as a result of that oath would constitute a criminal conspiracy in violation of § 2339B.

Accordingly, the government has enclosed a new instruction as Addendum E, combining the government's initial definition of personnel with the proposed modifications to the defense instruction.

**L.    Defense Instruction #27: Definition of Other Related Terms –
Services**

This instruction is identical to that proposed by the government in Government Instruction #45 with the exception of the final sentence. While that sentence is accurate, the government suggests the instruction could be clearer in explaining the requirement to the jury.

The requirement that the service be connected with the organization comes directly from *Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2010). Rather than ambiguously stating that the statute requires "a connection between," the government proposes relying, as *Humanitarian Law Project* did, on the statute's requirement that the service be "to" the FTO. *Ibid.*

Accordingly, the government proposes that the last sentence be modified to state: "The statute requires that the service be to the foreign terrorist organization, not merely an independent service undertaken in furtherance of the same goals or causes."

*    *    *

In addition to the above objections and proposed modifications, the government respectfully reserves the right to make such additional requests or objections as may become necessary in the course of trial before the jury retires to deliberate. *See* Fed. R. Crim. P. 30(d).

20

Date: January 5, 2022                    Respectfully submitted,

                                         Jessica D. Aber
                                         United States Attorney

                          By:      /s/   Aidan Taft Grano-Mickelsen
                                   Dennis M. Fitzpatrick
                                   Raj Parekh
                                   John T. Gibbs
                                   Aidan Taft Grano-Mickelsen
                                       Assistant United States Attorneys
                                   Alicia H. Cook
                                       Trial Attorney, U.S. Department of Justice
                                   United States Attorney's Office for the
                                   Eastern District of Virginia
                                   2100 Jamieson Avenue
                                   Alexandria, Virginia 22314
                                   703-299-3700

**ADDENDUM A**:  **Transcripts of Recordings**

The parties have submitted typewritten transcripts of certain tape recordings which have been admitted into evidence. Some of these recordings are in English, and others are in Arabic.

For the English-language recordings, you are specifically instructed that whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers is entirely for you to determine. You should make this determination, without prejudice or bias, based on the testimony regarding preparation of the transcript, your own comparison of the transcript to what you hear or heard on the tapes, and any other relevant evidence or testimony. Should you determine that the transcript of an English-language recording is incorrect or inaccurate in any respect, you should disregard it to that extent.

For the Arabic-language recordings, the transcripts are also a translation from the original language to English. [*If the defense presents no alternative translation*: That translation has been performed by a translator that this Court has deemed to be qualified to do so. Although some of you may know the Arabic language, it is important that all jurors consider the same evidence that has been presented in open court. Therefore, you must accept the English translation contained in the transcript and disregard any different meaning of the non-English words.]

[*If the defense presents alternative translations*: Whether a party's transcript is an accurate translation, in whole or in part, is for you to decide. In considering whether a transcript is an accurate translation of a conversation, you should consider the testimony presented to you regarding how, and by whom, the transcript was made.  You may consider the knowledge, training, and experience of the translator, as well as the nature of the conversation and the reasonableness of the translation in light of all the evidence in the case. However, even if you or

another juror knows Arabic, you may not consider your own Arabic language skills or the skills of another Arabic-speaking juror in determining the accuracy of the proffered translations.]

Adapted from Model Crim. Jury Instrs., 3d Cir. 2.08 (2021) & 9th Cir. 2.7 (2021).

**ADDENDUM B: Credibility of Witnesses – Inconsistent Statements**

You have heard evidence that a witness made a statement on an earlier occasion that counsel argues is inconsistent with the witness's trial testimony. Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on the defendant's guilt. Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted themselves. If you find that the witness made an earlier statement that conflicts with their trial testimony, you may consider that fact in deciding how much of their trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

Adapted from 1 Modern Federal Jury Instructions – Crim. P 7.19 (2021).

**ADDENDUM C**: Conspiracy – The Affirmative Defense of Withdrawal

**[To be added to the end of or immediately after the *Pinkerton* instruction:**

The defendant is presenting an affirmative defense to this theory of guilt. He is arguing that if you find that the government proved beyond a reasonable doubt that he joined the hostage-taking conspiracy charged in Count One, that he nonetheless withdrew from that conspiracy prior to any co-conspirator committing the offenses charged in Counts Two through Five.

An affirmative defense is the only exception to the rule I previously explained about the burden of proof resting entirely on the government. That means the defendant has the burden of proving that he withdrew from the conspiracy by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.

Once a defendant knowingly and deliberately joins a conspiracy, he is presumed to remain a member of that conspiracy unless or until he shows that it was terminated or he withdrew from it. A mere cessation of activity in furtherance of the conspiracy is insufficient. The defendant must show affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach his co-conspirators.

In order to withdraw from the conspiracy, the defendant must have taken some definite, decisive, and affirmative action to disavow himself from the conspiracy or to defeat the goal or purpose of the conspiracy. Internal conflict between the defendant and other members of the conspiracy alone is not sufficient to show withdrawal. Additionally, that affirmative action must have been communicated in a manner reasonably calculated to reach his co-conspirators. The defendant's withdrawal must be complete, not temporary, and in good faith.

