IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: 1:20-cr-239 |
| v. | ) | |
| | ) | |
| EL SHAFEE ELSHEIKH, | ) | Hon. T. S. Ellis, III |
| | ) | |
| *Defendant*. | ) | |

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION IN LIMINE TO REDACT RULE 15 DEPOSITIONS FOR TRIAL**

During the November 16–18, 2021 evidentiary hearing in this matter, the Court heard testimony from three members of the Syrian Democratic Forces (SDF), testifying pseudonymously as SDF Witnesses #1, #2, and #3, "[i]n order to protect their identities, given ongoing ISIS-related security threats in Syria." *See* Dkt. 188, at 11.  This Court previously granted the government's motion to record that testimony as a Rule 15 deposition for use should these witnesses be unavailable for trial.  *See* Dkt. 160.  Since the hearing, government counsel and defense counsel have conferred on portions of that testimony that should be excluded in the event that either party seeks to introduce that recorded testimony at trial.  Although counsel have conferred multiple times and have agreed on a number of proposed redactions, which are submitted contemporaneously with this motion, each party has proposed additional redactions to which the other does not agree.  Accordingly, the government now moves in limine under Federal Rule of Evidence 104 for preliminary determinations of admissibility regarding these contested portions of the Rule 15 depositions.[1]

---

[1] In the same order, the Court also granted the government's motion to record the testimony of

## BACKGROUND

In January 2018, the SDF captured a group of individuals fleeing northern Syria into Turkey, which included defendant El Shafee Elsheikh and co-defendant Alexanda Amon Kotey. *See* Dkt. 188, at 4. Defendant was then held in custody by the SDF at certain detention facilities—including Ayn Issa, Kobani, and Derik—between January 2018 and their transfer to the U.S. military in October 2019. *See* Dkt. 188, at 4, 6, 11. SDF Witness #2 served as the deputy head of Derik Prison while defendant was in custody there. *See* Dkt. 188, at 12. SDF Witness #3 served as a counter-terrorism investigator who repeatedly interviewed defendant during his detention at Derik. *See* Dkt. 188, at 13.

The indictment in this case charges Elsheikh and Kotey with eight offenses related to their activities as part of the Islamic State of Iraq and al-Sham (ISIS): conspiracy to commit hostage-taking, resulting in death (Count 1); substantive hostage-taking with respect to four American citizens, resulting in their deaths (Counts 2–5); conspiracy to commit murder of U.S. nationals abroad (Count 6); conspiracy to provide material support to terrorists, resulting in death (Count 7); and conspiracy to provide material support to a foreign terrorist organization, resulting in death (Count 8). *See* Dkt. 1. As the Court is aware, Kotey has since pleaded guilty and is awaiting sentencing. *See* Dkts. 88–90, 211.

---

Sean Langan, a documentary filmmaker, as a Rule 15 deposition. At present, the government does not intend to introduce either Mr. Langan's deposition or SDF Witness #1's deposition at trial. Mr. Langan's recorded interview with defendant was properly authenticated during the November 2021 evidentiary hearing, and the Court has since ruled that the government "has sustained its burden of establishing by a preponderance of the evidence that Defendant's will was not overborne and that his statements to the media in Syria in 2019 were voluntary." Dkt. 188, at 30. As the defense knows, the government intends to introduce at trial clips from Mr. Langan's recorded interview with the defendant, as well as other clips of interviews that defendant participated in while he was in Syria, based on the Court's pretrial rulings. Accordingly, the only relevant Rule 15 depositions for this motion are those from SDF Witnesses #2 and #3.

