IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | \| |
| | \| |
| v. | \|   1:20-CR-239-2 |
| | \| |
| EL SHAFEE ELSHEIKH, | \| |
| | \| |
| Defendant. | \| |

## DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE

The defendant moves this Court to exclude from evidence in this case: (1) certain documents recovered in Syria (the slavery documents); and (2) extraneous information for the foundation of witness, Jane Doe.[1] This evidence is irrelevant to the defendant's charges. Further, the probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury because the jury may impute Jane Doe's treatment to Mr. Elsheikh. Therefore, the defendant moves to exclude this evidence under Fed. R. Evid. 401, 402, 403, and 404(b).

## BACKGROUND

In August 2014, ISIS abducted Jane Doe (Doe) from her village in Kurdistan (northern Iraq). She was fifteen years old. After being taken hostage, Doe was transported to Syria with 61 other female hostages. Her captors then forced her to convert to Islam under threat of death. Doe was eventually given as property to a member of ISIS. Doe and eight other girls were taken to a house by the water (water house) where they were held for approximately ten days. Her captor told her to forget about her family because she would eventually be selected for marriage to a member of ISIS.

---

[1] The Government will identify this witness by a pseudonym at trial, therefore she will be identified as Jane Doe for the purpose of this motion.

At the water house, Doe was locked in a bedroom with the other girls. The girls were forced to clean the house and study the Koran. The girls were not permitted to go outside and told they would be killed if they tried to escape. Some of the girls were sold to ISIS fighters while at the water house. After an air strike occurred near the water house, their captor moved the remaining girls, including Doe, to another location in Aleppo, Syria (Aleppo house).

At the Aleppo house, Doe learned from her captors that she would be sold. They believed they could get a lot of money for Doe. She was told again that she must convert to Islam or she would be killed. Doe first attempted to escape captivity at this location. Doe and the other girls waited until early in the morning and snuck out of the house. They ran to a nearby village outside of Aleppo. A local woman took them in and said she would help them, but the captors found them the next morning. Three of the girls were taken back to the Aleppo location; Doe and the other two girls were taken to a house in Raqqa, Syria (Raqqa house).

Doe was punished at the Raqqa house for trying to escape. For three hours, she was beaten with belts, hoses, sticks, and fists all over her body. Doe had a gun pointed at her head and told she would be killed if she attempted to escape again. Doe had black eyes and her arm was injured so badly that she could not move it for fifteen days. They were then handcuffed, taken to a prison, and placed in a prison cell. Kayla Mueller (Mueller) was also at this prison location. Doe was handcuffed for approximately two weeks at the prison location and stayed here for about one month.

Doe, Mueller, and two other girls were then taken to an apartment near Hasaka (red apartment). The red apartment was owned by Abu Sayyaf. Doe had suicidal ideations at the red apartment. After several air strikes near the red apartment, Abu Sayyaf moved Doe and other

girls to the "dirty house" permanently. All the girls were locked in a bedroom other than when they were cleaning the house or gardening.

Doe escaped from the dirty house in approximately October 2014. She and another girl squeezed through a window with metal bars in the middle of the night. They made it to a nearby house where someone helped them get back to the Kurdish custody. Eventually, US law enforcement interviewed Doe. Doe provided enough information for the DoD to determine the location of the dirty house. The DoD conducted a raid in May 2015 and killed several ISIS members including Abu Sayyaf. While processing the dirty house for evidence, the DoD recovered the slavery documents. These documents provide various justifications and guidelines for slavery under Sharia law and appear to be ISIS documents.

Doe never encountered Mr. Elsheikh during her captivity. Nor will the evidence presented at trial show that Mr. Elsheikh ever visited any of the locations where Doe was held, including the dirty house. Furthermore, there is no connection between Mr. Elsheikh and the slavery documents.

## ARGUMENT

Federal Rule of Evidence (FRE) 401 defines relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevance also requires that "the fact is of consequence in determining the action." Fed. R. Evid. 401; *See United States v. Taylor*, 900 F.2d 779, 782 (4th Cir. 1990). Under FRE 402, evidence that is not relevant shall be excluded from a trial. *See United States v. Smallwood*, 306 F. Supp. 2d 582, 586 (E.D. Va. 2004) (quoting *United States v. Leftenant,* 341 F.3d 338, 346 (4th Cir. 2003)).

Evidence is relevant when it is introduced to show the likelihood that a defendant committed an element of a crime, or when a piece of evidence makes the commission of the crime itself more likely. However, evidence of other crimes or bad acts is typically not admissible to show a likelihood that a defendant committed an offense. "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b).

