IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No.: 1:20-CR-239 |
| v. | ) | |
| | ) | |
| EL SHAFEE ELSHEIKH, | ) | |
| | ) | Hearing: March 18, 2022 |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED
MOTION *IN LIMINE* TO EXCLUDE STATEMENTS OF CO-DEFENDANT**

The defense is correct that the government previously moved *in limine* to establish the admissibility of three clips from media interviews where both the defendant and his co-conspirator, Alexanda Kotey, speak on-camera. The government incorporates those arguments here and briefly outlines the reasons these statements remain admissible. Specifically, the government maintains that the brief statements made by Kotey in those interviews are not being offered for their truth and are not hearsay or, alternatively, are admissible either as adoptive admissions or as corroborated statements against penal interest by an unavailable witness. *See* Dkt. 96, at 17–18 (government's memorandum of law); Dkt. 139, at 6–7 (government's reply). Each clip will be dealt with in turn.

**I.  Isobel Yeung Interview of the Defendant and Kotey[1]**

Kotey's statement in the Isobel Yeung clip should be admissible as an adoptive admission. She begins by asking the defendant and Kotey if they denounce the beheading of James Foley. The defendant answers, but he refuses to denounce the murder. Instead, he expresses knowledge of

---

[1] In the defense's renewed motion, they attached the three transcripts at issue. These were previously provided to the Court as part of the government's reply at Dkt. 139. The defense also highlighted the portions that relate to Kotey. The Isobel Yeung clip was Attachment 3 at Dkt. 139.

why James Foley was beheaded, and he tells Yeung that the "video seems to be self-explanatory."[2] When she presses the defendant about why James Foley was murdered, he tells her that it related to "a bombing in Mosul Dam or I think or Hadith or something like that. Uh, it was a warning I think. To stop the bombings of the Muslims in a certain area."[3] The defendant concluded by stating that if the bombing did not stop, "x, y, and zed will happen, and after that, it's a, I see it like a ball rolling."

At that point Yeung asks if that makes it justified to execute someone. Kotey responds, and his answer is entirely consistent with what the defendant had just said. Far from denouncing the murder of James Foley, he like, the defendant, offers an explanation to justify it. He tells Yeung that it relates to the "whole issue of uh, collateral damage," and that based on your perception of war, it is acceptable to take the life of an innocent person to achieve your goal or your objective.

First, this statement is not being introduced for its truth and is therefore not hearsay. *See* Fed. R. Evid. 801(c)(2). The government is certainly not introducing Kotey's statement to establish that James Foley's murder was in fact justified. The government clearly believes to the contrary and has charged Kotey and the defendant with crimes precisely because the brutal murder is patently unjustifiable. Instead, the government is introducing such statements to show what Kotey believed and, by extension, the defendant with whom he conspired, none of which are hearsay

---

[2] James Foley's execution was first depicted in an ISIS video entitled "A Message to America." The defendant's reference to the video was undoubtedly a reference to those images.

[3] The defendant was correct in his explanation. In the summer of 2014, the coalition bombing campaign against ISIS was predicated in part on the fear that if ISIS seized the Mosul Dam or the Haditha Dam in Iraq, which they were close to doing, they could cause a humanitarian catastrophe by blowing up the dams and flooding vast areas downriver.

purposes. *See United States v. Hassan*, 742 F.3d 104, 136 (4th Cir. 2014); *United States v. Ibisevic*, 675 F.3d 349 (4th Cir. 2012).[4]

But even were the Court to conclude it was being offered for its truth, it is still admissible as an adoptive admission by the defendant. It is well established that a defendant's silence when accusatory or incriminating statements are made in his presence may be taken as adoptive admissions. *Compare, e.g.*, *United States v. Higgs*, 353 F.3d 281, 309–10 (4th Cir. 2003) (holding that defendant's silence in response to informant reading him a newspaper article implicating him in the crime constituted adoptive admission), *with United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006) (holding that question must be sufficiently accusatory for defendant's answering silence to constitute an adoptive admission). As the Fourth Circuit has explained, "[a] party may manifest adoption of a statement in any number of ways, including through words, conduct, or silence." *United States v. Robinson*, 275 F.3d 371, 383 (4th Cir. 2001). Accordingly, in such cases:

> [T]he primary inquiry is whether the statement was such that, under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement.

*Ibid*. Kotey's statement—made right on the heels of the defendant's explanation for the beheading of James Foley—amply meets this standard.

---

[4] The implicit premise in defendant's motion to suppress is that Kotey's statements, his conduct, and his intent regarding the charged conduct are all irrelevant to the case against defendant. But this premise is fundamentally mistaken. The government has charged defendant with four conspiracy charges, which require the government to prove that defendant agreed with at least one other person that the crimes charged be committed, and, in fact, Kotey is listed by name in each of the four conspiracy counts as one of the people with whom the defendant conspired. The government is thus entitled to prove up facts showing that Kotey was in fact that other person, with all the requisite intent and agreements, in order to enable the jury to find a criminal conspiracy between the two.

