IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | ███████████ |
| | ) | |
| v. | ) | Criminal No.: 1:20-CR-239-2 |
| | ) | |
| ELSHAFEE ELSHEIKH, | ) | Hearing: March 25, 2022 |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM RE
ADMISSIBILITY OF OUT-OF-COURT STATEMENTS**

**Introduction**

On March 1, 2022, the government filed a memorandum notifying the Court and defense

counsel about categories of out-of-court statements that it would introduce through testimony and

exhibits at trial. *See* Dkt. 218. On March 18, 2022, the Court held a pretrial hearing on pending

motions *in limine* and solicited argument from the parties about these out-of-court statements.[1]

---

[1] At the March 18 hearing, defendant's counsel suggested that a lack of pre-trial identification
as to the specific statements being proffered was prejudicial to the defendant's ability to object.
The government respectfully notes that while the Federal Rules of Evidence require prior notice
of specific evidence before trial in certain cases (*see, e.g.*, Fed. R. Evid. 404(b)(3)), the only such
requirements for hearsay evidence exist for (1) the absence of public records; and (2) the residual
hearsay exception. *See* Fed. R. Evid. 803(10)(B), 807. The government has been unable to locate
any authority for the proposition that the defense is entitled to pre-trial identification of specific
out-of-court statements outside of these exceptions. To the contrary, the Supreme Court has rec-
ognized that the prosecution is generally not obligated to disclose how it intends to present
evidence before trial. *See, e.g.*, *United States v. Ruiz*, 536 U.S. 622, 630 (2002) (noting that "the
prosecution's potential case" is "a matter that the Constitution does not require prosecutors to dis-
close"). Similarly, the Rules' specificity in requiring notice as to some exceptions and not as to the
others should be understood as intending to exclude notice requirements for the latter. *See, e.g.*,
*Russello v. United States*, 464 U.S. 16, 23 (1983); *Andrus v. Glover Constr. Co.*, 446 U.S. 608,
616–17 (1980); *see also United States v. Tsarnaev*, 142 S. Ct. 1024, 1036 (2022) (reiterating prin-
ciple that courts' supervisory authority cannot conflict with or circumvent a Federal Rule (citing
*Carlisle v. United States*, 517 U.S. 416, 426 (1996))). In the mine-run criminal case, the prosecu-
tion regularly seeks to admit hearsay evidence through a witness at trial without having moved *in*

The Court subsequently entered an order directing the government to file "a supplemental briefing listing the statements, video recordings, and letters by deceased victims that it intends to elicit at trial," as well as "a list of facts and anticipated evidence regarding Kayla Mueller's death." Dkt. 240, at 2. The government moved for authorization to file a partially sealed version of this supplemental memorandum with redactions of the evidence as well as several under-seal exhibits; defendant did not oppose. *See* Dkt. 246. The Court granted that motion with the expiration of sealing if and when the evidence described herein is admitted at trial. *See* Dkt. 250. Accordingly, the government files this supplemental memorandum addressing the Court's questions under seal, with a redacted version to be filed on the public electronic docket.

---

*limine*, and as this Court noted during the hearing, defense counsel must often listen to the evidence as it comes in and object without prior briefing or motion practice. Accordingly, the government respectfully suggests that the defense was not and is not entitled to such pre-trial identifications.

The government respects the Court's desire to promote efficient pre-trial resolution of evidentiary issues. *See* Dkt. 240, at 1. As the Court itself recognized at the hearing, the government's intent in providing a pre-trial memorandum was to aid the Court and defense counsel by teeing up the legal frameworks for specific evidentiary questions that would unfold at trial. In compliance with the Court's order, therefore, the government has used its best efforts to compile in this supplemental memorandum a thorough list of the out-of-court statements of deceased victims that it currently intends to introduce through witness testimony, documents, or video or audio recordings. Any of the Court's pre-trial evidentiary determinations, and any made during trial, will of course inform the government's subsequent presentation of evidence. However, given that no rule of procedure or evidence requires specific pre-trial identification of all out-of-court statements, the government also respectfully requests that the Court's order not preclude the government from seeking the introduction of any other out-of-court statements by deceased victims that it determines in the course of the trial may become necessary, as well as the other categories of out-of-court statements noted in its initial memorandum. *See* Dkt. 218, at 2, 6, 13–14 (identifying other potential out-of-court statements to be introduced, including statements by ISIS members and media organizations and statements by the victim families). Decisions *in limine* are always subject to the trial court's considered discretion to alter them during trial. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citing *Luce v. United States*, 469 U.S. 38, 41–42 (1984)). Accordingly, the government respectfully suggests that giving preclusive effect to pre-trial identification of specific evidence in this manner would be inconsistent with the Federal Rules and ordinary criminal practice relating to hearsay evidence.

