IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 1:20-cr-239 |
| | ) | |
| EL SHAFEE ELSHEIKH, | ) | |
| Defendant. | ) | |

### ORDER

The Indictment in this criminal prosecution charges Defendant with hostage-taking resulting in death as well as with conspiring to commit hostage-taking, conspiring to murder United States citizens outside of the United States, and conspiring to provide material support to terrorists and a foreign terrorist organization. In the motion at bar, Defendant's Motion *in Limine* to Exclude Evidence (Dkt. 219), Defendant seeks to exclude certain evidence related to prospective Government witness Jane Doe ("Doe").[1] Doe is an Iraqi woman who was captured and held as a slave by members of the Islamic State of Iraq and Syria ("ISIS"). Defendant seeks to exclude testimony regarding Doe's capture and treatment by ISIS, as well as ISIS documents setting forth justifications and guidelines for slavery under Islamic law recovered from a location where Doe was held captive. Defendant argues that the testimony and documents are both irrelevant under Rule 402 and unfairly prejudicial under Rule 403, Fed. R. Evid. Defendant's Motion has been fully briefed and argued orally at a hearing on March 18, 2022, and is accordingly ripe for disposition.

### I.

The parties largely agree on the facts relating to Defendant's Motion *in Limine*. Specifically, Doe was captured by ISIS on August 3, 2014, when ISIS fighters invaded her

---

[1] Doe's true name is classified and, accordingly, she will be referred to by a pseudonym.

1

Yazidi community near Sinjar Mountain in Iraq and abducted several women and girls. Doe was then transported to Raqqa, Syria, where she was held in the home of a man she knew as "Abu Khalid." Doe later identified Abu Khalid as then-ISIS leader Abu Baker al-Baghdadi. Doe briefly escaped the home, but was recaptured, beaten, and brought to a prison in Raqqa.

Kayla Mueller, an American aid worker who was captured and held hostage by ISIS in Syria, was also held at the Raqqa prison when Doe arrived. For reference, the Indictment in this matter alleges that Mueller was the victim of an ISIS hostage-taking conspiracy, of which Defendant was a member. The Indictment further alleges that Defendant conspired to provide material support to terrorists and to a foreign terrorist organization, namely ISIS. Count Three of the Indictment alleges that Kayla Mueller's death resulted from the conspirators' criminal activities.

In September 2014, Doe and Mueller were relocated from the Raqqa prison to the home of a senior ISIS member named Abu Sayyaf. "Abu Khalid," or al-Baghdadi, also came to stay at Sayyaf's residence, where he repeatedly raped Mueller. In October 2014, Doe was able to escape from captivity.[2] Doe was eventually interviewed by officials from the United States. Based on Doe's information, the Department of Defense ("DOD") carried out a military raid of the Sayyaf residence in May 2015. As a result of the raid, the DOD recovered ISIS documents setting forth justifications and guidelines for slavery under Islamic law.

## II.

Defendant's Motion *in Limine* seeks to exclude evidence as both irrelevant pursuant to Rule 402 and as unfairly prejudicial pursuant to Rule 403. With respect to the first argument, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would

---

[2] Mueller remained in ISIS captivity following Doe's escape. In early 2015, Mueller's family received an email claiming that Mueller had been killed in an air strike near Raqqa.

2

be without the evidence; and (b) the fact is of consequence in determining the action." Rule 401, Fed. R. Evid. As the Fourth Circuit has made clear, "[t]he threshold for relevancy is relatively low." *United States v. Powers*, 59 F.3d 1460, 1465 (4th Cir. 1995). In turn, Rule 403 permits a court to exclude relevant evidence when "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Importantly, unfair prejudice does not include the "damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003) (quotation marks and citation omitted).

Defendant first seeks to exclude foundational testimony from Doe regarding her capture and treatment by ISIS prior to her movement to the Raqqa prison where Mueller was held. In this regard, the Government seeks to elicit "simple facts of [Doe's] capture, detention, escape, and recapture" in order "to establish the narrative foundation for [Doe's] encountering Mueller." Dkt. 232 at 13 n. 5. Specifically, Doe's anticipated testimony will establish that: (i) Doe was captured by ISIS fighters from her Yazidi community in Iraq, (ii) Doe was then transported to Syria and held in the home of then-ISIS leader al-Baghdadi, and (iii) as the result of an escape attempt, Doe was beaten and brought to a prison in Raqqa where she encounter Kayla Mueller. As Defendant points out, the Government does not contend that Defendant took part in Doe's capture or confinement or interacted with Doe. Thus, Defendant argues that Doe's initial capture is irrelevant to the charges against Defendant. Defendant further argues that any details of Doe's brutal treatment at the hands of ISIS would give rise to "unfair prejudice" as contemplated by Rule 403.