25

In deciding if Mr. Elsheikh took a step to disavow or defeat the conspiracy, you may consider several factors including whether he intentionally alerted law enforcement to the conspiracy, whether he told others in the conspiracy that his participation had ended, whether Mr. Elsheikh took steps to correct prior assistance to the group, and whether he attempted to remedy any past act or attempted to prevent any further progress of the conspiracy.

Here, to establish his defense on this theory, Mr. Elsheikh must prove that this affirmative action to withdraw was taken prior to the commission of the offenses charged in Counts Two through Five. If you conclude that the government proved beyond a reasonable doubt that the defendant joined the hostage-taking conspiracy charged in Count One and the defendant has not proved it more likely than not that he withdrew from that conspiracy before the offenses charged in Counts Two through Five were committed, you may determine whether the defendant is guilty of those offenses based on his co-conspirators' actions under the standard I laid out above. If you conclude that the defendant has proved that it is more likely than not that he withdrew from the conspiracy before those offenses were committed, you should not rely on the co-conspirator liability I have been describing in determining whether he is guilty. However, withdrawal is not a defense to the crimes charged in Counts Two through Five if you find that the government proved beyond a reasonable doubt that the defendant either personally committed those crimes or aided and abetted someone who did.]

**[To be added after the elements charge of Count Six:**

The defendant is [also] presenting an affirmative defense to the charge contained in Count Six. He is arguing that if you find that the government proved beyond a reasonable doubt that he was a member of the conspiracy to murder U.S. nationals charged in Count Six, that he

nonetheless withdrew from that conspiracy prior to any co-conspirator taking an overt act to effect the object of the conspiracy.

[Again], an affirmative defense is the only exception to the rule I previously explained about the burden of proof resting entirely on the government. That means the defendant has the burden of proving that he withdrew from the conspiracy by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.

[I remind you that] Once a defendant knowingly and deliberately joins a conspiracy, he is presumed to remain a member of that conspiracy unless or until he shows that it was terminated or he withdrew from it. A mere cessation of activity in furtherance of the conspiracy is insufficient. The defendant must show affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach his coconspirators.

In order to withdraw from the conspiracy, the defendant must have taken some definite, decisive, and affirmative action to disavow himself from the conspiracy or to defeat the goal or purpose of the conspiracy. Internal conflict between the defendant and other members of the conspiracy alone is not sufficient to show withdrawal. Additionally, that affirmative action must have been communicated in a manner reasonably calculated to reach his co-conspirators. The defendant's withdrawal must be complete, not temporary, and in good faith.

In deciding if Mr. Elsheikh took a step to disavow or defeat the conspiracy, you may consider several factors including whether he intentionally alerted law enforcement to the conspiracy, whether he told others in the conspiracy that his participation had ended, whether Mr. Elsheikh took steps to correct prior assistance to the group, and whether he attempted to remedy any past act or attempted to prevent any further progress of the conspiracy.

Here, to establish this defense, Mr. Elsheikh must prove that this affirmative action to withdraw was taken prior to the commission of any co-conspirator taking an overt act to effect the object of the conspiracy to murder U.S. nationals. If you conclude that the government proved beyond a reasonable doubt that the defendant conspired to murder U.S. nationals under the elements of Count Six that I have explained and the defendant has not proved it more likely than not that he withdrew from that conspiracy before a co-conspirator took an overt act, you should find the defendant guilty. If you conclude that the defendant has proved that it is more likely than not that he withdrew from the conspiracy before a co-conspirator took an overt act, you should find him not guilty.]

Adapted from 1 Modern Federal Jury Instructions – Criminal P 19.01, Instr. 19-10 (2021); *United States v. Shephard*, 892 F.3d 666, 673 (4th Cir. 2018); *United States v. Graham*, 711 F.3d 445, 454 (4th Cir. 2013).

**ADDENDUM D**: **Material Support to a Foreign Terrorist Organization**

A conviction on Count Eight requires proof that the defendant conspired to provide material support to an organization designated as a foreign terrorist organization. It is not a crime if the defendant conspired to provide material support to an individual who happens to be a member of a terrorist organization if the defendant did not also know that the material support would benefit the foreign terrorist organization. In other words, you must conclude that the defendant knew the material support he conspired to provide would support the organization, not merely that it would benefit a particular person who also happened to be a member of that organization. It is a crime if the defendant conspired to provide material support to an organization by providing material support to a member of that organization as long as he knows that the material support would ultimately benefit the organization, not merely the person in his individual capacity.

If you find that the defendant knew that a person to whom he conspired to provide material support was a member of a foreign terrorist organization, you may consider that fact in determining whether the defendant also knew that the material support would ultimately benefit the organization. But it is not sufficient for a conviction to conspire to provide material support to a member of a foreign terrorist organization without knowing that the material support would also benefit the organization.

**ADDENDUM E: Definition of Other Related Terms – Personnel**

The defendant can be convicted for a violation of this statute in connection with providing personnel if you find he conspired to provide one or more individuals, including himself, to work under ISIS's direction or control. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives are not considered to be working under the foreign terrorist organization's direction and control.

If you find that the object of the conspiracy was merely to provide a person who would work independently of the organization to advance shared goals or purposes, that does not suffice as conspiring to provide personnel to the organization. Agreeing to merely be present with other members of the organization but not under its direction or control is not agreeing to provide personnel within the meaning of the statute. To find that the defendant conspired to provide personnel, you must conclude that the object of the conspiracy was to provide a person to ISIS who would work under its direction or control, rather than act independently of the organization.