Subsequent to Kotey's September 2, 2021 guilty plea and in preparation for Elsheikh's trial, the parties moved for Rule 104 preliminary determinations of admissibility related to some of Elsheikh's statements while in SDF custody. Specifically, the government moved to admit—and defendant moved to exclude—defendant's answers in a Mirandized interview with the Federal Bureau of Investigation (FBI) in March 2018 and defendant's statements in interviews with media journalists and documentarians while defendant was in Syria from 2018–2019. *See, e.g.*, Dkts. 96, 100. In support of his motion to suppress, defendant alleged that he had been subjected to severe physical abuse during his detention in SDF custody, rendering his statements involuntary within the meaning of the Due Process Clause, and that the government had intentionally used a two-step interrogation technique to undermine the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

On November 16–18, 2021, this Court held an evidentiary hearing with the first day consisting solely of classified proceedings and the subsequent two days consisting of unclassified proceedings. *See* Dkts. 161, 162, 164. After granting permission for the witnesses to testify pseudonymously, the Court heard testimony from SDF Witness #1 and SDF Witness #2 on November 17 and SDF Witness #3 on November 18. *See* Dkts. 162, 164. The SDF Witnesses testified to the conditions of and policies governing defendant's detention in their facilities; they did not testify to any substantive evidence inculpating or exculpating defendant with respect to the charged conduct. Although defendant did not call any witnesses to testify at the hearing, including Kotey, he submitted documentary evidence throughout the three days, including a declaration of his own. *Cf., e.g.*, Dkt. 188, at 10 n.11, 16 n.16.

Following that hearing, the Court issued an opinion and order denying defendant's motion to suppress these statements. *See generally* Dkt. 188. In doing so, the Court noted that a

preliminary determination that a defendant's incriminating statements were voluntary and thus admissible "does not bar Defendant from arguing to the jury that his statements were involuntary and therefore that the jury should assign them little or no weight." Dkt. 188, at 30 n.34; *see generally Crane v. Kentucky*, 476 U.S. 683, 688 (1986).

### ARGUMENT

While the government and defendant have agreed on many of the proposed redactions for the Rule 15 depositions, the parties have been unable to agree on a few remaining categories of statements. For the reasons explained below, the government respectfully requests the Court rule that the government's proposed redactions, as set forth in the two exhibits attached to this memorandum, define the appropriate scope of redacted and unredacted material.[2] As government counsel previously informed the defense counsel, the government only intends to introduce Rule 15 testimony from SDF Witnesses #2 and 3's if the defense raises at trial in any form that defendant's statements while he was in SDF custody were involuntary or unreliable.

**I.    Agreed-Upon Redactions**

Prior to filing this motion, government counsel and defense counsel exchanged proposed redactions for the Rule 15 depositions of SDF Witnesses #2 and #3.[3] After conferring on multiple occasions, the parties have been able to agree on the vast majority of these proposals. Accordingly, the government has attached the list of agreed-upon redactions from excerpts of the November 17

---

[2] This Court decides preliminary questions of admissibility by a preponderance of the evidence and is not bound by evidentiary rules other than privilege when doing so. *See* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

[3] The government refers to the proposed testimony to be excluded as "redactions." However, it intends that this term refer to the video recordings of the depositions as well. Accordingly, for any portion of the transcript that the Court finds inadmissible, that ruling will require the proffering party to exclude that testimony from both the written transcripts and the corresponding video-recorded testimony.

and November 18, 2021 transcripts (*see* Dkts. 170-171) as Addendum A.  The government has also included these joint redactions in its Proposed Order.

**II.     Testimony Related to Voluntariness**

The first category of disputed redactions concern testimony related to the voluntariness of defendant's statements in interrogation and media interviews.  As Exhibit 1 to this motion, the government has included the transcript pages containing the defense's proposed redactions in red highlighting.  Specifically, the defense wants to redact: (a) SDF Witness #1's testimony about the ability of SDF detainees to refuse a media interview (Dkt. 170, at 147:5–148:1) and (b) SDF Witness #2's testimony about Kotey giving a recorded statement to the SDF in August 2019 when Elsheikh refused, as well as the video exhibit itself and English translation of it (Dkt. 171, at 12:11–16:19).  The yellow highlighting in Exhibit 1 indicates portions of the transcript that the parties agree should be redacted, including the English translation of the Kotey SDF video exhibit.