In *Smallwood*, the defendant argued that firearms found in a search of the defendant's residence, but not used in the commission of the offense at issue, were irrelevant evidence and thus should be excluded under FRE 401 and 402. *Smallwood*, 306 F. Supp. 2d at 586. This Court found that the firearms were relevant evidence because the defendant's possession of a firearm was an overt act in furtherance of the conspiracy charged and the firearm in the house made it more likely that the defendant possessed a firearm during the course of the conspiracy. *Id.* at 587. Finally, the firearms were relevant as an element of an additional charge in the indictment. *Id.*

Unlike the evidence in *Smallwood*, there are very few details of Doe's early captivity that are relevant to Mr. Elsheikh's charges. Her observations and interactions with Mueller are the primary areas where her testimony is relevant to the charges against Mr. Elsheikh. The horrific and shocking details of her captivity before she encountered Mueller are not. That information does not make any element of the charges against Mr. Elsheikh more or less likely. Nor do the slavery documents recovered from the dirty house to which Mr. Elsheikh has no connection. Thus, the evidence is irrelevant and should be excluded pursuant to Rule 402. *See United States v. Jefferson*, 623 F.Supp.2d 678, 681 (E.D. Va. 2009). Furthermore, if the Government believes

4

that Mr. Elsheikh is somehow connected to Doe's original abduction, this evidence is a crime or bad act not charged in the indictment and should be excluded on FRE 404(b).

Even if this information was relevant evidence under the definitions provided under 401 and thus admissible, it should be excluded under FRE 403.  FRE 403 states that "the court may exclude relevant evidence if its probative value is substantially outweighed by one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Therefore, relevant evidence may still be excluded because the probative value is outweighed by a prejudicial and inflammatory effect or because of its potential to confuse the issues, mislead the jury, cause undue delay, and waste time at trial.  *See* Fed. R. Evid. 403.

The United States Supreme Court has defined "unfair prejudice" as evidence that "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States,* 519 U.S. 172, 180 (1997); *United States v. Basham,* 561 F.3d 302, 327 (4th Cir. 2009).  Unfair prejudice has also been characterized as "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it."  *United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990) (abuse of discretion to admit evidence that the defendant fit profile of a drug courier during trial for possession of a firearm) (quoting *Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1134 (4th Cir. 1988)).

In this case, the details of Doe's captivity (before Mueller) and the slavery documents should be excluded under FRE 403.  This information does not go to a single element of the crime for which Mr. Elsheikh is charged.  Such evidence is unduly inflammatory and would only cause undue prejudice against Mr. Elsheikh, confuse the issues, and mislead the jury by imputing

the actions of others to Mr. Elsheikh.  Moreover, this information will provide no probative value.  This evidence will certainly cause an even more negative view of Mr. Elsheikh if the jury associates him with Doe's abduction or the slavery documents, but it will not get the Government any closer to proving the charges of the indictment.  This is exactly what FRE 403 aims to prevent either party from doing in a criminal trial and thus, the evidence should be excluded.

## CONCLUSION

Therefore, Mr. Elsheikh moves this Court to exclude from evidence:  (1) the slavery documents recovered in Syria from the dirty house; and (2) extraneous information on Doe's captivity and torture before she encountered Mueller.

Respectfully Submitted,
EL SHAFEE ELSHEIKH,
By Counsel

_____/s/_____
Nina J. Ginsberg, VSB # 19472
Zachary A. Deubler, VSB # 90669
DiMuro Ginsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
(703) 684-4333 (T)
nginsberg@dimuro.com
zdeubler@dimuro.com

_____/s/_____
Edward B. MacMahon, Jr., VSB # 25432
Law Offices of Edward B. MacMahon, Jr.
107 East Washington Street (P.O. Box 25)
Middleburg, VA 20188
(540) 687-3902 (T)
ebmjr@macmahon-law.com

                                                                                                             _____/s/_____  
                                                                            Jessica N. Carmichael, VSB #78339  
                                                                            Yancey Ellis, VSB #70970  
                                                                            Carmichael Ellis & Brock, PLLC  
                                                                            108 N. Alfred Street, 1st FL  
                                                                            Alexandria, Virginia 22314  
                                                                            (703) 684-7908  
                                                                            jessica@carmichaellegal.com  
                                                                            yancey@carmichaellegal.com

## **CERTIFICATE OF SERVICE**

     I certify that on March 1, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties to this action.

                                                                         _____/s/_____  
                                                                         Yancey Ellis