3

This clip shows that there is no daylight between the defendant and Kotey on the issue of James Foley's murder. Foley was the first of the western hostages in this criminal conspiracy to be murdered, and the murder was widely circulated by ISIS's media wing. Moreover, the murder's brutality makes it notable: the video showed the knife being worked against Foley's throat and concluded with his decapitated head on his torso. It was thus one of the most notorious and public crimes committed by ISIS.

The Yeung interview occurred in 2018, four years after Foley's murder. Both the defendant and Kotey had plenty of time to reflect on that murder and the reasons for it. Yet when they were asked about it on-camera, they continued to justify it. Neither one expressed any remorse. The defendant stated an explanation for the murder as a "warning," and Kotey immediately followed on defendant's explanation with further support, calling it "collateral damage" and implying that taking innocent life is sometimes justified. Had defendant disagreed with Kotey's statements or justifications in any way, the brutality and notoriety of the murder would have certainly prompted him to interject and distance himself from Kotey's statements.

While Kotey's statement seeking to justify the murder of James Foley is not offered to prove the truth of the matter asserted, it is offered to show his belief. Significantly, based on what was said in that interview clip, it is a belief that is plainly shared by the defendant. Accordingly, Kotey's statement in the Yeung video clip is admissible.

## II.     Stuart Ramsey Interview of the Defendant and Kotey[5]

In the Stuart Ramsey clip, the defendant once again does most of the talking. In fact, the government does not intend to play the last three lines where Kotey says that America did not

---

[5] The Ramsey clip was government's Attachment 5 at Dkt. 139.

come here with the "approval of the Syrian government," or Stuart Ramsey's final three lines. Accordingly, the only utterance in that clip by Kotey is not even a statement, it is a question ("By which standards?"). "A question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion." *United States v. Sinclair*, 301 F. App'x 251, 253 (4th Cir. 2008) (citing cases from the Second, Fifth, Seventh, and Tenth Circuits). In the same way, the government is not offering Kotey's question for the truth of any matter asserted. It is simply offered for continuity of the clips and as a preface to the defendant's subsequent statements. *See, e.g.*, *United States v. Jordan*, 952 F.3d 160, 168 (4th Cir. 2020) (holding that statements may be admitted as context for the defendant's own statements). To the extent the Court disagrees and considers it hearsay, it is still admissible as an adoptive admission. Immediately after Kotey asks his question, the defendant chimes in with a nearly identical ("By what standards am I not compelled?"). To the extent that Kotey's question can even be deemed a statement with an assertion, it is immediately adopted by defendant, who carries on conversation from Kotey.

### III.   Quentin Somerville Interview of the Defendant and Kotey[6]

The last clip also involves the defendant doing virtually all of the talking. The only comment by Kotey is a joke about what the defendant had just said. Specifically, after the defendant spelled his name for the camera crew using the military phonetic alphabet, Kotey responded by saying, "I'm not gonna do none of that Echo stuff here." He then laughed. The defendant also laughed as he said, "I was an Army Cadet. I like to show it off sometimes." That was the entirety of Kotey's contribution to this clip.

---

[6] The Somerville clip was government's Attachment 7 at Dkt. 139.

Again, his statement is not being offered for the truth of the matter asserted. It is simply offered to show what prompted Elsheikh to make that final statement about being an Army Cadet and liking to show it off sometimes. *See Jordan*, 952 F.3d at 168.

## Conclusion

In every instance objected to by the defendant, the government is not introducing the statements of Kotey to prove the truth of any assertions contained within. Rather, the government is introducing them only to show, in one instance, what Kotey and the defendant believed about the justifications for murdering innocent civilians. In the others, the government introduces the statements solely for context to the defendant's own statements, which the government intends to connect to other relevant evidence to demonstrate that defendant committed the offenses charged. Each of these are permissible non-hearsay purposes or may be taken as adoptive admissions from the defendant himself. Accordingly, the defendant's renewed motion *in limine* to exclude Kotey's statements should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    /s/
Raj Parekh, First Assistant U.S. Attorney
Dennis Fitzpatrick
Aidan Taft Grano-Mickelsen
John T. Gibbs
Assistant United States Attorneys
Alicia Cook
Department of Justice Trial Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
T: (703) 299-3700

## CERTIFICATE OF SERVICE

     I hereby certify that on March 11, 2022, I electronically filed this memorandum with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel of record in this case.

By:          /s/
Aidan Taft Grano-Mickelsen
Assistant United States Attorney
U.S. Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
T: 703-299-3700
Email: aidan.grano-mickelsen@usdoj.gov