**Out-of-Court Statements by Deceased Hostages**

## I.   Exhibits Containing Recorded Out-of-Court Statements

The government intends to introduce the following substantive exhibits, which are documents, audio recordings, or video recordings that contain statements by the deceased hostages. The exhibits have also been filed under seal attached to this supplemental brief.[2]

### A.  Kayla Mueller

- M. Ex. 1 (GX 6-1a): The first seven minutes of a video recorded speech by Kayla Mueller to the Kiwanis Club in 2013[3]



---

[2] As used in this memorandum, "M. Ex. __" refers to an exhibit to this supplemental memorandum. The government has also provided the exhibit's current trial exhibit designation, styled as "GX __," corresponding to the exhibit list filed by the government on March 22, 2022. *See* Dkt. 249.

[3] The government has previously argued that this exhibit is also admissible under the state of mind and residual hearsay objections. *See* Dkt. 218, at 15 & n.4.

[4] ███████████████████████████████████████ The former statement is admissible as a statement of physical condition (*see* Fed. R. Evid. 801(3)), and the latter is admissible as an admission by a party-opponent, as an authorized statement or an adoptive admission (*see* Fed. R. Evid. 801(d)(2)(B)–(D)).

[5] ███████████████████ These statements are all admissible as present sense impressions and statements of physical, mental, or emotional condition. *See* Fed. R. Evid. 803(1), (3).

[6] ████████████████████████████████████████████



- ███████████████████████████████████████████[7]
- ███████████████████████████████████████████[8]

**B. Steven Sotloff**

- ███████████████████████████████████████████[9]
- ███████████████████████████████████████████[10]

[7] ███████████████████████████████████████████

[8] ███████████████████████████████████████████

[9] ███████████████████████████████████████████ Likewise, because the evidence suggests that Steven Sotloff was compelled to make these statements on behalf of his captors, they are further admissible as admissions by a party-opponent through the authorized statement, adoptive admission, and agency theories. *See, e.g.*, Fed. R. Evid. 801(d)(2)(B)–(D). Lastly, the evidence is admissible under the residual hearsay exception, given that the context of the appeal and the corroboration of facts referred to in the appeal demonstrate its reliability.

[10] ███████████████████████████████████████████

- ████████████████████████████████████████████
  ███████

### C. Peter Kassig

- ████████████████████████████████████████████
  ███████████████████████[11]

- ████████████████████████████████████████████
  ████████████[12]

- ████████████████████████████████████████████
  ██████████[3]

---



[11] ███████████████████████████████████████████
██████████ Because Kassig was clearly compelled to make this statement espousing his cap-
tors' views and demands, this statement is alternatively admissible as an authorized statement by
a party-opponent or adoptive admission. *See, e.g.*, Fed. R. Evid. 801(d)(2)(B)–(D). ████████
████████████████████████████████████████████
████████████████████████████ oreover, the statement is admissible for the simple
fact that it was made to demand that a third party do something in exchange for Kassig's release,
which is an element of the hostage-taking charges. *See United States v. Ayala*, 601 F.3d 256, 272
(4th Cir. 2010).

[12] ███████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████

[13] ███████████████████████████████████████████

## II.     Testimony as to Out-of-Court Verbal Statements

Through witness testimony by some of the released hostages as well as exhibits, including documents and video or audio recordings, the government currently intends to seek the introduction of the following statements by deceased hostages.

### A.  Kayla Mueller



- [REDACTED] [14]

- [REDACTED] [15]

[14] [REDACTED]

[15] Because of the corroborative evidence the government has presented regarding [REDACTED], these statements are also sufficiently reliable to fall within the residual hearsay exception. *See* Fed. R. Evid. 807.

[16] Even if the Court rules against the government on the forfeiture-by-wrongdoing exception, the government believes these statements would meet the requirements of the residual hearsay exception under Rule 807, because [REDACTED]



and





- [BLACK REDACTION][17]

- [BLACK REDACTION][18]

- [BLACK REDACTION][19] and

- [BLACK REDACTION][20]

**B. James Foley**

- [BLACK REDACTION][21]

---



[17] [BLACK REDACTION]

[18] [BLACK REDACTION]

[19] This statement also satisfies the state of mind exception to hearsay. *See* Fed. R. Evid. 803(3).