Defendant's arguments in this regard are not persuasive. First, the anticipated testimony by Doe clearly meets the "relatively low" threshold for relevance. *Powers*, 59 F.3d at 1465. Importantly, the foundational testimony that the Government seeks to elicit from Doe will aid the

3

jury in weighing Doe's testimony regarding Mueller, to which Defendant does not object in his motion. As stated, Doe's testimony will provide context for the jury to explain why Doe was in ISIS captivity and, specifically, how she came to be held with Mueller. Moreover, the fact that Doe was held by "Abu Khalid" before meeting Mueller would explain and corroborate Doe's testimony that she recognized "Abu Khalid" at the Sayyaf residence, where Mueller was also held, as well as Doe's later identification of "Abu Khalid" as then-ISIS leader al-Baghdadi.[3]

At oral argument, Defendant further contended that testimony regarding Doe's capture and treatment must be deemed irrelevant because it falls outside the scope of the conspiracy alleged in the Indictment. Specifically, Defendant asserted that he is charged only with conspiracy to take foreign hostages for ransom, which Defendant contended must be deemed separate and apart from a conspiracy to take Iraqi hostages and hold them as slaves. This contention, which Defendant did not support with any relevant authorities, fails for two reasons. First, as noted, details surrounding Doe's capture support and explain Doe's testimony with respect to Mueller, who is among the victims listed in the Indictment. *See United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015) ("In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other [uncharged] offenses to . . . inform the jury of the background of the conspiracy charged.")

Second, the Government also persuasively argues that Doe's capture is part and parcel of the ISIS conspiracy in which Defendant allegedly participated. Notably, Defendant is charged with not only conspiracy to take hostages, but also conspiracy to provide material support to

---

[3] It is worth emphasizing that, under Count Three of the Indictment, the Government must prove that Mueller died as a result of the ISIS hostage-taking conspiracy in which Defendant allegedly participated. Doe's testimony is certainly probative in this respect, insofar as it establishes that Mueller was confined in a home by high-level ISIS operatives in the months leading up to her death, during which time Mueller's family received ransom demands (*see infra* n. 4).

4

terrorists and a foreign terrorist organization. Material support plausibly encompasses the capture of slaves to serve ISIS members, and Defendant offered no argument to the contrary. Additionally, the facts proffered by the Government demonstrate the existence of a broader conspiracy than the scheme described by Defendant at oral argument. For example, the fact that Mueller and Doe were forcibly confined in the same facilities at the same times, during which time conspirators were actively soliciting ransom payments from Mueller's family,[4] rebuts the contention that Doe and Mueller were victims of completely separate conspiracies. Other facts proffered by the Government, such as the fact that Mueller was subjected to repeated sexual assaults by al-Baghdadi at the Sayyaf residence, also rebut the contention that the victims described in the Indictment were held solely for the purpose of seeking ransom.

In summary, the anticipated testimony regarding Doe's capture and treatment that the Government seeks to elicit at trial is plainly relevant. That testimony: (i) provides helpful foundation to explain how Doe came to be held at the same location as Mueller, (ii) supports and corroborates other important parts of Doe's testimony, such as her identification of then-ISIS leader al-Baghdadi, and (iii) describes an ongoing conspiracy to capture and hold hostages and provide material support to ISIS as alleged in the Indictment.