The testimony about media interviews for SDF detainees is admissible and should not be redacted.  Should the defendant choose to contest voluntariness at trial, the testimony about the process by which detainees refused media interviews and denying that pressure was applied by the SDF is directly relevant to rebutting defendant's claims that the media interviews were coerced by physical abuse.[4]  Defense counsel informed the government that it objects to a lack of foundation for the witness's personal knowledge as to this testimony.  However, the government's questions were explicitly directed at the "media policies" governing prisoner interviews with media outlets

---

[4] Defense counsel suggested to the government that this testimony would only be admissible if Mr. Langan's testimony regarding the process of him writing letters also comes in.  This argument is unavailing.  If defendant presents evidence at trial to assert that the SDF coerced him to conduct media interviews, the government may rebut that assertion by direct evidence from the SDF stating that media interviews were not compulsory.  There is no reason that the relevance of that evidence is conditional on Mr. Langan's testimony about writing letters.

5

during the time of defendant's detention and whether the SDF ever forces prisoners to perform media interviews. *See* Dkt. 170, at 147:1–4. As the deputy head of Derik prison, SDF Witness #2 certainly had personal knowledge of the policies and practices of the SDF when media outlets requested to interview one of his prisoners, which was made clear during his Rule 15 testimony.

Similarly, the testimony about Kotey giving SDF Witness #3 a recorded statement in August 2019 is also admissible and should not be redacted.[5] If the defense argues or implies to the jury that defendant's statements and interviews were forced by the SDF, this evidence rebuts that contention. While Kotey made the choice to give a recorded statement to the SDF, Elsheikh did not and the SDF respected his Elsheikh's voluntary decision. If the SDF were truly coercing Elsheikh to give evidence against his will, there would be a comparable recording of Elsheikh giving similar statements. Its absence rebuts any inference of coercion. Defense counsel has also informed the government that it objects to the description of Kotey's statement as hearsay. However, the government is not adducing the content of the statement for its truth—*i.e.*, what Kotey's nickname is in ISIS or how Kotey got to Syria. *See, e.g., United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010) ("Evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement." (quoting *Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974)). Instead, the government would introduce this testimony only to show that what Kotey was giving was a voluntary recorded statement to his SDF interrogator and that no such comparable video of Elsheikh exists—evidence whose sole function

---

[5] Presuming the defense raises the issue of voluntariness during trial, the government intends to play only the first 15 seconds or so of the video as it did during SDF Witness #3's Rule 15 testimony and does <u>not</u> intend to introduce the English translation of Kotey's statement, which is entirely in Arabic. The content of Kotey's statement to the SDF (other than the generic summary description provided by SDF Witness #3 during his testimony on pages 14-15 of Dkt. 171) would not be considered by the jury and the Court can give a limiting instruction to that effect to make that point clear.

is to rebut claims of coercion, not to establish the truth of Kotey's statement. And, as noted above, this testimony from SDF Witness #3 would only be introduced by the government if the defense sought to establish at trial that the statements defendant made while in SDF custody were involuntary or were somehow unreliable. Accordingly, the testimony is admissible for that purpose.

### III. The Court's Question to the Interpreter

Lastly, the government has proposed redactions to a question by the Court to the court-certified interpreter, and defendant objects. During the questioning of SDF Witness #2, the Court asked one of the court-certified interpreters to be sure that he was interpreting everything the witness stated, which the interpreter confirmed he was doing. *See* Dkt. 170, at 177:20–178:3 (highlighted in yellow in Exhibit 2). While this Court undoubtedly possesses discretion to question a witness whose answers become evidence (*see* Fed. R. Evid. 614(b)), the interpreter is not a witness, and his answers to the Court on administrative matters are not admissible evidence of any fact to put before the jury. Defense counsel has suggested to the government that this colloquy goes to the accuracy of the translation and thus should be given to the jury. But this exchange happened in an inadmissible form, between the Court and the court-certified interpreter, not through the presentation of any defense challenge to the accuracy of the translation. In fact, if the defense relies on the Court's comments to imply some inaccuracy by the interpreter instead of introducing its own contradicting expert testimony, it comes very near to inviting the jury to consider the Court's comments as substantive evidence in violation of well-established principles. *See, e.g., United States v. Blanchard*, 542 F.3d 1133, 1149 (7th Cir. 2008) (finding that introduction of trial judge's comments at a suppression hearing constituted impermissible judicial testimony in violation of Rule 605).