[20] This statement also satisfies the state of mind exception to hearsay. *See* Fed. R. Evid. 803(3).

[21] [BLACK REDACTION]

- 

### C. Peter Kassig

- 





**D.  Steven Sotloff**

**E.  David Haines**

---



[26] This statement is also admissible as under the state of mind exception. *See* Fed. R. Evid. 803(2).



- 

## F. Alan Henning

- 

### III.    Evidence Surrounding the Death of Kayla Mueller

The government begins by noting the different legal lenses applicable to the death of Kayla Mueller.[33] Seven of the eight charges with which the defendant is charged contain a resulting-in-death element that aggravates the simple form of the crime. As recounted by the government's proposed jury instructions (to which defendant did not file any objection), the resulting-in-death inquiry requires only that the government prove beyond a reasonable doubt that the charged offense was a but-for cause of Mueller's death. These seven crimes do not require the government to prove that the defendant or any of his co-conspirators personally killed Mueller or that they intended to do so. Count 6, conspiring to murder U.S. nationals abroad, requires the government to prove beyond a reasonable doubt that defendant and at least one other person entered into an agreement intending that someone in the conspiracy would kill at least one of the American hostages in a manner constituting federal murder. It does not, however, require the government to prove, beyond a reasonable doubt, that the murder actually occurred.

However, for purposes of the forfeiture-by-wrongdoing exception to the hearsay rules, the government need only prove that it is more likely than not that defendant or one of his co-conspirators engaged in wrongful conduct that had, as one of its purposes, preventing Mueller from being available to provide future evidence or testimony against them. *See United States v. Jackson*, 706 F.3d 264, 267, 269 (4th Cir. 2013); *United States v. Dinkins*, 691 F.3d 358, 384–85 (4th Cir. 2012).[34] Covered conduct "includes but is not limited to murdering a witness." *Jackson*, 706 F.3d at 267.

---

[33] The arguments made in this section are equally applicable to the murder of the other hostages, although the manner in which they were killed was different.

[34] At certain points in his responsive briefing and argument during the hearing, defendant appeared to suggest that some kind of heightened evidentiary standard may be necessary to find the

There need not be a specifically contemplated criminal case for the requisite intent to exist. *See United States v. Gray*, 405 F.3d 227, 241 (4th Cir. 2005); *accord United States v. Becker*, 80 M.J. 563, 568–69 (U.S. N.-M. Ct. Crim. App. 2020) (applying *Giles* to conclude that forfeiture-by-wrongdoing covers "an intent to prevent the witness not only from testifying at some formal proceeding, but also from reporting abuse, cooperating with law enforcement, or resorting to outside help, irrespective of whether criminal charges are reasonably foreseeable at the time of the conduct"). The Fourth Circuit has rejected the idea that a dual purpose to retaliate, for example, undercuts circumstantial evidence of a design to prevent a witness from providing evidence or testimony. *See Jackson*, 706 F.3d at 269. In the domestic violence context, the Supreme Court itself observed that acts that "are intended to dissuade a victim from resorting to outside help" and are "designed to prevent testimony to police officers or cooperation in criminal prosecutions" could support a finding that the perpetrator intended "to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution." *Giles v. California*, 554 U.S. 353, 377 (2008). The Court found that "[e]arlier abuse, or threats of abuse, intended to

requisite intent for this exception, *i.e.*, that the defendant's intent be established by some "explicit" evidence or that the evidence needed to be "substantial." But it is well established in this circuit that the forfeiture-by-wrongdoing exception is judged under the same standard as every other evidentiary question: the government must prove its requirements by a preponderance. *See, e.g.*, *United States v. Gray*, 405 F.3d 227, 243 (4th Cir. 2005); *see also United States v. Johnson*, 767 F.3d 815, 821–23 (9th Cir. 2014) (citing cases). And, of course, the Court is not bound by the Rules of Evidence in making such an admissibility determination. *See* Fed. R. Evid. 104(a).