Nor is Defendant correct in arguing that the probative value of Doe's testimony is substantially outweighed by the risk of unfair prejudice. As noted, there is plainly substantial probative value from the anticipated testimony that the Government intends to elicit from Doe. *See United States v. Williams*, 445 F.3d 724, 731 (4th Cir. 2006) (making clear that Rule 403 requires that the risk of unfair prejudice must *substantially* outweigh the probative value of evidence to support exclusion). Moreover, the Government also represents that it does not intend

---

[4] The Government represents that the evidence at trial will show that Mueller's family received emails in August and September 2014.

to elicit extensive details about the treatment Doe suffered before meeting Mueller, and instead only seeks to elicit the necessary foundational details described *supra*, which limits the prejudicial impact of the testimony.[5] Moreover, the fact that Doe's testimony may connect Defendant to hostage-taking activities by ISIS is hardly *unfair*, given that the Indictment alleges that Defendant conspired to support ISIS through hostage-taking. *See United States v. Hassan*, 742 F.3d 104, 132 (4th Cir. 2014) (linking defendants to extremist jihadist groups was not unfairly prejudicial because "the charges that were lodged against the appellants meant that the prosecution would necessarily seek to establish that link").[6] Accordingly, Defendant's objections to the admissibility of Doe's foundational testimony pursuant to Rules 402 and 403 must be rejected.

To continue, Defendant's objection to the admissibility of the slavery documents recovered at the Sayyaf residence, where Mueller and Doe were held, is also unpersuasive. With respect to the documents' relevance, Defendant flatly asserts that "there is no connection between Mr. Elsheikh and the slavery documents." Dkt. 219 at 3. This is incorrect because, as the Government points out, the documents connect to Defendant's alleged conduct in two important ways. First, the documents contain ISIS insignia and stamps from various ISIS departments, which supports Doe's anticipated testimony that she and Mueller were held by members of ISIS at the Sayyaf residence. In turn, those facts support the Government's contention that Mueller died as the victim of an ongoing ISIS hostage-taking conspiracy.

---

[5] To the extent that the Government's examination of Doe goes beyond the simple foundational narrative described in the Government's brief, Defendant may renew its objection at trial.

[6] Defendant also appears to argue that introducing testimony about Doe's initial capture could confuse or mislead the jury with respect to Defendant's alleged conduct. However, Defendant is free to make clear through cross-examination of Doe that Doe never saw or interacted with Defendant while in ISIS captivity.

Second, the documents serve to establish ISIS's purpose and justification for slavery and the capture of non-Muslims. In this regard, it is important to emphasize that Defendant made statements to media journalists in 2018 and 2019 which closely mirror certain contents of the slavery documents. For instance, in an April 2018 interview with Jenan Moussa, Defendant declined to denounce slavery and discussed Islamic jurisprudence governing slavery. In an August 2019 interview with the Washington Post, Defendant argued that Islamic law permits the capture or imprisonment of certain non-believers who enter Islamic communities. The overlap between Defendant's statements and the slavery documents is plainly relevant because, in order to prove that Defendant engaged in an unlawful conspiracy, the Government must demonstrate that Defendant "had knowledge of the criminal objective of the [conspiracy] and willfully joined the conspiracy with the intent to further its unlawful purpose." *United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017). In this respect, the slavery documents espouse ISIS's support for the capture of hostages and slaves, and Defendant's corresponding statements demonstrate Defendant's knowledge of and support for ISIS's objectives and activities.

Moreover, Defendant's objection to the slavery documents pursuant to Rule 403 also fails. First, as noted, the documents have clear probative value with respect to the charges against Defendant, both because they confirm aspects of Doe's testimony and because they help establish Defendant's knowledge of and support for ISIS's hostage-taking activities. Second, an association between Defendant and the contents of the documents can hardly be described as "unfair." *Hassan*, 742 F.3d at 132. To be sure, the documents espouse radical, repugnant ISIS ideology, but the nature of this prosecution requires the Government to prove that Defendant was an active ISIS conspirator. Moreover, Defendant's own words to media interviewers drew a clear connection between Defendant and the slavery documents. Defendant cannot plausibly describe

as "unfair" the "legitimate probative force of" evidence that arises from Defendant's own words and conduct. *See Mohr*, 318 F.3d at 619. Accordingly, Defendant's objection to the admissibility of the ISIS slavery documents must also be overruled.

### III.

Accordingly, for reasons stated in this Order,

It is hereby **ORDERED** that Defendant's Motion *in Limine* to Exclude Evidence (Dkt. 219) is **DENIED**.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
March 24, 2022

/s/
T. S. Ellis, III
United States District Judge

/s/
T. S. Ellis, III
United States District Judge