Had the defense wished to challenge the interpreter's translation at the time, they could have called the interpreter as an expert witness and examined him about his interpretations, or they could have called their own interpreter. Using such methods ensures that the jury is only hearing evidence that has been subjected to evidentiary standards. A sidebar conference between the Court and the court-certified interpreter should not be provided to the jury.

## CONCLUSION

The government respectfully requests that the Court enter the attached Proposed Order, finding that the government's redactions are warranted and that the defendant's proposed redactions are not. Following the Court's ruling, the government will prepare redacted versions of the written transcripts and the corresponding video-recorded testimony of SDF Witnesses #2 and 3 and will disclose those materials to the defense.

Respectfully submitted,

By:     /s/ Raj Parekh
Raj Parekh, First Assistant U.S. Attorney
Aidan Taft Grano-Mickelsen
Dennis M. Fitzpatrick
John T. Gibbs
Assistant United States Attorneys
Eastern District of Virginia
Alicia H. Cook, Trial Attorney
United States Department of Justice

## ADDENDUM A

The government understands the parties to have jointly agreed that the following portions of both SDF Witnesses' testimony should be redacted:

- In the Rule 15 deposition of SDF Witness #2, available at Dkt. 170, the parties jointly agree that the following portions should be redacted if the testimony is used at trial:
    - Page 117, lines 1–4;
    - Page 121, lines 8–13;
    - Page 122, line 23, through page 123, line 8;
    - Page 138, lines 11–23;
    - Page 139, lines 7–14;
    - Page 143, lines 5–12;
    - Page 145, lines 1–4;
    - Page 148, line 11, through page 149, line 14;
    - Page 150, lines 3–5;
    - Page 150, line 21, through page 155, line 8;
    - Page 155, line 18, through page 163, line 24;
    - Page 164, lines 4–5;
    - Page 164, line 14, through Page 170, line 19;
    - Page 175, lines 11–22;
    - Page 176, line 18, through page 177, line 1;
    - Page 178, line 25, through page 179, line 5;
    - Page 179, line 9, through page 182, line 24;
    - Page 182, line 25, through page 183, line 9;
    - Page 187, line 24, through page 187, line 8;

- Page 187, lines 17–21;
- Page 190, line 4, through 193, line 3;
- Page 193, lines 14–19;
- Page 194, lines 19 through and including "that's right, Ms. Ginsberg," in line 25;
- Page 197, lines 19–22;
- Page 198, line 15, through page 199, line 3;
- Page 199, line 24, through page 200, line 6; and
- Page 201, lines 2–12, 22–25.

- In the Rule 15 deposition of SDF Witness #3, available at Dkt. 171, the parties jointly agree that the following portions should be redacted if the testimony is used at trial:

    - Page 11, lines 2–10 and 17–24;
    - Page 13, line 17, through page 14, line 4 and lines 14-15, including the English translation exhibit;
    - Page 21, lines 8–17;
    - Page 22, line 21, through page 23, line 4;
    - Page 25, lines 19–25;
    - Page 28, line 19, through page 29, line 3;
    - Page 29, lines 7–13;
    - Page 30, line 4, through page 31, line 13;
    - Page 32, lines 13–17;
    - Page 33, lines 19–22;
    - Page 34, line 12 through and including "I don't understand that" in line 25;
    - Page 35, line 19, through page 36, line 6;
    - Page 36, lines 10 through and including "No, I do not know" in line 18;

- Page 37, lines 6–15;
- Page 38, lines 10–18;
- Page 39, line 1 through page 40, line 22;
- Page 41, line 17, through page 42, line 22;
- Page 44, lines 18–25;
- Page 46, lines 7–14;
- Page 46, line 23, through page 47, line 11;
- Page 48, line 1, through page 51, line 9;
- Page 51, lines 13–15, 19–22; and
- Page 52, lines 21–25.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2022, I electronically filed this motion with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel of record in this case.

                                        /s/   Raj Parekh
                                    Raj Parekh
                                    First Assistant U.S. Attorney
                                    United States Attorney's Office for the
                                    Eastern District of Virginia
                                    2100 Jamieson Avenue
                                    Alexandria, Virginia 22314
                                    Tel:  703-299-3700
                                    Fax: 703-299-3981
                                    Email: raj.parekh@usdoj.gov