The Court also does not need direct evidence to infer intent. *See, e.g.*, *United States v. Burgos*, 94 F.3d 849, 857–58 (4th Cir. 1996) (en banc) (noting that some crimes are by nature "clandestine and covert, thereby frequently resulting in little direct evidence"); *see also United States v. Engle*, 676 F.3d 405, 418 (4th Cir. 2012) (recognizing that inferences of intent may be drawn from circumstantial evidence).

dissuade the victim from resorting to outside help would be highly relevant to this inquiry." *Ibid.* Accordingly, the government need only demonstrate that the wrongful conduct at issue was at least partially designed to prevent the victim from providing evidence against them, whether to law enforcement or in the context of a formal proceeding.



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

     Lastly, the government notes that in defendant's post-capture interviews with the media, he and Kotey repeatedly declined to answer certain questions because of the potential exposure to criminal liability and evinced a keen understanding of American legal protections. In his interview with Jenan Moussa, defendant responded to a question about mistreating hostages by telling Moussa that there was an "ongoing legal process" and that he would talk about any accusations made against him when that process began. *See* Dkt. 96, at 6; Dkt. 188, at 13. He then ultimately terminated the interview after only ten minutes, reminding Moussa that any accusations against him had to be proven at trial. *See* Dkt. 96, at 6. In a 2018 interview with Sky News, Elsheikh and Kotey both made clear that they did not want to give answers that implicated their legal case—as Kotey put it, "not considering my current disposition." Dkt. 96, at 9.[36] In short, defendant and Kotey's statements indicate that the ISIS hostage-takers were very aware of the threat of prosecution for their criminal activities and actively took steps to evade discovery and criminal liability

---

[36] Kotey's knowledge of legal exposure and desire to avoid it is probative because the Fourth Circuit permits forfeiture-by-wrongdoing on a *Pinkerton* theory, and therefore, the co-conspirators' joint or collective intent to avoid criminal exposure by murdering or disappearing hostages is squarely relevant. *See, e.g.*, *Dinkins*, 691 F.3d a, 384–85.

for their actions. *See, e.g.*, Dkt. 188, at 28, 29–30 ("Rather, the record discloses that Defendant is an intelligent individual who made careful and calculated choices about what to say and how much to share in different contexts.").[37] Coupled with other evidence about the hostage-takers' desire for secrecy and threats against the hostages, this awareness further strengthens the inference that defendant and his co-conspirators were aware of and intending to reduce the risk of prosecution by killing unransomed hostages who then could no longer provide evidence or information to be used against them. *See, e.g.*, *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir. 1982) ("[S]ubsequent conduct may be highly probative of prior intent. That one has thought in a particular illegal way over a period of time is evidence that one's thought patterns had already been so developed and were so operating on another previous occasion.").

The Fourth Circuit has affirmed this Court's application of the forfeiture-by-wrongdoing exception when the defendant engaged in threats against the unavailable witness, stated his desire to kill her before allowing her custody of their child, and circumstantial evidence supported the commission of the murder. *See United States v. Lentz*, 384 F. Supp. 2d 934, 942–44 (E.D. Va. 2005), *aff'd*, 524 F.3d 501, 528–29 (4th Cir. 2008). So too here: ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[37] This conclusion is further strengthened by defendant's statements in his *Mirandized* FBI interviews. For example, in his *Mirandized* interview with FBI Special Agents Chiappone and Nutter on March 27, 2018, defendant said that he would only answer certain questions without a lawyer present, stated he wanted to see what charges would be brought before answering, and noted that he understood that the FBI interrogators did not know what, if anything, he said in his DOD interviews. *See, e.g.*, Dkt. 96, at 4 & n.4; Dkt. 188, at 10 & n.11, 23. Similarly, on the following day, defendant again limited the scope of the questions he would answer for the FBI and ultimately terminated the interview. *See* Dkt. 96, at 5.





Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____

Raj Parekh, First Assistant U.S. Attorney
Dennis Fitzpatrick
John T. Gibbs
Aidan Taft Grano-Mickelsen
Assistant United States Attorneys
Alicia Cook
Department of Justice Trial Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
T: 703-299-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2022, I electronically filed a redacted version of this motion with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing to all counsel of record in this case. I also submitted an unredacted version of this memorandum and its supporting exhibits to the Clerk's Office in hard copy under seal and provided unredacted copies to defense counsel.

By:   _____/s/_____
Aidan Taft Grano-Mickelsen
Assistant United States Attorney
U.S. Attorney's Office for the
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
T: 703-299-3700
Email: aidan.grano-mickelsen@usdoj.gov