1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
UNITED STATES OF AMERICA,        :     Criminal Case
                                 :     No. 20-CR-00239-TSE
            Plaintiff            :
        v.                       :
                                 :
EL SHAFEE ELSHEIKH,              :     March 29, 2022
                                 :     9:10 a.m.
            Defendant            :
...........................      :     ........................
```

TRANSCRIPT OF TRIAL PROCEEDINGS
VOLUME 1
JURY SELECTION
BEFORE THE HONORABLE T.S. ELLIS, III
UNITED STATES DISTRICT JUDGE
and a jury

<u>APPEARANCES:</u>

```
FOR THE PLAINTIFF:          RAJ PAREKH
                            JOHN T. GIBBS
                            DENNIS FITZPATRICK
                            ALICIA H. COOK
                            U.S. ATTORNEY'S OFFICE
                            2100 Jamieson Avenue
                            Alexandria, VA  22314
                            703-299-3700

FOR THE DEFENDANT:          NINA J. GINSBERG
                            ZACHARY ANDREW DEUBLER
                            DiMURO GINSBERG PC
                            1101 King Street
                            Suite 610
                            Alexandria, VA  22314
                            703-684-4333

                            EDWARD B. MacMAHON
                            LAW OFFICES OF
                            EDWARD B. MacMAHON, JR.
                            PO Box 25
                            107 East Washington Street
                            Middleburg, VA  20118
                            540-687-6366

                            (APPEARANCES CONTINUED ON
                            FOLLOWING PAGE.)
```

2

```
 1
 2      FOR THE DEFENDANT:          JOHN EDWARD YANCEY ELLIS
                                    CARMICHAEL ELLIS & BROCK
 3                                  108 N. Alfred Street
                                    1st Floor
 4                                  Alexandria, VA  22314
                                    703-684-7908
 5
 6      OFFICIAL COURT REPORTER:    REBECCA STONESTREET, RPR, CRR
                                    U.S. District Court, 9th Floor
 7                                  401 Courthouse Square
                                    Alexandria, Virginia  22314
 8                                  (240) 426-7767
 9                         ( Pages 1 - 200)
10
11          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | **P R O C E E D I N G S**                                    |
| 2  | COURTROOM CLERK:  Court calls criminal case                  |
| 3  | United States of America versus El Shafee Elsheikh, Case      |
| 4  | Number 2020-CR-239.  This case comes on for trial by jury.    |
| 5  | THE COURT:  All right.  Who's here for the government?        |
| 6  | MR. FITZPATRICK:  Good morning, Your Honor.                   |
| 7  | Dennis Fitzpatrick, Raj Parekh, John Gibbs, Alicia Cook, and |
| 8  | Aidan Grano-Mickelsen on behalf of the United States.  We also|
| 9  | have Nicole Lopez with us today.                             |
| 10 | THE COURT:  And who is here on behalf of the defendant?      |
| 11 | MR. MACMAHON:  Edward MacMahon with Nina Ginsberg,           |
| 12 | Yancey Ellis, and Zack Deubler for the defense.  And Pam Bishop|
| 13 | is with us in the well of the court as well, Your Honor.     |
| 14 | THE COURT:  All right.  Good morning to all of you.          |
| 15 | Let me note, as I have in the past, but since this is the first|
| 16 | day of the trial, let me say it again, because I think it's  |
| 17 | important to Mr. Ellis that I put on the record that there's no|
| 18 | familial relationship at all between us.                     |
| 19 | Is that correct, Mr. Ellis?                                  |
| 20 | MR. ELLIS:  It is, sir.  Always appreciated.                 |
| 21 | THE COURT:  All right.  Let me note that by no means to      |
| 22 | I mean to suggest that I would not welcome a family          |
| 23 | relationship, but there isn't one.                          |
| 24 | Now, we have -- on the 10th floor we have an overflow        |
| 25 | courtroom that we thought we would need this morning.  It turns|

4

1    out that we have -- and I think the deputy clerk has informed

2    you that while we summoned a sizable number for this morning to

3    begin the jury selection process, there were a number of

4    absences, people not feeling well and the like.

5         Let me ask the deputy clerk, counsel have been

6    informed?

7         COURTROOM CLERK:  Yes, Judge.

8         THE COURT:  Now, I want to take this opportunity,

9    ladies and gentlemen, to welcome you.  My name is Tim Ellis.

10   I'll be the judge presiding over this case.  And, as I said, I

11   want to take this opportunity at the outset to thank all of you

12   for your service as jurors today.  Nothing you do as an American

13   citizen is any more important than jury service.  Together with

14   voting, it is one of the two cardinal duties each of us has as

15   an American citizen, and it's important that we fulfill those

16   duties.

17        To be sure, jury service involves inconvenience and

18   effort and sacrifice.  But it is important, and I thank all of

19   you for making that effort today.

20        We'll proceed today with what is called the jury

21   selection.  Lawyers call it the voir dire process.  Voir dire is

22   an Anglo-Norman French expression no longer used in France, I'm

23   told by my lawyer friends in France.  But what it means is, in

24   essence, speak the truth.  Because it is in this process that I

25   will ask questions of prospective jurors; you will be required

1    to answer those questions, and you'll be under oath.

2         Now, there are two phases to the voir dire, and I'll

3    explain the two phases briefly.  First, I will ask general

4    questions.  And those of you who have affirmative answers to the

5    questions I ask will raise your hands, and a court security

6    officer will bring you a microphone and you'll answer the

7    questions standing from where you're now sitting.  That's

8    Phase 1.

9         For Phase 2, I will ask you a series of questions,

10   again designed to enable the Court to ascertain whether any of

11   you may be disabled by any rule of law from serving as a juror

12   in this case.  And in answer to those questions, you may be

13   required to provide information that is private to you - that

14   is, it's confidential to you - and so you will not be giving

15   your answer on a microphone brought to you, but instead one at a

16   time you'll come up here, you'll sit in the witness box, and

17   using earphones and a microphone, you'll give me your answers

18   that will be heard by me, by the court personnel, and by the

19   attorneys and the defendant.

20        And I will point out, I think it's important to point

21   out that the defendant was a British subject and attended school

22   in Britain, so far as I'm aware, and speaks English, and does

23   not need an interpreter.  Although I'm sure he speaks Arabic and

24   maybe other languages, he speaks English and does not require an

25   interpreter.  So that's Phase 2.

1          Now, after that, of course, we will give the attorneys

2    an opportunity to express their motions to strike for cause,

3    then we will seat a jury and permit the attorneys to exercise

4    their peremptory challenges.

5          The process will now begin with the deputy clerk

6    calling the roll.  When your name is called, please stand, and

7    remain standing until the next name is called.  And we do this

8    for two purposes, or two reasons.  First, we want to be sure all

9    of you are here who are required to be here; and second, we want

10   to give the attorneys an opportunity to identify a name with a

11   face on their list.

12         And after the roll is called, an oath will be

13   administered to you to answer the questions that I will ask.

14   That's the voir dire.  And then we will proceed with that.

15         I'm sort of amused at an experience I had.  I say

16   voir dire.  Some of you may know it as voir dire.  It's D-I-R-E.

17   Some of you may know it by some other term.  I never pronounce

18   it correctly.  When I was in England, in the United Kingdom, and

19   also in France, I probably mispronounced it so badly that my

20   lawyer friends told me they had never heard the phrase.  But in

21   any event, I suspect most of you mispronounce it pretty much the

22   way I did, so I hope it has been clear to you.

23         All right.  Ms. Randall, the deputy clerk, may proceed

24   to call the roll.

25         COURTROOM CLERK:  Ladies and gentlemen of the jury, as

1    I call your name, please stand, answer "present," and be seated

2    as the next name is called.

3              Yoseph Amha.  Yoseph Amha, juror number 1.

4              THE COURT:  Not a promising beginning.  No one is

5    standing.  All right.  Show cause for him.

6              COURTROOM CLERK:  Juror number two, Lucas Araujo.

7              PROSPECTIVE JUROR:  Present.

8              COURTROOM CLERK:  Juror number 3, James Bailes.

9              PROSPECTIVE JUROR:  Present.

10             COURTROOM CLERK:  Juror number 6, Paul Brazier.

11             PROSPECTIVE JUROR:  Present.

12             COURTROOM CLERK:  Juror number 7, Kristina Brown.

13             PROSPECTIVE JUROR:  Present.

14             COURTROOM CLERK:  Juror number 9, Melanie De Cola.

15             PROSPECTIVE JUROR:  Present.

16             COURT CLERK:  Juror number 11, John Donovan.

17             PROSPECTIVE JUROR:  Present.

18             COURTROOM CLERK:  Juror number 13, Louise Driggers.

19             PROSPECTIVE JUROR:  Present.

20             COURT CLERK:  Juror number 14, Anne Fay.

21             PROSPECTIVE JUROR:  Present.

22             COURTROOM CLERK:  Juror number 15, Lynn Franco.

23             PROSPECTIVE JUROR:  Present.

24             COURTROOM CLERK:  Juror number 16, James Hanover.

25             PROSPECTIVE JUROR:  Present.

```
 1              COURTROOM CLERK:  Juror number 17, Lewis Hoge.

 2              PROSPECTIVE JUROR:  Present.

 3              COURTROOM CLERK:  Juror number 18, Scott Johnson.

 4              PROSPECTIVE JUROR:  Present.

 5              COURTROOM CLERK:  Juror number 19, Sylvia Keys.

 6              PROSPECTIVE JUROR:  Present.

 7              COURTROOM CLERK:  Juror number 20, Anna Kinney.

 8              PROSPECTIVE JUROR:  Present.

 9              COURTROOM CLERK:  Juror number 21, Andrea Kohos.

10              PROSPECTIVE JUROR:  Present.

11              COURTROOM CLERK:  Juror number 22, John Kugelman.

12              PROSPECTIVE JUROR:  Present.

13              COURTROOM CLERK:  Juror number 23, James Lankford.

14    Juror number 23, James Lankford.

15              THE COURT:  Show cause.

16              COURTROOM CLERK:  Juror number 24, Sean Larson.

17              PROSPECTIVE JUROR:  Present.

18              COURTROOM CLERK:  Juror number 25, Samantha Lee.

19              PROSPECTIVE JUROR:  Present.

20              COURTROOM CLERK:  Juror number 26, Eileen Liles.

21              PROSPECTIVE JUROR:  Present.

22              COURTROOM CLERK:  Juror number 27, Guirlene Marc.

23              PROSPECTIVE JUROR:  Present.

24              COURTROOM CLERK:  Juror number 29, Mark Mooney.

25              PROSPECTIVE JUROR:  Present.
```

9

```
 1              COURTROOM CLERK:  Juror number 30, Camille Morrison.
 2              PROSPECTIVE JUROR:  Present.
 3              COURTROOM CLERK:  Juror number 31, Aaron Nguyen.
 4              PROSPECTIVE JUROR:  Present.
 5              COURTROOM CLERK:  Juror number 32, Elyssa Pascasio.
 6              PROSPECTIVE JUROR:  Present.
 7              COURTROOM CLERK:  Juror number 33, Joseph Pimenta.
 8              PROSPECTIVE JUROR:  Present.
 9              COURTROOM CLERK:  Juror number 34, Robert Pumo.
10              PROSPECTIVE JUROR:  Present.
11              COURTROOM CLERK:  Juror number 36, Jody Redeker.
12              PROSPECTIVE JUROR:  Present.
13              COURTROOM CLERK:  Juror number 38, Joseph Suitt.
14              PROSPECTIVE JUROR:  (No verbal response.)
15              COURTROOM CLERK:  Juror number 39, Samer Tanveer.
16              PROSPECTIVE JUROR:  Present.
17              COURTROOM CLERK:  Juror number 40, Amanda Thomas.
18              PROSPECTIVE JUROR:  Present.
19              COURTROOM CLERK:  Juror number 41, Marian Tuluceanu.
20              PROSPECTIVE JUROR:  Present.
21              COURTROOM CLERK:  Juror number 42, Debra Van Buren.
22      Juror number 42, Debra Van Buren.
23              THE COURT:  All right.  Show cause.
24              COURTROOM CLERK:  Juror number 43, Amy Vernon.
25              PROSPECTIVE JUROR:  Present.
```

10

```
 1                COURTROOM CLERK:  Juror number 44, Derryck Walker.

 2                PROSPECTIVE JUROR:  Present.

 3                COURTROOM CLERK:  Juror number 45, Daniel Weinstein.

 4                PROSPECTIVE JUROR:  Present.

 5                COURTROOM CLERK:  Juror number 46, Deborah Wintermute.

 6                PROSPECTIVE JUROR:  Present.

 7                COURTROOM CLERK:  Juror number 47, Richard Winters.

 8                PROSPECTIVE JUROR:  Present.

 9                COURTROOM CLERK:  Juror number 48, Nicholas Wright.

10    Juror number 48, Nicholas Wright.

11                THE COURT:  Show cause.

12                COURTROOM CLERK:  Juror number 49, Jiyoung Yoo.

13                PROSPECTIVE JUROR:  Jiyoung Yoo.

14                COURTROOM CLERK:  Juror number 50, Laura Younger.

15                PROSPECTIVE JUROR:  Present.

16                COURTROOM CLERK:  Is there any juror whose name I have

17    not called?

18                PROSPECTIVE JUROR:  I think my name was called,

19    Jiyoung Yoo, Y-O-O.

20                COURTROOM CLERK:  Yes.

21                THE COURT:  We called your name.

22                COURTROOM CLERK:  Is it spelled J-I-Y-O-U-N-G, last

23    name is Y-O-O?

24                PROSPECTIVE JUROR:  (No verbal response.)

25                THE COURT:  All right.  Thank you.  All right.  Anyone
```

1    else whose name we did not call?

2         Go ahead, Tanya.

3         COURTROOM CLERK:  Ladies and gentlemen of the jury,

4    will you please stand, raise your right hands, and respond after

5    the oath by stating "I shall."

6         Do you swear that you shall true and perfect answer

7    made to such questions as may be propounded to you by the Court,

8    so help you God?

9         PROSPECTIVE JURY PANEL:  (Collectively) I shall.

10         THE COURT:  All right, ladies and gentlemen, I'm now

11    going to ask you a series of questions designed to enable the

12    Court to ascertain whether any of you may be disabled by any

13    rule of law from serving as a juror in this case.

14         Before I begin, let me note one other item I should

15    have mentioned earlier.  I've received a request from a

16    journalist, Mr. Garden, in England that we allow the sound from

17    this courtroom to be reported remotely to Europe so that they

18    can hear it there.  No, we don't have a link.

19         Now, we have used a link in the past, but that is

20    purely for family members of victims of crimes that have been

21    tried here.  And we would have that today, except that we have

22    present representatives of those families today.  I think they

23    are now here in the courtroom on 10, because we thought here on

24    nine, the courtroom would be filled.  As it turns out, it isn't.

25         But in any event, Mr. Garden, your request is denied.

1    But, of course, you're perfectly welcome to come and attend in

2    person, as others have.  The public is present.  This is a

3    public trial.

4           Now, let me begin by asking, Mr. Fitzpatrick, would you

5    stand, introduce yourself and your co-counsel to the panel,

6    please.

7           MR. FITZPATRICK:  Thank you, Your Honor.  Good morning,

8    ladies and gentlemen.  My name is Dennis Fitzpatrick, I'm an

9    Assistant U.S. Attorney within this district.  This is my

10   colleague, Mr. Raj Parekh, also the First Assistant

11   United States Attorney for the Eastern District of Virginia; my

12   colleague John Gibbs, also an Assistant United States Attorney

13   in the Eastern District of Virginia; my colleague Alicia Cook,

14   who is a trial attorney with the Department of Justice's

15   National Security Division; and my colleague

16   Aidan Grano-Mickelsen, who is an Assistant United States

17   Attorney in the Eastern District of Virginia.  And our paralegal

18   with us today is Nicole Lopez, who is part of our team in the

19   Eastern District of Virginia.  Thank you.

20          THE COURT:  All right.  Ladies and gentlemen, I want to

21   know whether you or any member of your family, so far as you

22   know, know any of these individuals, or have you had any

23   business or social dealings of any kind with any of them.

24   There's one hand that went up.

25          PROSPECTIVE JUROR:  I'm an ATF agent.  I bring cases to

1    this court, so I have --

2              THE COURT:  Your name, sir?

3              PROSPECTIVE JUROR:  John Donovan.  So I've seen some of

4    these individuals, and they work with people that I work with.

5              THE COURT:  All right.  Thank you for bringing that to

6    my attention, Mr. Donovan.

7              Anyone else?  And the record will reflect no one else

8    has raised their hand.

9              All right.  Mr. Fitzpatrick and his colleagues are

10   members of the U.S. Attorney's Office for the Eastern District

11   of Virginia.  And I want to know whether you or any member of

12   your family, so far as you know, has had any business or social

13   dealings of any kind whatsoever with any of the attorneys or

14   employees of that office, with the exception of Mr. Donovan.  I

15   already know about Mr. Donovan.

16             Anyone else, raise your hand, please.  The record will

17   reflect no other hands have been raised.

18             Let's go now, Mr. MacMahon, would you stand, introduce

19   yourself and your co-counsel to the panel, please.

20             MR. MACMAHON:  Thank you, Your Honor.  My name is

21   Edward MacMahon, I'm an attorney here in Virginia.  I'm

22   representing Mr. Elsheikh.  With me is Nina Ginsberg with the

23   law firm of DiMuro Ginsberg, in Alexandria, and Zach Deubler is

24   also with the same law firm.  And then Yancey Ellis, who just

25   stood up, with Carmichael Ellis, is the name of his firm, here

14

1    in Alexandria as well.

2           THE COURT:  All right.  Ladies and gentlemen, do you or

3    any member of your family, so far as you know, know any of these

4    individuals, or have you had any business or social dealings of

5    any kind whatsoever with any of them?  The record will reflect

6    no hands have been raised.

7           I'll point out that Ms. Ginsberg is a member of the

8    firm of DiMuro Ginsberg, where, Ms. Ginsberg?

9           MS. GINSBERG:  Alexandria, Virginia.

10          THE COURT:  All right.  Do you or any member of your

11   family, so far as you know, know any of the employees or

12   attorneys of that firm, or have you had any business or social

13   dealings of any kind whatsoever with any of them?

14          The record will reflect no hands were raised.  Thank

15   you, Ms. Ginsberg.

16          Now turning to Mr. Ellis, what firm are you in, sir?

17          MR. ELLIS:  It's Carmichael Ellis & Brock, Your Honor,

18   and it's also in Old Town, Alexandria.

19          THE COURT:  Do you or any member of your family, so far

20   as you know, know any of the attorneys or employees of that

21   firm, or have you had any business or social dealings of any

22   kind whatsoever with any of them?

23          All right.  No hands are raised.  Thank you.

24          Did I omit any firms?  I think, Mr. Deubler, you're in

25   the same firm with Ms. Ginsberg?

1          MR. DEUBLER:  That is correct, Your Honor.

2          THE COURT:  And I did not ask, but I will, do you or

3    any member of your family, ladies and gentlemen, so far as you

4    know, know the defendant, Mr. Elsheikh, or any member of his

5    family, or have you had any business or social dealings of any

6    kind whatsoever with him?

7          No hands are raised, as the record will reflect.  You

8    may be seated.  Thank you.

9          Next, ladies and gentlemen, I want to know whether you

10   have served in the past on any juries, either grand juries,

11   trial juries, in either state, federal, or local courts.  If you

12   would raise your hands.  I see the hands of a few veterans here.

13         Let's start up here in the first row.  May I have your

14   name, please?

15         PROSPECTIVE JUROR:  Amy Vernon.

16         THE COURT:  Yes, Ms. Vernon.  What juries have you

17   served on in the past?

18         PROSPECTIVE JUROR:  I served on a jury in

19   Arlington County.

20         THE COURT:  Yes, how long ago?

21         PROSPECTIVE JUROR:  It was probably 20 years ago.

22         THE COURT:  And was the case a criminal case or a civil

23   case?

24         PROSPECTIVE JUROR:  Civil.

25         THE COURT:  And was the jury on which you served able

1    to reach a unanimous verdict?

2            PROSPECTIVE JUROR:  Yes, sir.

3            THE COURT:  Any other jury service, Ms. Vernon?

4            PROSPECTIVE JUROR:  No, sir.

5            THE COURT:  Thank you.  You may be seated.

6            Next.

7            PROSPECTIVE JUROR:  Good morning.  Anna Kinney.

8            THE COURT:  Yes, Ms. Kinney, what juries have you

9    served on in the past?

10           PROSPECTIVE JUROR:  I served on a civil jury in

11   Massachusetts several years ago.

12           THE COURT:  And was the jury on which you served able

13   to reach a unanimous verdict?

14           PROSPECTIVE JUROR:  They settled and we never got to

15   that point.

16           THE COURT:  All right.  Were you disappointed or

17   relieved?

18           PROSPECTIVE JUROR:  Relieved.

19           THE COURT:  All right.  Any other jury service?

20           PROSPECTIVE JUROR:  None that I actually went to court.

21           THE COURT:  All right, thank you.  You may be seated.

22           Next.

23           PROSPECTIVE JUROR:  Laura Younger.  More years than I

24   care to count, I think it's almost 40 now, I served on three

25   juries in Washtenaw County, Michigan.  They were criminal cases,

1    and they all -- the jury came to a conclusion on every one of

2    them.

3            THE COURT:  A unanimous conclusion?

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Let me confirm for the record your last

6    name, please.

7            PROSPECTIVE JUROR:  Younger.

8            THE COURT:  And these all occurred, you say, 40 years

9    ago.

10           PROSPECTIVE JUROR:  Yes.

11           THE COURT:  You must have been a teenager when you

12   served.  Any other jury service?

13           PROSPECTIVE JUROR:  Called for jury duty in another

14   courthouses in Alexandria, but did not serve.  I was on a panel.

15           THE COURT:  Thank you.  You may be seated.  Next.

16           PROSPECTIVE JUROR:  Samer Tanveer.

17           THE COURT:  Yes, Ms. Tanveer.  What juries have you

18   served on in the past?

19           PROSPECTIVE JUROR:  Criminal two years ago in

20   City of Alexandria.

21           THE COURT:  And what was the nature of the case?

22           PROSPECTIVE JUROR:  It was possession with intent to

23   sell weed.

24           THE COURT:  And was the jury on which you served able

25   to reach a unanimous verdict?

1           PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Any other jury service, Ms. Tanveer?

3           PROSPECTIVE JUROR:  No.

4           THE COURT:  Thank you.  You may be seated.  Next.

5           PROSPECTIVE JUROR:  Sylvia Keys, K-E-Y-S.

6           THE COURT:  Yes, Ms. Keys.  What juries have you served

7    on in the past?

8           PROSPECTIVE JUROR:  Washington, D.C., about 15 years

9    ago.

10          THE COURT:  How long ago?

11          PROSPECTIVE JUROR:  15.

12          THE COURT:  And what was the nature of the case?

13          PROSPECTIVE JUROR:  Civil.  Civil.

14          THE COURT:  And was the jury on which you served,

15   Ms. Keys, able to reach a unanimous verdict?

16          PROSPECTIVE JUROR:  Yes, sir.

17          THE COURT:  Any other jury service, Ms. Keys?

18          PROSPECTIVE JUROR:  No, sir.

19          THE COURT:  Thank you.  You may be seated.  Next.

20          PROSPECTIVE JUROR:  Amanda Thomas.

21          THE COURT:  Yes, Ms. Thomas.  What juries have you

22   served on in the past?

23          PROSPECTIVE JUROR:  I served on one criminal case and

24   one civil case over 10 years ago in Arlington County.

25          THE COURT:  And what was the nature of the criminal

1    case on which you served?

2            PROSPECTIVE JUROR:  I don't remember, other than drug

3    possession.  There might have been other charges, but that's

4    what I remember.

5            THE COURT:  And was the jury on which you served in

6    that case able to reach a unanimous verdict?

7            PROSPECTIVE JUROR:  No.

8            THE COURT:  What happened?

9            PROSPECTIVE JUROR:  It was a hung jury.

10           THE COURT:  All right.  And in the civil case, was the

11   jury on which you served able to reach a unanimous verdict?  You

12   said you had served on two juries.

13           PROSPECTIVE JUROR:  Yes.  So I don't recall whether it

14   was a unanimous verdict, I just don't remember a hung jury on

15   that case.

16           THE COURT:  Let me see if I'm clear in understanding

17   you.  Did you serve on one jury or two juries?

18           PROSPECTIVE JUROR:  Two juries.

19           THE COURT:  Two juries.  Were they both civil or both

20   criminal?

21           PROSPECTIVE JUROR:  One criminal, one civil, I believe.

22           THE COURT:  All right.  So on the criminal case, you

23   said you recalled it might have been a drug case.  Is that

24   right?

25           PROSPECTIVE JUROR:  Yes.

1           THE COURT:  And I think you told me that on that, the

2    jury was not able to reach a unanimous verdict.  Is that

3    correct?

4           PROSPECTIVE JUROR:  That's what I recall.

5           THE COURT:  What about the civil case?

6           PROSPECTIVE JUROR:  I don't remember, Your Honor.

7           THE COURT:  All right.  Thank you.  You may be seated.

8           Next.

9           PROSPECTIVE JUROR:  Paul Brazier.

10          THE COURT:  Yes, Mr. Brazier.  What juries have you

11   served on in the past?

12          PROSPECTIVE JUROR:  I was called for jury duty on

13   grand jury here in the District Court.  I was not selected.

14          THE COURT:  All right.  So you didn't serve,

15   ultimately?

16          PROSPECTIVE JUROR:  No, sir.

17          THE COURT:  All right.  Thank you.  You may be seated.

18   Only if you served do I need to know.

19          PROSPECTIVE JUROR:  James Hanover.  I served on a jury

20   in New York County, New York.  It was a civil case, and the day

21   of the trial we came in and the judge informed us that a

22   settlement had been made.  So I was both disappointed and happy.

23          THE COURT:  All right.  Thank you.

24          Next.

25          PROSPECTIVE JUROR:  Oh, and it was 1996.

1            THE COURT:  Thank you.

2            PROSPECTIVE JUROR:  James W. Bailes, and I served in

3    this court, this District Court.  It was an arson case, and it

4    was about 12 years ago, 10 to 12.

5            THE COURT:  All right.  Was the jury on which you

6    served able to reach a unanimous verdict?

7            PROSPECTIVE JUROR:  We did, Your Honor.

8            THE COURT:  I've been here a long time.  Was I the

9    presiding judge?

10           PROSPECTIVE JUROR:  I believe you were, sir.

11           THE COURT:  All right.  Thank you.  Any other jury

12   service, Mr. Bailes?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  Thank you.  You may be seated, sir.

15           Anyone else?  Have you all had an opportunity to tell

16   me about any service on juries that you've had?

17           All right.  The record will reflect that no hands have

18   been raised, so everyone has been heard on jury service.

19           Now, ladies and gentlemen, my next question I want to

20   ask you is whether you or any member of your immediate family is

21   employed by any law enforcement agency.  If you would raise your

22   hands, please.

23           PROSPECTIVE JUROR:  My husband is retired, but he was a

24   detective in Suffolk County, New York.

25           THE COURT:  May I have your name, please?

```
 1                    PROSPECTIVE JUROR:  Lynn Franco.

 2                    THE COURT:  Ms. Franco, you say your husband is retired

 3        from being a police officer where?

 4                    PROSPECTIVE JUROR:  Suffolk County, New York.

 5                    THE COURT:  That's Long Island?

 6                    PROSPECTIVE JUROR:  Correct.

 7                    THE COURT:  And was he uniformed?

 8                    PROSPECTIVE JUROR:  No.  He was a detective.

 9                    THE COURT:  All right.  Do you think having a husband

10        who did serve as a police officer in New York some time ago

11        would prevent or hinder you in any way in rendering a fair and

12        an impartial in this case based only on the evidence and the

13        Court's instructions on the law?

14                    PROSPECTIVE JUROR:  No, I will have no problem.

15                    THE COURT:  All right.  Thank you.  You may be seated.

16        Next.

17                    PROSPECTIVE JUROR:  John Donovan.  I'm currently

18        employed as a special agent with the Bureau of Alcohol, Tobacco,

19        Firearms, and Explosives.  Like I had mentioned before, I

20        actually bring cases to this court.

21                    THE COURT:  Thank you, Mr. Donovan.  You may be seated.

22        Next.

23                    PROSPECTIVE JUROR:  My name is Daniel Weinstein.  My

24        brother-in-law is a current member of the Secret Service, and he

25        was a former air marshal.
```

23

```
 1              THE COURT:  And he was a former air marshal.  Is that
 2    what you're saying?
 3              PROSPECTIVE JUROR:  That's correct.
 4              THE COURT:  And your name again, please, sir?
 5              PROSPECTIVE JUROR:  Daniel Weinstein.
 6              THE COURT:  Yes, Mr. Weinstein.  Do you think having a
 7    brother-in-law so employed would prevent or hinder you in any
 8    way from rendering a fair and an impartial verdict in this case
 9    based only on the evidence and the Court's instructions on the
10    law?
11              PROSPECTIVE JUROR:  No.
12              THE COURT:  All right, sir.  Thank you.  You may be
13    seated.
14              PROSPECTIVE JUROR:  James Hanover.  I have a query.
15    Does an uncle count?
16              THE COURT:  Yes.
17              PROSPECTIVE JUROR:  My uncle served as the chief of the
18    crime lab in High Point, North Carolina for many years.  And he
19    started as a patrolman, but his entire career was in
20    law enforcement in that area, yes.
21              THE COURT:  And what is your last name, again, sir?
22              PROSPECTIVE JUROR:  My last name is Hanover.
23              THE COURT:  All right.  Do you feel that having an
24    uncle so employed would prevent or hinder you in any way from
25    rendering a fair and an impartial verdict based only on the
```

1    evidence and the Court's instructions on the law?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  All right.  Thank you.  You may be seated,

4    sir.

5              Next.

6              PROSPECTIVE JUROR:  Good morning.  My name is

7    Robert Pumo.  I worked with the Bureau of Diplomatic Security as

8    a civil servant.

9              THE COURT:  Your name again, please, sir.

10             PROSPECTIVE JUROR:  Robert Pumo.

11             THE COURT:  Yes, Mr. Pumo.  Tell me again for whom you

12   work.

13             PROSPECTIVE JUROR:  The Bureau of Diplomatic Security.

14             THE COURT:  And what do you do for the Bureau of

15   Diplomatic Security?

16             PROSPECTIVE JUROR:  I'm a civil servant, mostly

17   supporting embassy security overseas, primarily

18   counterterrorism.

19             THE COURT:  Do you have any law enforcement

20   responsibility?

21             PROSPECTIVE JUROR:  No.  It is a law enforcement arm of

22   the State Department, though.

23             THE COURT:  But you don't have the authority to arrest

24   people or anything of that sort?

25             PROSPECTIVE JUROR:  Oh, no, Your Honor.

1          THE COURT:  All right.  Do you feel that your

2     employment would prevent or hinder you in any way in rendering a

3     fair and an impartial verdict in this case based only on the

4     evidence and the Court's instructions on the law?

5          PROSPECTIVE JUROR:  No, Your Honor.

6          THE COURT:  Thank you.  Next.

7          PROSPECTIVE JUROR:  My name is Aaron Nguyen.  I was

8     employed as a cyber security professional, civil servant, for

9     multiple civilian and law enforcement related agencies.  The

10    first one was Department of Transportation Office of

11    Inspector General, the second one was the Custom and

12    Border Protection, and the third one was the Office of Inspector

13    General for the USDA.

14         THE COURT:  As I understand it, your work is in cyber

15    security?

16         PROSPECTIVE JUROR:  That's correct, Your Honor.

17         THE COURT:  Do you have any law enforcement

18    responsibilities?

19         PROSPECTIVE JUROR:  No, Your Honor.

20         THE COURT:  All right.  Do you feel that your

21    employment would prevent or hinder you in any way from rendering

22    a fair and an impartial verdict in this case based only on the

23    evidence and the Court's instructions on the law?

24         PROSPECTIVE JUROR:  No, Your Honor.

25         THE COURT:  Thank you, sir.  You may be seated,

1    Mr. Nguyen.

2              Yes, sir?

3              PROSPECTIVE JUROR:  James Bailes.  My father-in-law is

4    a retired Virginia State Police man, 39 years.  He passed away

5    in 1995.

6              THE COURT:  All right.  Do you feel that having a

7    father-in-law who served for that length of time and has now

8    passed away, what, 25 years ago, would prevent or hinder you in

9    any way from rendering a fair and an impartial verdict in this

10   case based only on the evidence and the Court's instructions on

11   the law?

12             PROSPECTIVE JUROR:  No, Your Honor.

13             THE COURT:  Thank you, sir.

14             PROSPECTIVE JUROR:  Sean Larson.

15             THE COURT:  Yes, Mr. Larson.

16             PROSPECTIVE JUROR:  My father was a corrections officer

17   in New York and my uncle was an NYPD uniformed officer.

18             THE COURT:  Are they still in active service?

19             PROSPECTIVE JUROR:  Both are retired.

20             THE COURT:  Do you feel that having relatives as you've

21   described, employed in the fashion you've described, would

22   prevent or hinder you in any way from rendering a fair and an

23   impartial verdict in this case based only on the evidence and

24   the Court's instructions on the law?

25             PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Thank you.  One more?

 2              PROSPECTIVE JUROR:  Richard Winters.

 3              THE COURT:  Yes, Mr. Winters.

 4              PROSPECTIVE JUROR:  I had an uncle and a grandfather

 5     that served in local police departments where I grew up.  Both

 6     retired now.

 7              THE COURT:  All right.  Do you feel that having

 8     relatives that you've described, employed as police officers,

 9     would prevent or hinder you in any way from rendering a fair and

10     an impartial verdict in this case based only on the evidence and

11     the Court's instructions on the law?

12              PROSPECTIVE JUROR:  No, sir.

13              THE COURT:  All right.

14              PROSPECTIVE JUROR:  Amy Vernon.  My sister-in-law is a

15     retired special agent from the EPA.

16              THE COURT:  The EPA?

17              PROSPECTIVE JUROR:  Yes, sir.

18              THE COURT:  And what is she retired as?

19              PROSPECTIVE JUROR:  She was a special agent with the

20     EPA, federal agent.

21              THE COURT:  All right.  Do you feel that having a --

22     was it a sister or sister-in-law.

23              PROSPECTIVE JUROR:  Sister-in-law.

24              THE COURT:  Sister-in-law so employed would prevent or

25     hinder you in any way from rendering a fair and an impartial
```

28

 1   verdict in this case based only on the evidence and the Court's

 2   instructions on the law?

 3            PROSPECTIVE JUROR:  No, sir.  No, sir.

 4            THE COURT:  Thank you.  All right.  It would appear

 5   that I have canvassed all of the persons who have

 6   law enforcement occupations or their families.

 7            Next, ladies and gentlemen, I'm going to read to you

 8   from a list of names.  I will read to you 10 names at a time.

 9   If you need to have any further identification, I may ask you to

10   tell me who you are referring to.  Because names might not be

11   unique.  But I'll do it 10 names at a time.

12            Bruce Hoffman, Barry Goodman, Dan Godfrey,

13   William Van-Der-Reijden, Matthew Husher, Federico Motka,

14   M-O-T-K-A, Patricia Chavez Mejia, George Smith, Jason Richards.

15            Do you or any member of your family, so far as you

16   know, know any of these individuals, or have you had any

17   business or social dealings with any of them?

18            All right.  The record will reflect no hands.

19            Let me read the next 10 names.  John Chiappone, an FBI

20   special agent; Peshwaz Faizulla, F-A-I-Z-U-L-L-A;

21   Matthew Hamilton; Michael Foley; Diane Foley;

22   Radwan Safarjalany; Marsha Mueller; and Marcos Marginedas.

23            Do you or any member of your family, so far as you

24   know, know any of those individuals, or have you had any

25   business or social dealings of any kind whatsoever with any of

1    them?  The record will reflect no hands raised.  I'll read the

2    next 10 names.

3          Art Sotloff, S-O-T-L-O-F-F; Mohammed Almahmoud,

4    A-L-M-A-H-M-O-U-D; Ed Kassig, K-A-S-S-I-G; Elliott Stempf,

5    S-T-E-M-P-F; Anna Bartle; Nicolas Hénin; Edouard Elias;

6    Didier Francois, F-R-A-N-C-O-I-S; Frida Saide, S-A-I-D-E; and

7    FBI Special Agent Dan Story.

8          Do you or any member of your family, so far as you

9    know, know any of those individuals, or have you had any

10   business or social dealings of any kind whatsoever with any of

11   them?  The record will reflect no hands.

12         I will read the next 10 names.  Tyler Treml, T-R-E-M-L;

13   Lea Mulla, M-U-L-L-A; Brian Driscoll; Ian Gallagher;

14   FBI Special Agent Brian Czekala, C-Z-E-K-A-L-A; Robert Johnston;

15   Donna Deweltz, D-E-W-E-L-T-Z; Professor Richard Rhodes; and

16   Diane [sic] Ottosen, O-T-T-O-S-E-N.

17         All right.  Ladies and gentlemen, do you or any member

18   of your family, so far as you know, know any of those

19   individuals, or have you had any business or social dealings of

20   any kind whatsoever with any of them?

21         Next, ladies and gentlemen, I want to know whether any

22   of you have answers to the COVID questions that you gave

23   initially to the clerk's office, whether they've changed.  Let

24   me read you what those questions were.

25         Since giving your answers to the clerk's office, one,

1    have you traveled internationally; two, have you been diagnosed

2    with COVID-19 or had contact with anyone who has been diagnosed

3    with COVID-19; three, have you been directed to quarantine or

4    isolate; four, have you experienced a fever, chills, or

5    persistent cough, shortness of breath or difficulty breathing,

6    new loss of taste or smell or other flu-like symptoms; and five,

7    have you resided with or been in close contact with any person

8    who answered or would answer "yes" to any of the questions I've

9    asked.

10          Now, previously you said "no" to those questions.  If

11   any of those answers have changed, I would like for you to raise

12   your hands now, please.

13          There are some hands raised over here.

14          PROSPECTIVE JUROR:  My name is Deborah Wintermute.  So

15   my husband was in contact with a coworker who tested positive.

16          THE COURT:  And how long ago?

17          PROSPECTIVE JUROR:  Two weeks.

18          THE COURT:  All right.  And has your husband been

19   tested?

20          PROSPECTIVE JUROR:  Yes.  He did some self-testing and

21   came back negative.

22          THE COURT:  All right.  And I take it you don't have

23   any of those symptoms?

24          PROSPECTIVE JUROR:  No, I don't.

25          THE COURT:  Thank you.  You may be seated.

 1              Next.

 2              PROSPECTIVE JUROR:  Samer Tanveer.  I traveled to

 3    Iceland three weeks ago.

 4              THE COURT:  I'm sorry, I didn't understand your name.

 5              PROSPECTIVE JUROR:  Samer Tanveer.

 6              THE COURT:  Yes, Ms. Tanveer.

 7              PROSPECTIVE JUROR:  I traveled to Iceland after I

 8    filled out the questionnaire.

 9              THE COURT:  All right.  And did you come into contact

10    with anybody who had --

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  -- any flu-like symptoms or anything of

13    that sort?

14              PROSPECTIVE JUROR:  No.

15              THE COURT:  Have you been tested?

16              PROSPECTIVE JUROR:  Yes.  At home, negative.

17              THE COURT:  All right.  Thank you, Ms. Tanveer.  I hope

18    you enjoyed Iceland.

19              PROSPECTIVE JUROR:  I did.

20              THE COURT:  It's been many years since I've been there,

21    but I remember now coming away from Iceland saying:  I don't

22    need to go to the moon now.  I've seen it.

23              All right.  Next?  Anyone else?

24              PROSPECTIVE JUROR:  Just to be sure, I was in contact

25    with suspects that had some respiratory type stuff.  They never

1    said the word "COVID," but I don't feel any symptoms at this

2    point.

3              THE COURT:  Have you been tested?

4              PROSPECTIVE JUROR:  I have not.

5              THE COURT:  And what is your name?

6              PROSPECTIVE JUROR:  John Donovan.

7              THE COURT:  Yes, Mr. Donovan.  Thank you.  You may be

8    seated.

9              The reason I ask those questions, of course, is to

10   safeguard your health and to ensure that you're not exposed

11   unnecessarily.  I think we're, gratefully, on the tail end of

12   this, but it is still the rule that if you answered "yes" to any

13   of those questions, you can't come into the courthouse.  So

14   people who come into the courthouse would have to do as you did,

15   answer "no" to all of those questions.

16             And that's true for the court family and everyone else

17   who is here.  And I hope that gives you some sense of security.

18   We used to have big shields up here, and wearing masks and so

19   forth.  Happily, we don't have to do that anymore.

20             Now, that's the first phase of the voir dire.  I'll

21   begin the next phase by reading to you from the indictment what

22   the charges are against this defendant.  I hasten to instruct

23   you at the beginning that I will summarize or read to you from

24   the indictment, but the indictment itself is not proof or

25   evidence of guilt of any kind whatsoever.  It's merely the

1    government's formal means of accusing a defendant of a crime.

2          And the defendant has pled not guilty to these

3    charges - there are eight of them - and therefore must be

4    presumed by you to be innocent of those charges unless and until

5    the jury find otherwise.

6          There are eight charges, as I said.  The first is the

7    following:  That from in and around November 2012 and continuing

8    to on or about February 7, 2015, Defendant El Shafee Elsheikh

9    and others, Alexanda Amon Kotey and others, who are specially

10   designated global terrorists, and who will first be brought to

11   and found in the Eastern District of Virginia, along with

12   Mohammed Emwazi and others known and unknown to the grand jury,

13   did conspire to seize, detain, and threaten to kill, and

14   continued to detain nationals of the United States of America

15   traveling outside of the United States, including

16   James Wright Foley, whose death resulted from this offense;

17   Kayla Jean Mueller, whose death resulted from this offense;

18   Steven Joel Sotloff, whose death resulted from this offense; and

19   Peter Edward Kassig, whose death resulted from this offense,

20   each in order to compel a third person and a government

21   organization, including but not limited to the United States of

22   America and any part of its government, to pay a monetary ransom

23   for the release of that U.S. national, and to do and abstain

24   from doing any act as an explicit or implicit condition for

25   release of that person, in violation of Title 18, U.S. Code

1    Section 1203.

2         In other words, in the first charge, the defendant is

3    charged with engaging in a conspiracy to commit hostage-taking

4    resulting in death.

5         The second charge against the defendant is as follows:

6    From on or about November 22nd, 2012, to on or about August 19,

7    2014, the defendants, Alexanda Amon Kotey and

8    El Shafee Elsheikh, who will first be brought to and found in

9    the Eastern District of Virginia, and others known and unknown

10   to the grand jury, all aided and abetted by each other, did

11   seize, detain, and threaten to kill, injure, and continue to

12   detain James Wright Foley, a national of the United States of

13   America traveling outside the United States, in order to compel

14   James Wright Foley's parents and a government organization,

15   including but not limited to the United States of America and

16   any part of its government, to pay a monetary ransom for the

17   release of James Wright Foley, and to do or abstain from doing

18   any act as an explicit or implicit condition for the release of

19   James Wright Foley.  James Wright Foley's death resulted from

20   the commission of this offense, in violation of Title 18,

21   U.S. Code Section 1203.

22        So the second count is an allegation of hostage-taking

23   resulting in death relating to James Wright Foley.

24        The third charge against the defendant is the

25   following:

1          That from on or about August 4, 2013, to on or about

2     February 7, 2015, the defendant, El Shafee Elsheikh and

3     Alexanda Amon Kotey, who will first be brought to and found in

4     the Eastern District of Virginia, Mohammed Emwazi, and others

5     known and unknown to the grand jury, all aided and abetted by

6     each other, did seize, detain, and threaten to kill, injure, and

7     continued to detain Kayla Jean Mueller, a national of the

8     United States of America traveling outside the United States, in

9     order to compel Kayla Jean Mueller's parents and a governmental

10     organization, including but not limited to the United States of

11     America and any part of its government, to pay a monetary ransom

12     for the release of Kayla Jean Mueller, to do and to abstain from

13     doing any act as an explicit or implicit condition for the

14     release of Kayla Jean Mueller.  Kayla Jean Mueller's death

15     resulted from the commission of this offense, in violation of

16     Title 18 U.S., Code Section 1203 and 2.

17          In other words, in Count 3, the defendant is charged

18     with hostage-taking resulting in death of Kayla Jean Mueller.

19          The fourth charge against the defendant is the

20     following:

21          That from in or about August 4, 2013, to on or about

22     September 2nd, 2014 -- I think I misread the date.  From on or

23     about August 4, 2013, to on or about September 2nd, 2014, the

24     defendant, Alexanda Amon Kotey, and Defendant

25     El Shafee Elsheikh, who will first be brought to and found in

1    the Eastern District of Virginia, Mohammed Emwazi, and others

2    known and unknown to the grand jury, all aided and abetted by

3    each other, did seize, detain, and threaten to kill, injure, and

4    continue to detain Steven Joel Sotloff, S-O-T-L-O-F-F, a

5    national of the United States of America traveling outside the

6    United States, in order to compel Steven Joel Sotloff's parents

7    and a governmental organization, including but not limited to

8    the United States of America and any part of its government, to

9    pay a monetary ransom for the release of Steven Joel Sotloff,

10   and to do and abstain from doing any act as an explicit or

11   implicit condition for the release of Steven Joel Sotloff.  And

12   Steven Joel Sotloff's death resulted from the commission of this

13   offense, in violation of Title 18, U.S. Code Sections 1203 and

14   2.

15         In other words, in this count the defendant is charged

16   with hostage-taking resulting in the death of

17   Steven Joel Sotloff.

18         The next charge against the defendant is the following:

19   From in or about October 2nd, 2013, to on or about November 16,

20   2014, the defendants, Alexanda Amon Kotey and

21   El Shafee Elsheikh, who will first be brought to and found in

22   the Eastern District of Virginia, Mohammed Emwazi, and others

23   known and unknown to the grand jury, all aided and abetted by

24   each other did seize, detain, threaten to kill, injure, and

25   continued to detain Peter Edward Kassig, a national of the

1  United States of America traveling outside the United States, in

2  order to compel Peter Edward Kassig's parents and a governmental

3  organization, including but not limited to the United States of

4  America and any part of its government, to pay a monetary ransom

5  for the release of Peter Edward Kassig, and to do and abstain

6  from doing any act as an explicit or implicit condition to the

7  release of Peter Edward Kassig.  And Peter Edward Kassig's death

8  resulted from the commission of this offense, in violation of

9  Title 18, U.S. Code Sections 1203 and 2.

10         In other words, in this charge the defendant is charged

11  with hostage-taking resulting in the death of

12  Peter Edward Kassig.

13         The next charge against the defendant is the following:

14  From in and around November 2012 and continuing to on or about

15  February 7, 2015, the defendants, Alexanda Amon Kotey and

16  El Shafee Elsheikh, who will first be brought to and found in

17  the Eastern District of Virginia, Mohammed Emwazi, and others

18  known and unknown to the grand jury, did conspire to commit

19  murder, as defined by Title 18, U.S. Code Section 1111, by

20  unlawfully killing James Wright Foley, Kayla Jean Mueller,

21  Steven Joel Sotloff, and Peter Edward Kassig, nationals of the

22  United States, while these nationals were outside of the

23  United States, each killing being willful, deliberate,

24  malicious, and premeditated, and with malice aforethought, all

25  in violation of Title 18, U.S. Code Section 2332(b)(2).

```
 1              And the next count against the defendant is the
 2     following:  From in and around November 2012 and continuing to
 3     on or about February 7, 2015, the defendants, Alexanda Amon
 4     Kotey and El Shafee Elsheikh, who will first be brought to and
 5     found in the Eastern District of Virginia, and Mohammed Emwazi,
 6     and others known and unknown to the grand jury, did conspire to
 7     provide material support or resources, as that term is defined
 8     in Title 18, U.S. Code Section 2339(a), namely personnel,
 9     including themselves, and services, knowing and intending that
10     they were to be used in preparation for and carrying out a
11     violation of Title 18, Section 1203, namely hostage-taking, and
12     Title 18, Section 2332(a)(1), that is, murder, and the deaths of
13     James Wright Foley, Kayla Jean Mueller, Steven Joel Sotloff, and
14     Peter Edward Kassig, each a citizen of the United States, as
15     well as the deaths of British and Japanese nationals, resulted
16     from the commission of this offense, all in violation of
17     Title 18 U.S. Code 2339.
18              And the final charge against the defendant in this case
19     is the following:  That from in or about 2012 and continuing
20     thereafter up to and including in or about January 2018, in
21     offenses committed outside of the jurisdiction of any particular
22     state or district of the United States, the defendant,
23     El Shafee Elsheikh, who will first be brought to and found in
24     the Eastern District of Virginia, Mohammed Emwazi, and others
25     known and unknown to the grand jury, did conspire to provide
```

1    material support or resources, as that term is defined in

2    Title 18, U.S. Code Section 2339, namely personnel, including

3    themselves, and services to a Foreign Terrorist Organization,

4    namely ISIS, which at all relevant times was designated by the

5    United States Secretary of State as a Foreign Terrorist

6    Organization, pursuant to Section 219 of the Immigration and

7    Nationality Act, knowing that ISIS was a designated Foreign

8    Terrorist Organization, that ISIS engages and has engaged in

9    terrorist activity, and that ISIS engages and has engaged in

10   terrorism.  The deaths of James Wright Foley, Kayla Jean

11   Mueller, Steven Joel Sotloff, Peter Edward Kassig, each a

12   citizen of the United States, as well as the deaths of British

13   and Japanese nationals, resulted from the commission of this

14   offense, all in violation of Title 18, U.S. Code

15   Section 2339(b).

16          Those are the eight charges against this defendant.

17   Again, let me instruct you that I summarized those from the

18   indictment; however, the indictment itself is not proof or

19   evidence of guilt of any kind whatsoever.  It's merely the

20   government's formal means of accusing a defendant of a crime.

21   And the defendant has pled not guilty to all of those charges,

22   and therefore must be presumed by you to be innocent of those

23   charges unless and until the jury find otherwise.

24          Now, with that as a preface, I'm going to proceed to

25   ask you further questions.  And on this occasion, if you have an

1    affirmative answer to the questions I ask, I will have you come

2    forward one at a time to give your answers here in the relative

3    privacy of the bench and counsel.

4           All right.  Do you have those names, Mr. MacMahon?

5           MR. MACMAHON:  Which names, Your Honor?

6           THE COURT:  Are there any witnesses whose names you

7    think I should call to ensure that the jury does not know them.

8           MR. MACMAHON:  Yes, thank you, Your Honor.  There are

9    three names.  There's Sergeant Miller --

10          THE COURT:  Do you have a first name?

11          MR. MACMAHON:  I'm sorry, Special Agent Andrew Miller,

12   Special Agent Daniel O'Toole, and a man named Bruce Koenig and

13   Doug Lacey from a company named Bek Tek, LLC.

14          THE COURT:  So there are four?

15          MR. MACMAHON:  Yes, Your Honor.

16          THE COURT:  Read them once more if you would, please,

17   Mr. MacMahon.

18          MR. MACMAHON:  Yes, Your Honor.  Special

19   Agent Andrew Miller, Special Agent Daniel O'Toole, Bruce Koenig,

20   and Doug Lacey with the company Bek Tek, LLC.

21          THE COURT:  All right.  Thank you.  When you say

22   special agent, do you mean special agent of the FBI?

23          MR. MACMAHON:  I do, Your Honor.

24          THE COURT:  Thank you.

25          All right, ladies and gentlemen, do you or any member

1    of your family, so far as you know, know any of those

2    individuals, or have you had any business or social dealings of

3    any kind whatsoever with any of them?  If you would raise your

4    hands, please.

5              The record will reflect that no hands are raised.

6              Next, ladies and gentlemen, with my reading of the

7    charges against the defendant, as a preface, I'm now going to

8    ask you questions, and I'll ask them in a series of three.  If

9    you have an affirmative answer, I want you to come forward, and

10   the court security officer will have you come forward one at a

11   time.

12             Now, to avoid having you stand for long periods of

13   time, I think they will have you come row by row and have you

14   come here.  But don't come until they indicate that you should

15   come from your row.

16             Now, if your answer is "no," you need not come forward.

17   So only if you have an affirmative answer to these questions

18   should you come forward.

19             All right.  First, ladies and gentlemen, I want to know

20   whether any of you have seen or read or heard or know anything

21   about this case from any source whatever, from the news media or

22   the internet, or, indeed, any source whatever, I want you to

23   come forward one at a time.

24             Next, I want to know whether you or any member of your

25   family, so far as you know, were or are acquainted with any of

42

```
 1    the victims or the victims' family, namely James Foley,

 2    Kayla Mueller, Steven Sotloff, or Peter Kassig.

 3              And, finally, the third question I want to ask is, do

 4    you or any member of your family currently reside in Iraq or

 5    Syria.  If you have affirmative answers to those questions, come

 6    forward one at a time, please.  And what will happen is I'll

 7    have you come forward and sit in the jury box, and give me an

 8    answer to the question on the microphone with your earphones on.

 9              (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

10              THE COURT:  Good morning to you.

11              PROSPECTIVE JUROR:  Good morning.

12              THE COURT:  May I have your name.

13              PROSPECTIVE JUROR:  Amy Vernon.

14              THE COURT:  Spell the last name.

15              PROSPECTIVE JUROR:  V-E-R-N-O-N.

16              THE COURT:  All right.  Ms. Vernon, tell me which

17    question you have an answer to.

18              PROSPECTIVE JUROR:  The first question.

19              THE COURT:  Yes, ma'am.

20              PROSPECTIVE JUROR:  I have read about the case on the

21    internet quite a bit.

22              THE COURT:  What do you mean by "quite a bit"?

23              PROSPECTIVE JUROR:  When it happened and recently.

24              THE COURT:  And you understand that none of what you've

25    read is evidence in this case?
```

1              PROSPECTIVE JUROR:  Yes, sir.

2              THE COURT:  Do you feel you can put aside everything

3      you've read and render a fair and an impartial verdict in this

4      case based only on the evidence and the Court's instructions on

5      the law?

6              PROSPECTIVE JUROR:  Yes, sir.

7              THE COURT:  Now, have you formed any opinion about the

8      case?

9              PROSPECTIVE JUROR:  Not really, no, sir.

10             THE COURT:  Well, you say "not really."

11             PROSPECTIVE JUROR:  I mean, I know what I read.  I

12     don't know what the evidence is.

13             THE COURT:  All right.  And do you feel you can put

14     aside everything you've read, and judge this case fairly and

15     impartially only on the basis you see and hear presented in the

16     courtroom, and the Court's instructions on the law?

17             PROSPECTIVE JUROR:  Yes, sir.

18             THE COURT:  All right.  Have you -- is there anything

19     else about what you know about this case that you feel you need

20     to tell me?

21             PROSPECTIVE JUROR:  No, sir.

22             THE COURT:  Am I right that the source of your

23     information has been the internet?

24             PROSPECTIVE JUROR:  Yes, sir.

25             THE COURT:  All right.  The newspapers on the internet,

1    is that it?

2                PROSPECTIVE JUROR:  Yes, sir.

3                THE COURT:  All right.  Thank you.  You may step down.

4                PROSPECTIVE JUROR:  Okay.

5                THE COURT:  Good morning.  May I have your name,

6    please?

7                PROSPECTIVE JUROR:  Laura Younger.

8                THE COURT:  What if anything have you seen or read or

9    heard or know about this case?

10               PROSPECTIVE JUROR:  I seem to remember reading about

11   James Foley, because the name struck me.  And I thought he was

12   an aid worker who got kidnapped and held hostage and later

13   killed.  I do not remember any other particulars about it.

14               THE COURT:  Have you formed any opinion about this case

15   of any sort?

16               PROSPECTIVE JUROR:  No, not really.

17               THE COURT:  Do you feel you can put aside anything

18   you've read about this case, and judge this case solely on the

19   basis -- and judge it fairly and impartially solely on the basis

20   of what you see and hear presented here in the courtroom and the

21   Court's instructions on the law?

22               PROSPECTIVE JUROR:  Yes.

23               THE COURT:  Am I correct that your source of

24   information, was it newspapers or internet?

25               PROSPECTIVE JUROR:  I think newspaper.

1                    THE COURT:  Local newspaper?

2                    PROSPECTIVE JUROR:  I don't think so.  It would have

3       been the *Washington Post*.

4                    THE COURT:  All right.  Any other source?

5                    PROSPECTIVE JUROR:  Possibly PBS news.  I watch the BBC

6       news on PBS.

7                    THE COURT:  Let me ask you again, have you formed any

8       opinion about what you heard?

9                    PROSPECTIVE JUROR:  No.

10                   THE COURT:  Now, you understand that what you heard is

11      not evidence in the case?

12                   PROSPECTIVE JUROR:  Understood.

13                   THE COURT:  And do you feel you can put aside

14      everything you've heard, and judge this case fairly and

15      impartially based only on the evidence and the Court's

16      instructions on the law?

17                   PROSPECTIVE JUROR:  Yes.

18                   THE COURT:  Thank you.  You may return to your seat.

19                   Good morning.  Do you hear me?

20                   PROSPECTIVE JUROR:  Yes, sir.

21                   THE COURT:  May I have your name, please?

22                   PROSPECTIVE JUROR:  Kristina Brown.

23                   THE COURT:  Ms. Brown, what if anything have you seen

24      or read or heard, or know anything about, relating to this case?

25                   PROSPECTIVE JUROR:  Well, I feel bad, but it was all

```
 1    over the news about James Foley, the murder.  They beheaded him,

 2    and his parents thought he was still alive while they were still

 3    trying to extort money from his parents.

 4              THE COURT:  All right.  And where did you see this

 5    news?

 6              PROSPECTIVE JUROR:  I was a huge Fox News fan for a

 7    long time, so on the TV news and on any Facebook news feeds that

 8    I read.

 9              THE COURT:  And what kinds of Facebook news feeds do

10    you read?

11              PROSPECTIVE JUROR:  Breitbart, Daily Wire.  I followed

12    different people, Benny Johnson, Ben Shapiro.

13              THE COURT:  All right.  You understand none of that

14    that you've read or seen has anything to do with the evidence in

15    this case?

16              PROSPECTIVE JUROR:  Okay.

17              THE COURT:  It is not evidence in this case.  Do you

18    understand that?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  And do you understand that you need to put

21    aside everything you've read or heard about this case, and judge

22    this case fairly and impartially based on the evidence that you

23    see and hear presented in the courtroom?

24              PROSPECTIVE JUROR:  Okay.  I just wanted to be fair

25    when you asked if any of us had seen anything.
```

1            THE COURT:  Yes, you've done exactly right.  You've

2    brought to my attention that you have, and you've told me about

3    the sources.  And that's perfectly appropriate.  That's exactly

4    what you should do.

5            But now I'm pointing out to you that what you've seen

6    or read or heard outside the courtroom is not evidence in the

7    case.  Do you understand that?

8            PROSPECTIVE JUROR:  Yes.

9            THE COURT:  And do you understand that in order for you

10   to be able to sit as a juror in this case, you have to put aside

11   everything that you've seen or read or heard or know about this

12   case?  Do you understand that?

13           PROSPECTIVE JUROR:  Yes, sir.

14           THE COURT:  Do you think you can do that?

15           PROSPECTIVE JUROR:  I will try.  I just remember his

16   parents.  So I will do my best.  I want to say that I can.

17           THE COURT:  Well, when I say "put aside," you can only

18   take into account, in rendering a fair and an impartial verdict,

19   the evidence you see and hear in this courtroom.  Do you feel

20   you can do that?

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:  So that would mean you would have to put

23   aside everything you've seen or read or heard or know about this

24   case, and judge it only on the basis of the evidence you see and

25   hear presented in this courtroom.  Do you feel you can do that?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  All right.  Thank you.

3          Good morning, sir.  Can you hear me?

4          PROSPECTIVE JUROR:  I can hear you.

5          THE COURT:  What is your name, please?

6          PROSPECTIVE JUROR:  My name is Robert Pumo, P-U-M-O.

7          THE COURT:  Mr. Pumo, what have you seen or read or

8    heard, or know anything from any source, about this case?

9          PROSPECTIVE JUROR:  I mean, I followed it fairly

10   closely based on the nature of my work, but that was just public

11   information.  My wife during that period worked in the Office of

12   the Secretary of Defense as a public affairs officer, a press

13   officer.  In several of those years her focus was on the

14   counter-ISIS coalition.  So we didn't discuss anything beyond

15   what was publicly accessible, but it was sort of a constant

16   presence, for lack of a better term.

17         THE COURT:  And you work for the Bureau of Diplomatic

18   Security?

19         PROSPECTIVE JUROR:  Yes, Your Honor.

20         THE COURT:  And for whom does your wife work?

21         PROSPECTIVE JUROR:  She currently works for the

22   Department of the Navy.  She's since changed jobs.

23         THE COURT:  And what was her job at the time?

24         PROSPECTIVE JUROR:  At the time she was a press officer

25   in the Office of the Secretary of Defense.

49

```
1              THE COURT:  Now, you understand everything you have
2    heard either from your wife or from any source is not evidence
3    in this case?
4              PROSPECTIVE JUROR:  Absolutely, Your Honor.
5              THE COURT:  And do you also understand that a verdict
6    in this case must be solely on the evidence presented here in
7    the courtroom and the Court's instructions on the law?
8              PROSPECTIVE JUROR:  I do, Your Honor.
9              THE COURT:  Do you feel you can put aside everything
10   you've heard from your wife or from anybody else concerning this
11   case, and judge this case solely on the basis of the evidence
12   presented here in the courtroom and the Court's instructions on
13   the law?
14             PROSPECTIVE JUROR:  I do, Your Honor.
15             THE COURT:  All right.  Thank you, sir.  You may return
16   to your seat.
17             Good morning, sir.  Can you hear me?
18             PROSPECTIVE JUROR:  Yes, I can hear you.
19             THE COURT:  What is your name?
20             PROSPECTIVE JUROR:  My name is Aaron Nguyen,
21   N-G-U-Y-E-N.
22             THE COURT:  Mr. Nguyen, what have you seen or read or
23   heard, or know about this case, from any source?
24             PROSPECTIVE JUROR:  So the -- I've heard
25   specifically -- I specifically recall the case of the kidnapping
```

1    and killing of James Foley from the news back in the day.

2            THE COURT:  All right.  When you say "from the news

3    back in the day," are you talking about newspapers?

4            PROSPECTIVE JUROR:  It was on the news, and C-SPAN, I

5    usually watch that.

6            THE COURT:  All right.  You understand that what you've

7    heard is not evidence in this case.  Do you understand that?

8            PROSPECTIVE JUROR:  Yes, sir.

9            THE COURT:  And do you understand that the verdict in

10   this case by a jury must be based solely on the evidence

11   presented in this case, in this courtroom?  Do you understand

12   that?

13           PROSPECTIVE JUROR:  Yes, sir.

14           THE COURT:  Do you feel you can put what you've heard

15   and know about this case to one side, and judge this case fairly

16   and impartially based only on the evidence and the Court's

17   instructions on the law?

18           PROSPECTIVE JUROR:  That I'm not sure, sir.

19           THE COURT:  All right.  Tell me why you're not sure.

20           PROSPECTIVE JUROR:  Most of my career I worked for

21   federal government, and I was in the military service as well.

22   So I'm not sure if this particular case I'll be impartial.

23           THE COURT:  All right.  Tell me more.  Why do you think

24   you could not be impartial?

25           PROSPECTIVE JUROR:  Just at that time when I saw it, it

1   just was something that I didn't feel right about.  And I

2   just -- due to my service to my country.

3           THE COURT:  Thank you.  Could you remove your

4   earphones, please.

5           Counsel, any objection to my striking this juror?

6           MR. FITZPATRICK:  None from the government, Your Honor.

7           THE COURT:  And Mr. MacMahon?

8           MR. MACMAHON:  None from the defense.

9           THE COURT:  All right.  He is stricken.

10          Thank you, sir, you may return to your seat.

11          Good morning, sir.  Can you hear me?

12          PROSPECTIVE JUROR:  I can hear you.

13          THE COURT:  What is your name, please, sir?

14          PROSPECTIVE JUROR:  James Hanover.

15          THE COURT:  Mr. Hanover, which question do you have an

16  answer to?

17          PROSPECTIVE JUROR:  Regarding media coverage.

18          THE COURT:  Yes.

19          PROSPECTIVE JUROR:  So there was a great deal of media

20  coverage surrounding Kayla Mueller and the fact that she was a

21  humanitarian worker.  That stayed with me.  And I vaguely

22  remember the name Sotloff and Foley.  The other name I don't

23  remember in terms of just watching international news.

24          I am employed by Konica Minolta Business Solutions, a

25  Japanese based company with a significant U.S. operation, in

1    document management, document handling, office products.

2         THE COURT:  Now, you understand that what you've seen

3    or read in the media, or anywhere, is not evidence in this case?

4         PROSPECTIVE JUROR:  I do.  I just -- yeah, I just

5    wanted to point that out.

6         THE COURT:  Do you also understand that the verdict in

7    this case must be based solely on evidence presented here, and

8    the Court's instructions on the law?

9         PROSPECTIVE JUROR:  I do understand, Your Honor.

10         THE COURT:  Do you feel you can put to one side

11    everything you've seen or read about this case, and judge this

12    case fairly and impartially as a juror based only on the

13    evidence that is actually presented in the courtroom and the

14    Court's instructions on the law?

15         PROSPECTIVE JUROR:  The crimes are very serious, but

16    knowing that, I would certainly hope that if I were ever in a

17    position like that, that I would have an impartial jury.  So

18    yes.

19         THE COURT:  All right.

20         PROSPECTIVE JUROR:  Not that I would be.

21         THE COURT:  Well, independently of the seriousness of

22    the crime, are you clear that you can put it to one side and be

23    fair and impartial in this case, and judge this case solely on

24    the basis of the evidence presented here and the Court's

25    instructions on the law?

1           PROSPECTIVE JUROR:  Yes, Your Honor, I do believe so.

2    But I would also state that I think that virtually everyone in

3    this courtroom, unless they've been living with their head under

4    a rock the past 10 years, must have heard about this case in the

5    media.

6           THE COURT:  All right.  Thank you.  You may return to

7    your seat.

8           Good morning, sir.

9           PROSPECTIVE JUROR:  Good morning.

10          THE COURT:  Can you hear me?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  What is your name, please sir?

13          PROSPECTIVE JUROR:  Joe Pimenta.

14          THE COURT:  Mr. Pimenta, what have you seen or read or

15   heard, or know about this case, from any source whatever?

16          PROSPECTIVE JUROR:  None whatsoever.  I haven't heard

17   anything like that.  I'm actually concerned with the third

18   question about Iraq.  I was deployed twice.

19          THE COURT:  When?

20          PROSPECTIVE JUROR:  2003 and -- 2004 and 2008.

21          THE COURT:  All right.  So you were not in Iraq, then,

22   in 2012 or '13?

23          PROSPECTIVE JUROR:  No.  The only thing I was just

24   going to say I have concerns because I still communicate with my

25   workers from when I was in Iraq.

```
 1              THE COURT:  And what is your work, please, sir, and why
 2    were you in Iraq?
 3              PROSPECTIVE JUROR:  I was with the Army Corps of
 4    Engineers.
 5              THE COURT:  And are you still with the Army Corps of
 6    Engineers?
 7              PROSPECTIVE JUROR:  I'm retired.
 8              THE COURT:  And were you in Syria or just Iraq?
 9              PROSPECTIVE JUROR:  Well, I was in Syria years ago, but
10    not during that time.
11              THE COURT:  All right.  And what was your work in Iraq
12    at that time?  That is, 2004 through 2012, or whenever you were
13    there?
14              PROSPECTIVE JUROR:  I ran an ISR team, Intelligence,
15    Surveillance, and Reconnaissance team.  We were mapping the
16    country and we were actually mapping targets for the soldiers.
17              THE COURT:  You say you ran a what team?
18              PROSPECTIVE JUROR:  Intelligence, surveillance, and
19    reconnaissance team.
20              THE COURT:  Do you feel that that work would prevent or
21    hinder you in any way from rendering a fair and an impartial
22    verdict in this case based only on the evidence --
23              PROSPECTIVE JUROR:  No.
24              THE COURT:  Based only on the evidence and the Court's
25    instructions on the law?
```

1              PROSPECTIVE JUROR:  No.

2              THE COURT:  Let me ask you, since you're here - and

3    when I ask it later, you need not come forward - have you

4    personally had any contact of any kind whatsoever with ISIS or

5    any member of ISIS?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  All right.  Thank you, sir.  Is there any

8    reason that suggests itself to you, now that you know the nature

9    of this case, that you would be unable to sit, listen carefully

10   to the evidence, and render a fair and an impartial verdict

11   based only on the evidence and the Court's instructions on the

12   law?

13             PROSPECTIVE JUROR:  I wouldn't have any problem.

14             THE COURT:  Thank you, sir.  You may step down.

15             Good morning.  Can you hear me?

16             PROSPECTIVE JUROR:  Yes, I can.

17             THE COURT:  May I have your name, please, ma'am?

18             PROSPECTIVE JUROR:  Amanda Thomas.

19             THE COURT:  Ms. Thomas, what have you seen or read or

20   heard, or know anything at all, about this case?

21             PROSPECTIVE JUROR:  I vaguely remember an aid worker

22   named Mueller being killed outside of the United States, and I

23   just wanted to make sure that what I'm recalling may not have

24   anything to do with this case.

25             THE COURT:  Well, what you heard is not evidence in

56

 1    this case.  You understand that?

 2              PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  So in that regard, it has nothing to do

 4    with the trial of this case.  Because this case is to be decided

 5    solely on the basis of evidence presented here in this

 6    courtroom.  Do you understand that?

 7              PROSPECTIVE JUROR:  Yes, Your Honor.

 8              THE COURT:  Do you feel you can put to one side

 9    anything you may have heard about this case, and judge this case

10    fairly and impartially based only on the evidence and the

11    Court's instructions on the law?

12              PROSPECTIVE JUROR:  Yes, Your Honor.

13              THE COURT:  Any other answers to the questions I put to

14    you?

15              PROSPECTIVE JUROR:  No, Your Honor.

16              THE COURT:  Thank you, Ms. Brown [sic].  You may return

17    to your seat.

18              (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

19              THE COURT:  All right, ladies and gentlemen.  That

20    completes the first list, the first group of questions that I

21    asked you, or that I needed to ask you.  I'm now going to go to

22    the second group of questions.  Remember, if you have --

23              (OFF THE RECORD.)

24              THE COURT:  I think that's perfectly reasonable and

25    appropriate.

1          What I will do is take a 10-minute recess, give you an

2     opportunity to have -- let's make it 15 minutes, because the

3     facilities may be taxed.  I will ask the lawyers, you have the

4     ability to go to another floor.  Please do so.  And we will

5     reconvene at, let's make it 11 o'clock.  That should give

6     everybody an opportunity to use the facilities.

7          And I have -- yes, is there a hand that went up?  No.

8     Then I will continue the voir dire process, because I have a

9     number of other questions to ask you.

10          All right.  Court stands in recess until 11 o'clock.

11          (Recess taken at 10:40 a.m.)

12          THE COURT:  I'm advised by the deputy clerk that the

13     government wants me to know that the correct pronunciation of

14     Kassig is Ka-sig, not Kay-sig.  So I'll endeavor to get it

15     right.  But I'm sure everyone understood that when I said

16     Kay-sig, I was referring to Ka-sig.

17          We will continue now in the voir dire process.  I have

18     another group of questions to ask you, ladies and gentlemen.

19     Have you or any member of your family, so far as you know, had

20     any business or social dealings or contact with ISIS or any

21     member of ISIS?

22          Next, have you or any member of your family, so far as

23     you know, had any business or social dealings or contacts with

24     any members of the Syrian Defense Force, SDF.

25          And have you or any member of your family, so far as

  1   know, had any contact or been involved in any way with a

  2   designated Foreign Terrorist Organization, or any members of

  3   that?

  4           And the third question -- I will ask a fourth one.

  5   Have you or any member of your family ever been kidnapped or

  6   held hostage by anyone for ransom or for any other reason?

  7           If your answer is yes to any of those questions, come

  8   forward.  There are no affirmative answers to those questions.

  9   Is that correct?

 10           Let me go to the next group.  Have you or any member of

 11   your family worked for a charitable aid organization or a media

 12   organization in Iraq or Syria between 2012 and 2019?

 13           Have you or any member of your family served in the

 14   United States Armed Forces, or with any government agency, in

 15   Iraq or Syria between 2012 and 2019?

 16           And the final question in this group is, do you have

 17   the ability to speak or to understand the Arabic or Kurdish

 18   languages?  Any affirmative answers to those questions?

 19           (BENCH CONFERENCE ON THE RECORD.)

 20           THE COURT:  Can you hear me?

 21           PROSPECTIVE JUROR:  Yes.

 22           THE COURT:  What is your name, please?

 23           PROSPECTIVE JUROR:  Laura Younger.

 24           THE COURT:  Let me check, since my equipment is only

 25   now working.  Mr. Fitzpatrick, can you hear me?

1                MR. FITZPATRICK:  Yes, sir.

2                THE COURT:  Mr. MacMahon, can you hear me?

3                MR. MACMAHON:  Yes, sir.

4                THE COURT:  All right.  Thank you.

5                Ms. Younger, which question do you have an affirmative

6      answer to?

7                PROSPECTIVE JUROR:  The Armed Forces serving in Iraq.

8                THE COURT:  Yes, ma'am.

9                PROSPECTIVE JUROR:  My ex-husband served several times

10     in Iraq.  And I think he went back in 2012, but he was also in

11     Jordan.

12               THE COURT:  And this is your former husband?

13               PROSPECTIVE JUROR:  Correct.

14               THE COURT:  And how long has he been your former

15     husband?

16               PROSPECTIVE JUROR:  Nine years.

17               THE COURT:  So he's been your former husband since

18     about 2012.  Is that correct?

19               PROSPECTIVE JUROR:  Correct.  Correct.

20               THE COURT:  Do you feel that having an ex-husband, as

21     you've described him -- was he in the Armed Services?

22               PROSPECTIVE JUROR:  Yes.

23               THE COURT:  Do you feel having an ex-husband, as you've

24     described him, would prevent or hinder you in any way from

25     rendering a fair and an impartial verdict in this case based

1    only on the evidence and the Court's instructions on the law?

2         PROSPECTIVE JUROR:  No.

3         THE COURT:  Thank you.  You may return to your seat.

4         Can you hear me?

5         PROSPECTIVE JUROR:  Yes, Your Honor.

6         THE COURT:  May I have your name, please, sir?

7         PROSPECTIVE JUROR:  Robert Pumo.

8         THE COURT:  P-U-M-O.

9         PROSPECTIVE JUROR:  Yes, Your Honor.

10        THE COURT:  Which of the questions do you have an

11   affirmative answer to?

12        PROSPECTIVE JUROR:  To working in Iraq.

13        THE COURT:  Yes, sir.

14        PROSPECTIVE JUROR:  So between the years of 2011 to

15   2014, I spent a total of, let's say, a year, a little over a

16   year, in Iraq with the State Department.  This was trips, we

17   called them TDYs, approximately two weeks to two months at a

18   time.  Basra, Baghdad, Mosul.

19        THE COURT:  None of those is in Syria.  Is that

20   correct?

21        PROSPECTIVE JUROR:  No, I have not been to Syria.

22        THE COURT:  And what were your duties and

23   responsibilities in Iraq?

24        PROSPECTIVE JUROR:  So my work there at the time was to

25   support federal agents overseeing embassy security.  It was

1   primarily compliance and oversight of personal protection, which

2   is the bodyguard services, static security, and emergency

3   response teams, for lack of a better term.

4           THE COURT:  Do you feel there's anything about your

5   service in Iraq during that period of time that you think would

6   prevent or hinder you in any way from rendering a fair and an

7   impartial verdict in this case based only on the evidence

8   presented and the Court's instructions on the law?

9           PROSPECTIVE JUROR:  No, Your Honor.

10          THE COURT:  Thank you, sir.  Do you have answers to any

11  other questions I put to you?

12          PROSPECTIVE JUROR:  No, just that one.

13          THE COURT:  Thank you.  You may return to your seat.

14          Can you hear me?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  May I have your name, please?

17          PROSPECTIVE JUROR:  Amanda Thomas.

18          THE COURT:  Which question do you have an answer to?

19          PROSPECTIVE JUROR:  My step grandson served in the

20  U.S. Navy during the timeframe that you mentioned, I believe.

21          THE COURT:  All right.  Step grandson.  Is that right?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  And what was his job in the Navy?

24          PROSPECTIVE JUROR:  He worked for -- well, he was in a

25  submarine, sir.

62

1           THE COURT:  So he was on a submarine?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Do you feel that having a step grandson who

4   was employed in that fashion during the period that I mentioned

5   would prevent or hinder you in any way from rendering a fair and

6   an impartial verdict in this case?

7           PROSPECTIVE JUROR:  No, sir.

8           THE COURT:  He was not physically in Iraq or Syria, was

9   he?

10          PROSPECTIVE JUROR:  No, he was in Hawaii.

11          THE COURT:  Hawaii.  Oh, I see.  All right.  And he was

12  on a submarine?

13          PROSPECTIVE JUROR:  He was on a submarine.

14          THE COURT:  Thank you.  Do you have affirmative answers

15  to any of the other questions I asked?

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  Thank you.  You may step down.

18          Can you hear me?

19          PROSPECTIVE JUROR:  Yes, I can.

20          THE COURT:  What is your name?

21          PROSPECTIVE JUROR:  Anne Fay.

22          THE COURT:  Ms. Fay, let's see, which question do you

23  have an answer to?

24          PROSPECTIVE JUROR:  I really would like the third

25  question repeated.  I need to know the dates.

1           THE COURT:  Yes, of course.  The third question was, do

2      you have an ability to speak --

3           PROSPECTIVE JUROR:  No, no.

4           THE COURT:  -- Arabic or Kurdish.

5           PROSPECTIVE JUROR:  Then it was the second question.

6           THE COURT:  And I think there was a third.  So let me

7      repeat that question.  I put two questions together.  Have you

8      or any member of your family served in the United States Armed

9      Forces, or with any government agency, in Iraq or Syria between

10     2012 and 2019?

11          PROSPECTIVE JUROR:  Okay, I'm not sure about the date.

12     It might be after that.  It might be 2020.  But my son is

13     working -- he's a pilot, and he's working for a contractor who

14     deploys -- he goes to Iraq every, like, six months or

15     four months for a few months.

16          THE COURT:  So he is employed by a government

17     contractor as a pilot?

18          PROSPECTIVE JUROR:  I don't know what kind of a

19     contractor it is.  He doesn't tell us anything about it, he just

20     said he's flying for a contractor.

21          THE COURT:  I see.  Do you feel that having a son so

22     employed would prevent or hinder you in any way from rendering a

23     fair and an impartial verdict in this case based only on the

24     evidence and the Court's instructions?

25          PROSPECTIVE JUROR:  Absolutely not.  No, I don't.

1            THE COURT:  Thank you.  Do you have any other answers

2       to give me?

3            PROSPECTIVE JUROR:  No.

4            THE COURT:  Okay.  Thank you.  You may step down.

5            (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

6            THE COURT:  I will go to the next group, and this is

7       the -- either the final or penultimate group, to give you a

8       sense of where we are in this process.

9            The defendant in this case is an adherent of the Muslim

10      faith.  Is there anything about that fact which would prevent or

11      hinder you in any way from serving as a fair and an impartial

12      juror, and rendering a fair and an impartial verdict based only

13      on the evidence presented and the Court's instructions on the

14      law?  That's the first question.

15           The second question is, the trial of this case may last

16      as long as three, perhaps, conceivably, four weeks.  And I want

17      to know whether there is anything about the length of this trial

18      that would prevent or hinder you from serving as a juror for

19      that length of time, and whether there is any physical reason

20      why you would not be able to sit and pay careful and close

21      attention to the evidence as it is presented, and render a fair

22      and an impartial verdict based on the evidence presented and the

23      Court's instructions.

24           And the final question is a sort of cleanup.  Is there

25      anything in any question that I have asked, or anything about

1   the nature of the case, now that I have read to you what the

2   charges are, that you think would prevent or hinder you in any

3   way from rendering a fair and an impartial verdict based only on

4   the evidence and the Court's instructions on the law?  If you

5   have an affirmative answer to any of those questions, come

6   forward and the court security officer will have you come

7   forward to give your answers in the privacy of the witness box.

8            (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

9            THE COURT:  Good morning.  Can you hear me?

10           PROSPECTIVE JUROR:  Yes.

11           THE COURT:  May I have your name, please?

12           PROSPECTIVE JUROR:  My name is Louise Driggers.

13           THE COURT:  Yes, Ms. Driggers.  You're a registered

14   nurse?

15           PROSPECTIVE JUROR:  Yes, sir.

16           THE COURT:  Do you have an area of specialty?

17           PROSPECTIVE JUROR:  I work in primary care.

18           THE COURT:  Tell me which questions you have an

19   affirmative answer to.

20           PROSPECTIVE JUROR:  The length of service.  I was

21   concerned about for travel plans in mid May, and being away from

22   work in a critical staffing situation for work.

23           THE COURT:  Let's take those one at a time.  I do not

24   believe this case will last until mid May.  If it does, I can

25   tell you that I can't be here in mid May.  That may give you a

1     clue.  So I don't think it will last until mid May.

2          On the other hand, let me hear from you on your

3     problems about staffing.  But let me preface your answer by

4     telling you that I am very much aware of the fact that jury

5     service, for that length of time, especially, is a substantial

6     imposition and inconvenience that we expect people will have to

7     accommodate, because we do have cases that last that long and

8     juries are vital to the functioning of our society.  But by no

9     means do I mean to suggest to you that I don't think it is a

10    very big inconvenience.

11         Now, employers have to accommodate that.  They're

12    required by law.  If an employer interferes with a juror's

13    service, that can be a felony by the employer.  So it's very

14    important.  That doesn't mean that in some circumstances we

15    couldn't try to accommodate the inconvenience.  What is yours?

16         PROSPECTIVE JUROR:  Just at my place of work, I'm at a

17    critical level of staffing, so having another nurse out would be

18    very hard.

19         THE COURT:  What is your place of work?

20         PROSPECTIVE JUROR:  Kaiser Permanente, in internal

21    medicine.  And I'm sure they would be supportive if it's needed,

22    but it's just a concern that I have.

23         THE COURT:  Yes.  Well, I appreciate you bringing that

24    to my attention, and you may not be selected.  But if you are

25    selected, I will ask that you and your employer make whatever

1    arrangements may be necessary to accommodate your jury service.

2            PROSPECTIVE JUROR:  Okay.  Thank you.

3            THE COURT:  Thank you for bringing all of that to my

4    attention.

5            PROSPECTIVE JUROR:  The last item is from the first

6    group of questions, as far as if I had seen this in the media,

7    anything about this case.  I don't think I have, but I'm

8    concerned that as more details come out, it might be that I have

9    recalled details from the media.

10           THE COURT:  All right.  It's appropriate for you to

11   make that observation.  You understand that anything you may

12   have seen or read or heard outside this courtroom about this

13   case is not evidence in this case?  Do you understand that?

14           PROSPECTIVE JUROR:  Yes, sir.

15           THE COURT:  And you understand that if you are selected

16   as a juror, you will have to render a fair and an impartial

17   verdict based only on the evidence in this case?  Do you

18   understand that?

19           PROSPECTIVE JUROR:  Yes, sir.

20           THE COURT:  Do you feel that you will be able to put

21   aside anything you may have seen or read or heard about this

22   case, and judge this case fairly and impartially based only on

23   the evidence and the Court's instructions on the law?

24           PROSPECTIVE JUROR:  Yes, sir.

25           THE COURT:  Thank you.  You may return to your seat.

68

```
 1                    Can you hear me?

 2          PROSPECTIVE JUROR:  I can.

 3          THE COURT:  Good.  May I have your name, please?

 4          PROSPECTIVE JUROR:  Deborah Wintermute.

 5          THE COURT:  Which questions do you have an affirmative

 6   answer to?

 7          PROSPECTIVE JUROR:  It's clarity on the question about

 8   the length of the trial, the three to four weeks.

 9          THE COURT:  Yes, ma'am.

10          PROSPECTIVE JUROR:  So I have procedures scheduled for

11   the end of April, as well as my parents - I'm a driver for

12   them - for their procedures at the beginning of May.  So I don't

13   know when the trial would start.

14          THE COURT:  Well, the trial has started.

15   Ms. Wintermute, you say you have procedures scheduled for May?

16          PROSPECTIVE JUROR:  Well, my procedure is scheduled for

17   April 21st.

18          THE COURT:  And this is a personal procedure?

19          PROSPECTIVE JUROR:  Yes, it is.

20          THE COURT:  All right.  Ms. Wintermute, I want to be as

21   delicate as I can, and I don't want to intrude on your personal

22   medical situation.  But can you tell me anything that gives me a

23   sense of how important or urgent this medical procedure is for

24   you?

25          PROSPECTIVE JUROR:  It's a routine procedure, but I had
```

1   to wait three months to get the initial consult, and then I

2   booked the procedure at the later part of April thinking that

3   the trial, if I was chosen, would only be a couple of weeks.

4   They were trying to get me in earlier, but I booked it.  So I

5   just don't know if I have to reschedule, how long it would take

6   to get it rescheduled.

7           THE COURT:  And when is it currently scheduled for?

8           PROSPECTIVE JUROR:  April 21st.

9           THE COURT:  Ms. Wintermute, you may not be selected.

10  If you are, I will ask you to try to reschedule it.

11          PROSPECTIVE JUROR:  Okay.

12          THE COURT:  Because it's very likely that by the 21st

13  we will be at the end or close to the end of this trial, but may

14  not be at the end.

15          PROSPECTIVE JUROR:  Okay.

16          THE COURT:  Thank you.  And I appreciate your bringing

17  that to my attention.

18          Now, you also told me that you have --

19          PROSPECTIVE JUROR:  That would be the first part of

20  May, May 2nd and 3rd.  So as long as we're over by the end of

21  April, I'll be good on that one.

22          THE COURT:  That one is for your parents?

23          PROSPECTIVE JUROR:  Yes.  I'm the driver for my dad's

24  surgery.

25          THE COURT:  Are you the only driver?

 1              PROSPECTIVE JUROR:  I am the only child, and my mother

 2      does not drive.

 3              THE COURT:  If this case were to carry on beyond the

 4      first of May, let's say the first week -- and I can tell you

 5      that I don't plan for it to do so.  Indeed, I cannot be here

 6      into May, and will not be here for similar type reasons.  So I

 7      don't plan for that to happen, but the 1st or 2nd of May is

 8      possible.  You may not be selected, but, if you are, I'll ask

 9      you to see if you can make some other arrangements for those two

10      dates.

11              PROSPECTIVE JUROR:  Okay.

12              THE COURT:  Thank you for your consideration.

13              PROSPECTIVE JUROR:  Thank you.

14              (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

15              THE COURT:  Ladies and gentlemen, just so I can plan,

16      show me how many of you have affirmative answers to that last

17      group of questions that have not come forward yet, so I can have

18      a sense of how much more I have.  10.  Thank you.

19              (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

20              THE COURT:  Can you hear me?  Tell me your name,

21      please.

22              PROSPECTIVE JUROR:  Jiyoung Yoo.

23              THE COURT:  All right.  And Ms. Yoo, which questions do

24      you have an affirmative answer to?

25              PROSPECTIVE JUROR:  I'm sorry, what was your question

1    again, Your Honor?

2         THE COURT:  Yes.  I gave you three or four questions a

3    moment ago.  Which of those do you have an affirmative answer

4    to?

5         PROSPECTIVE JUROR:  From the jury information sheet, I

6    thought it would take one or three days.  But actually, I'm the

7    only accountant who works for my company, and I need to do the

8    financial statements because it is a quarterly statement to do.

9    So if I cannot work, then it's going to be a really big problem

10   for us, because I have to submit the financial statements to our

11   parent company in Korea so they can see all these statements.

12        THE COURT:  Let me see if I understand what you've

13   said.  You are an accountant who works for a company.  Are you

14   the only accountant?

15        PROSPECTIVE JUROR:  Actually, I'm the treasurer for the

16   biotech company, and I'm the only one who is in charge of the

17   accounting.  There is -- all the other members are researchers

18   and not related to accounting.  So I do all the work relating to

19   accounting and finance, and this is really a busy time for us as

20   the treasurer.

21        THE COURT:  What's the name of your company?

22        PROSPECTIVE JUROR:  SDCube Pharmaceuticals, Inc.

23        THE COURT:  And how many employees does the company

24   have?

25        PROSPECTIVE JUROR:  Now, eight.

1          THE COURT:  Eight?

2          PROSPECTIVE JUROR:  Uh-huh.

3          THE COURT:  And you're the treasurer and the only

4   accountant?

5          PROSPECTIVE JUROR:  Yes.  And all the other members are

6   researchers, biotech researchers, and one counselor.

7          THE COURT:  All right.  Now, if you're selected - let's

8   assume you would be selected - could your company make other

9   arrangements?

10         PROSPECTIVE JUROR:  I'm sorry, what was the question

11  again?

12         THE COURT:  Yes.  You may not be selected, but if you

13  are selected -- can you hear me, Ms. Yoo?  Can you hear me?

14         PROSPECTIVE JUROR:  I'm sorry, I think I need to

15  adjust.

16         THE COURT:  Can you hear me now?

17         PROSPECTIVE JUROR:  Yeah.

18         THE COURT:  You may not be selected, but if you are

19  selected, I want to know whether your company can make other

20  arrangements so that you could serve for as long as needed.

21         PROSPECTIVE JUROR:  I'm sorry, I need to adjust again.

22  I'm sorry, I missed the question again.  So if I'm selected,

23  what was the question again?

24         THE COURT:  If you're selected, will your company be

25  able to make other arrangements to substitute someone for your

73

1   work?

2           PROSPECTIVE JUROR:  Oh, no, actually.  Because I'm the

3   one who handles all the accounting work.  So if it is possible,

4   can I postpone the jury work?  Is it still possible for me to

5   ask?

6           THE COURT:  I will see.  You may remove your earphones

7   for a moment.

8           Mr. Fitzpatrick, what's the government's position?

9           MR. FITZPATRICK:  No objection, Your Honor.

10          THE COURT:  To excusing her?

11          MR. FITZPATRICK:  Correct.

12          THE COURT:  Mr. MacMahon?

13          MR. MACMAHON:  No objection to excusing her either,

14  Your Honor.

15          THE COURT:  All right.  She's excused.

16          You may return to your seat.

17          Can you hear me?

18          PROSPECTIVE JUROR:  I can.

19          THE COURT:  May I have your name, please?

20          PROSPECTIVE JUROR:  Lynn Franco.

21          THE COURT:  Ms. Franco, can you tell me which questions

22  you have an affirmative answer to?

23          PROSPECTIVE JUROR:  I have a health condition.  I have

24  non-Hodgkin's lymphoma.  I have been in remission, but every six

25  weeks I have to have infusion of immunoglobulin.

74

```
 1                THE COURT:  When is your next session?

 2                PROSPECTIVE JUROR:  April 6th.

 3                THE COURT:  And it's, of course, very important that

 4     you have that?

 5                PROSPECTIVE JUROR:  Yes, it is.

 6                THE COURT:  I understand that.  April 6th, you say?

 7                PROSPECTIVE JUROR:  April 6th.

 8                THE COURT:  All right.  Remove your earphones, if you

 9     would, please.

10                Mr. Fitzpatrick and Mr. MacMahon, any other questions

11     for this person?  But it seems to me that she has to get her

12     treatment on April 6th, and on April 6th I would assume we will

13     be knee deep in this matter.

14                Any reason why I shouldn't excuse her, Mr. -- either

15     one of you?

16                MR. FITZPATRICK:  No, Your Honor.

17                MR. MACMAHON:  No, Your Honor.

18                THE COURT:  All right.  She is excused.

19                Thank you.  You may step down.

20                Can you hear me?

21                PROSPECTIVE JUROR:  Yes.

22                THE COURT:  May I have your name, please, sir?

23                PROSPECTIVE JUROR:  Lucas Araujo.

24                THE COURT:  Which questions do you have an answer to?

25                PROSPECTIVE JUROR:  The one about the evidence being,
```

1    like -- I have a memory problem and ADHD.

2             THE COURT:  All right.  You're currently not employed.

3    Is that right?

4             PROSPECTIVE JUROR:  Yeah.

5             THE COURT:  What was your previous employment?

6             PROSPECTIVE JUROR:  I worked at Target for a little

7    bit, but I was going to school and then I got off so I could try

8    an ADHD medication for a little bit.

9             THE COURT:  So apart from ADHD, do you have any other

10   problem?

11            PROSPECTIVE JUROR:  A reading disability.  So when I

12   read, I'm focusing more on reading rather than taking in the

13   information.

14            THE COURT:  And how does your ADHD manifest itself?

15            PROSPECTIVE JUROR:  I shake my legs a lot and I twitch

16   with my hands.

17            THE COURT:  All right.  As I indicated, this case may

18   last three weeks.  Do you feel you could sit and pay careful and

19   close attention to the evidence for three weeks, and then render

20   a fair and an impartial verdict based only on the evidence and

21   the Court's instructions?

22            PROSPECTIVE JUROR:  I'm not sure.  I could sit for

23   three weeks, but I'm not sure if, like, I could remember

24   everything.

25            THE COURT:  All right.  And do you have a problem with

1    memory?

2              PROSPECTIVE JUROR:  Yeah.  Like when I read and stuff,

3    I have a short-term memory problem so I forget a lot of the

4    things that I read.

5              THE COURT:  All right.  Remove your earphones, if you

6    would, please, sir, for just a moment.

7              Mr. Fitzpatrick and Mr. MacMahon, do you have any

8    further information you think I should elicit from this person?

9              MR. FITZPATRICK:  Not from the government, Your Honor.

10             MR. MACMAHON:  Not from the defense.

11             THE COURT:  And what's your view about excusing this

12   person?

13             MR. FITZPATRICK:  No objection to excusing this juror.

14             MR. MACMAHON:  Same, Your Honor.  I think he should be

15   excused.

16             THE COURT:  All right.  He's excused.  You may step

17   down.

18             Can you hear me?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  May I have your name, please, ma'am?

21             PROSPECTIVE JUROR:  Sylvia Keys.

22             THE COURT:  Yes, which questions do you have an

23   affirmative answer to?

24             PROSPECTIVE JUROR:  I just bought a house, and we're

25   moving on April 20th.  I don't have a problem serving on this

77

```
 1    jury, but the 20th I would have to be off to move.

 2           THE COURT:  Well, you may not be selected, Ms. Keys.

 3    But if you are selected, I'll ask you to make whatever

 4    arrangements are necessary.  Because you may have to be here on

 5    the 20th.

 6           PROSPECTIVE JUROR:  Okay.  Okay.  That's fine.

 7           THE COURT:  Thank you for bringing it to my attention,

 8    though.  And rest assured, I'm intimately familiar with what

 9    happens when you buy a house and you're moving into it, and all

10    the problems entailed there.

11           PROSPECTIVE JUROR:  Uh-huh.  But there are weekends to

12    pack and take care of problems.

13           THE COURT:  That's right.  Thank you very much for

14    bringing that to my attention.

15           PROSPECTIVE JUROR:  Thank you.

16           THE COURT:  May I have your name, please, sir?

17           PROSPECTIVE JUROR:  Aaron Nguyen.

18           THE COURT:  Yes, Mr. Nguyen.  Which question do you

19    have an affirmative answer to?

20           PROSPECTIVE JUROR:  For the potential length of the

21    trial, it will be very challenging to accommodate both at home

22    and at work.

23           THE COURT:  All right.  Remove your earphones for a

24    moment, please.

25           Mr. Fitzpatrick, Mr. MacMahon, my information is that I
```

78

```
 1      have already stricken him.  Is that correct?

 2              MR. FITZPATRICK:  That is correct.

 3              THE COURT:  Mr. MacMahon?

 4              MR. MACMAHON:  That's correct, Your Honor.

 5              THE COURT:  All right.  Thank you.  You may return to

 6      your seat.

 7              Can you hear me, sir?

 8              PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  Which question do you have an affirmative

10      answer to?  First, give me your name, please, sir.

11              PROSPECTIVE JUROR:  My name is Daniel Weinstein.

12              THE COURT:  Which question do you have an affirmative

13      answer to?

14              PROSPECTIVE JUROR:  This would be for 2 and 3, in

15      regards to the timing of the actual hearing.  I will be

16      traveling in and out of the state for the next few months,

17      including my wedding celebration in early May that's been

18      postponed two years due to COVID.

19              And then I cannot guarantee with 100 percent certainty

20      that I can be objective, due to my brother-in-law's service in

21      the Marines, two tours in Iraq, and air marshal, which is now

22      Secret Service.

23              THE COURT:  All right.  You understand that the

24      evidence you hear is the only evidence you can consider in this

25      case?  You understand that?
```

1          PROSPECTIVE JUROR:  I understand.  And if selected, I

2     would go in with an open mind.  I just cannot guarantee full

3     impartiality just due to my brother-in-law and how close we've

4     become.

5          THE COURT:  Also, if you're selected, you will be

6     instructed not to discuss this matter with anyone, including

7     your brother-in-law.  And he shouldn't talk to you about this

8     case either.

9          PROSPECTIVE JUROR:  Of course.

10         THE COURT:  Does that give you any confidence that you

11    can render a fair and an impartial verdict in this case?

12         PROSPECTIVE JUROR:  Again, I would like to believe so,

13    and I would say my certainty is I'm confident I can.  I just

14    want to be as forthcoming with the Court as possible.

15         THE COURT:  I appreciate that.  That's important.

16    Remove your earphones for a moment.

17         Mr. Fitzpatrick, Mr. MacMahon, do you have any

18    additional questions you think I should ask?  Let's start with

19    Mr. Fitzpatrick first, and then I will ask you as well.

20         MR. FITZPATRICK:  No further questions from the

21    government, Your Honor.

22         MR. MACMAHON:  No further questions from the defense.

23         THE COURT:  At the moment I don't see any reason to

24    strike him, but if the parties are in agreement about it, I

25    would be inclined to consider that.

1      MR. MACMAHON:  If I may, Your Honor, go first.  I think

2  he should be stricken for cause.  In fact, his first answer to

3  you was that his brother was in the Air Force --

4      THE COURT:  Before you go on, that's not going to do

5  it.  But let's see if there's agreement.  If there's agreement,

6  it's over.

7      MR. FITZPATRICK:  The government agrees.

8      MR. MACMAHON:  Thank you, Your Honor.

9      THE COURT:  Yes, you may return to your seat, sir.

10  Can you hear me?

11      PROSPECTIVE JUROR:  Yes.

12      THE COURT:  May I have your name, please?

13      PROSPECTIVE JUROR:  Yes, Melanie Elizabeth De Cola.

14      THE COURT:  Would you tell me which questions you have

15  an affirmative answer to, please?

16      PROSPECTIVE JUROR:  Yes.  It was the very final one.

17      THE COURT:  Yes.

18      PROSPECTIVE JUROR:  So it hasn't happened to me or my

19  family, but a very close friend of mine, her father was

20  kidnapped and killed in Iraq in 2005.  And it still affects me.

21  He was in Iraq with a peace-keeping group, a Christian pacifist

22  group, and he never came back and he never got a trial.  And

23  just hearing the names brought that back up for me.

24      THE COURT:  Do you know who kidnapped him?

25      PROSPECTIVE JUROR:  So it was 2005, and I believe it

1    was sort of a precursor to ISIS.  I don't know if they called it

2    ISIS.  His name was Tom Fox.

3            THE COURT:  All right.  You understand that that matter

4    has nothing whatever to do with this case?

5            PROSPECTIVE JUROR:  Yes.

6            THE COURT:  Do you feel you can put your experience in

7    that case to one side and judge this case solely on the basis of

8    the evidence presented here and the Court's instructions on the

9    law?

10           PROSPECTIVE JUROR:  Honestly, I'm not completely sure,

11   just given my own reaction when the names were being called out.

12   I would like to think so, but I can't honestly say.

13           THE COURT:  All right.  Could you remove your earphones

14   for just a moment, please.

15           PROSPECTIVE JUROR:  Sure.

16           THE COURT:  All right.  Mr. Fitzpatrick, do you have --

17   I'll ask you and Mr. MacMahon if you any views on this

18   particular prospective juror.  As you can see, she was emotional

19   and tearful.

20           MR. FITZPATRICK:  We have no objection.  We noticed

21   that too.

22           MR. MACMAHON:  No objection to striking this juror.

23           THE COURT:  Thank you, ma'am, you may return to your

24   seat.

25           Can you hear me, sir?

82

1             PROSPECTIVE JUROR:  Yes, sir.

2             THE COURT:  May I have your name, please, sir?

3             PROSPECTIVE JUROR:  Scott Johnson.

4             THE COURT:  Which questions that I asked do you have an

5    affirmative answer to?

6             PROSPECTIVE JUROR:  The three to four week period.

7             THE COURT:  Yes, sir.

8             PROSPECTIVE JUROR:  I am professionally employed doing

9    project-based work.  I just don't know the impact of that on my

10   work at this point in time.  I'm an IT consultant.

11            THE COURT:  Are you an independent contractor?

12            PROSPECTIVE JUROR:  No, I'm not.

13            THE COURT:  Do you work for a company?

14            PROSPECTIVE JUROR:  I work for AbleVets, a wholly owned

15   subsidiary of Cerner Corporation.

16            THE COURT:  Can your employer make alternative

17   arrangements?

18            PROSPECTIVE JUROR:  I believe they could.

19            THE COURT:  All right.  You may not be selected.  If

20   you are, I will ask that you serve.  Thank you for bringing that

21   to my attention.

22            PROSPECTIVE JUROR:  Throughout my professional career,

23   I've made every effort to uphold and do what's needed of the

24   country.  So I would be honored to be selected, is what I'm

25   saying.

1           THE COURT:  All right.  Thank you for calling that to

2    my attention.  You may return to your seat, sir.

3           (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

4           THE COURT:  Let me ask, how many more have answers to

5    the questions that I haven't heard from?  Four.  So the original

6    10 was a little shy of the actual number.  That's all right.

7           (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

8           THE COURT:  Can you hear me, sir?

9           PROSPECTIVE JUROR:  Can you hear me?

10          THE COURT:  Yes, sir.  What is your name, please?

11          PROSPECTIVE JUROR:  John Donovan.  Just the three to

12   four weeks, just Fairfax County schools has spring break next

13   week.  I have a school aged daughter who's going to be out; only

14   my wife will be there.  We are expecting the possible imminent

15   death of an aunt, which would mess up the childcare.  I'll make

16   the best arrangements I can to get somebody down here to watch

17   the children, but it might be a situation where I have childcare

18   issues.

19          THE COURT:  Remove your earphones for a moment.

20          Mr. Fitzpatrick, I seem to recall other information

21   from this individual that disabled him.  Am I correct?

22          MR. FITZPATRICK:  You're correct, Your Honor.  And the

23   parties have discussed, we're in agreement that he can be struck

24   with cause.  He has active cases with our office.

25          THE COURT:  Yes, he is stricken.

1          Thank you, sir, you may return to your seat.

2          Can you hear me, sir?  May I have your name, please,

3     sir.

4          PROSPECTIVE JUROR:  My name is Sean Larson.

5          THE COURT:  Which questions do you have an affirmative

6     answer to?

7          PROSPECTIVE JUROR:  The time commitment, the three to

8     four weeks.  I'm an educator just about to get ready for state

9     testing.  Also, at my school I serve as the athletic director,

10    so I have to be readily available because of weather changes or

11    schedule changes.

12         THE COURT:  Well, I certainly understand.  You're a

13    Prince William County public school teacher.  Is that correct?

14         PROSPECTIVE JUROR:  Yes, Your Honor.

15         THE COURT:  What grade do you teach?

16         PROSPECTIVE JUROR:  Eighth grade math.

17         THE COURT:  All right.  And you also have

18    responsibilities in athletics.  Is that right?

19         PROSPECTIVE JUROR:  That is correct.

20         THE COURT:  Well, I am not unfamiliar with the kinds of

21    duties that you have.  My wife was, for many years, a school

22    teacher.  So I understand all of that.

23         You may not be selected, but, if you are, I will ask

24    that you and your school make whatever alternative arrangements

25    may be necessary to accommodate your service.  It's a civic

1    duty, and teachers of all groups should be aware that they

2    really have to step up and do this.  That doesn't mean,

3    Mr. Larson, that I don't understand that this is rough on you,

4    and it may even be hard on some students.  There are some

5    students I know who are counting on you to teach them what to do

6    in certain mathematical situations.  But they're going to have

7    to step up if you're selected and get a substitute.

8            Thank you for bringing that to my attention.  I don't

9    want you to be in any way unaware of the fact that I do think

10   what you do is very important, and I do think what you do is

11   vital.

12           PROSPECTIVE JUROR:  Thank you.

13           THE COURT:  Can you hear me?

14           PROSPECTIVE JUROR:  Yes, I can.

15           THE COURT:  May I have your name, please.

16           PROSPECTIVE JUROR:  Anne Fay.

17           THE COURT:  Ms. Fay, which question do you have an

18   affirmative answer to?

19           PROSPECTIVE JUROR:  The, I think it's number two.

20   Number two.  I think it was the why I can't do this for a month.

21           THE COURT:  Yes.

22           PROSPECTIVE JUROR:  I'm the sole caretaker of my

23   two-year-old twin granddaughters.

24           THE COURT:  Well, you may not be selected, Ms. Fay, but

25   if you are, can you make other arrangements?  Are their parents

1    available?

2         PROSPECTIVE JUROR:  Oh, they both teach.  They're

3    teachers.

4         THE COURT:  Yes?

5         PROSPECTIVE JUROR:  Yes, I could make other

6    arrangements.

7         THE COURT:  Because you're a retired teacher.  Am I

8    right?

9         PROSPECTIVE JUROR:  Yes, I am.

10        THE COURT:  And I'm married to a former teacher, so I

11   know all about teaching.  And I'm a veteran, since I -- a

12   veteran of teachers, K through 18 or 20 of people who have

13   taught me.  And I know how important teaching is.  But so is

14   jury service.

15        PROSPECTIVE JUROR:  I totally get that.  I thought I

16   would say that just in case.

17        THE COURT:  You may not be selected, but if you are,

18   Ms. Fay, I'll ask for you to make other arrangements.

19        PROSPECTIVE JUROR:  All right.

20        THE COURT:  How old are your twin granddaughters?

21        PROSPECTIVE JUROR:  Two.  They're fine.  Quite a hoot.

22        THE COURT:  I have grandchildren, but they're older

23   than two.  But I can remember when they were around two, and I

24   made clear to my children that I'm a grandparent, not a parent;

25   don't bring them around.  I told them, don't bring him around

1    until he can mow the lawn.

2            PROSPECTIVE JUROR:  That's good advice, actually.

3            THE COURT:  Thank you for bringing that to my

4    attention.  You may return to your seat.

5            Can you hear me?

6            PROSPECTIVE JUROR:  Yes, I can.

7            THE COURT:  And your name?

8            PROSPECTIVE JUROR:  Amanda Thomas.

9            THE COURT:  Yes, ma'am.  What question do you have an

10   affirmative answer to?

11           PROSPECTIVE JUROR:  I work for the Executive Office of

12   the President, so I'm in the process of implementing

13   President Biden's initiatives.  So missing three to four weeks

14   at work, it would be very difficult for me.

15           THE COURT:  Yes, I can certainly understand that.  But

16   I think you and President Biden both can understand how

17   important jury service is.

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  And all employers have to make adjustments.

20   You may not be selected, but if you are, I'll ask that you make

21   whatever arrangements are necessary.

22           PROSPECTIVE JUROR:  Yes, sir.

23           THE COURT:  Thank you for calling that to my attention.

24           All right.  Counsel, I have completed my voir dire.

25   Now, based on what I've asked, Mr. Fitzpatrick, you didn't

1    submit any proposed voir dire so I assume you have nothing

2    further to suggest that I ask of these persons?

3             MR. FITZPATRICK:  That's correct, Your Honor.

4             THE COURT:  Mr. MacMahon, you did submit voir dire.  I

5    reviewed it carefully, and I decided some of it was appropriate,

6    some of it was not.

7             Now, based on what I've asked, do you feel there is

8    anything I have not asked that it is important for me to ask in

9    order to discover whether there's any impermissible bias that

10   would disqualify any of these persons?

11            MR. MACMAHON:  Your Honor, of course all of the

12   questions we submitted we hoped the Court would ask.  I would

13   hope with some of these potential jurors, we haven't gone into

14   detail about what they may have or may not have heard that

15   Mr. Elsheikh or ISIS did that are the subject of this case.  The

16   Court didn't pry far enough into the media questions, given that

17   we had jurors that had things that they remembered.  Of course,

18   there was an article in *The Post* just yesterday.

19            THE COURT:  As a matter of fact, your co-counsel tried

20   to bring to my attention an article in *The Post* today.  I didn't

21   read it, but it's not important whether I read it.  What's

22   important is whether they read it, and, even more important,

23   whether they can put it to one side, and whether they understand

24   that what this case is intended to be decided upon is the

25   evidence that's presented here in the courtroom.

```
 1              Is there a particular juror that you think did not give
 2    sufficient information?  Because I think I made clear from each
 3    of those persons who said they had read or knew something about
 4    it that they could put it to one side.
 5              MR. MACMAHON:  Your Honor, I don't have a specific
 6    juror in mind.  I think we would have motions to strike some of
 7    them based upon the answers that they gave.
 8              THE COURT:  Let's deal with it that way, then.  I think
 9    I asked every juror who had information whether they could put
10    it to one side, and they said they could.  If there was a juror
11    who said they couldn't, I ended up indicating to counsel that I
12    would be inclined to strike them.  And I did strike them.
13              Let me ask first from the government, does the
14    government have any motions to strike for cause?
15              MR. FITZPATRICK:  No, Your Honor.
16              THE COURT:  All right.  Mr. MacMahon, which jurors do
17    you wish to have the Court consider whether they should be
18    stricken for cause?
19              MR. MACMAHON:  Number 7, Your Honor, Ms. Brown.
20              THE COURT:  All right.
21              MR. MACMAHON:  I think her answers to the questions,
22    though she did end up in a place where she said she could do her
23    best and try to be fair, she said they beheaded him, and "they
24    did it," referring to the defendants in this case.
25              THE COURT:  She did say that?
```

1          MR. MACMAHON:  That's my recollection from my notes,

2     Your Honor.  After somebody says something like that, I don't

3     think they can be rehabilitated to become a fair juror in the

4     case.

5          THE COURT:  Any objection to striking her for cause,

6     Mr. Fitzpatrick?

7          MR. FITZPATRICK:  Court's indulgence for one moment,

8     Your Honor.

9          THE COURT:  Yes.

10         MR. FITZPATRICK:  Your Honor, with juror number 7, we

11    would object to a strike for cause on that.  Our notes indicate

12    that she said "I want to be fair."  The Court asked follow-up

13    questions on that, on the fair and impartial standard, and she

14    resolved at a place where she said she could be fair and

15    impartial.

16         So we think she's a qualified juror.  We don't think

17    that's an appropriate cause strike, and the defense has their

18    peremptory strikes available to them.

19         THE COURT:  Yes, I'm aware of that.  Just a moment.

20         All right.  I'm going to grant the motion to strike

21    number 7.  I think it's a very close question, but I'm going to

22    err on the side of the defendant in this case and strike that

23    particular juror.  She said she would try to do her best, but

24    she did say she was aware of the beheading, and she made some

25    other statements that the best of my memory are a sufficient

1   basis for striking.

2          All right.  Who is your next person, Mr. MacMahon?

3          MR. MACMAHON:  Number 33, Joseph Pimenta, Your Honor.

4          THE COURT:  And what's the basis?

5          MR. MACMAHON:  Just, there's two there.  I think he was

6   vague on his answers as to what media he was aware of.  But

7   his -- I just don't think he was paying full attention to what

8   the Court said.  But he also talked about deploying to Iraq, and

9   things about workers in Iraq, in a way that should have been

10  drawn in by some of the first questions that you asked.  And I

11  don't think that he was rehabilitated enough that he would be a

12  fair and impartial juror in this case.

13         THE COURT:  Mr. Fitzpatrick?

14         MR. FITZPATRICK:  Your Honor, I don't recall him not

15  answering the Court's questions.  The issue is whether or not

16  his service in Iraq in 2005, I believe is when he said he last

17  served there, would render him biased towards the cause.  I

18  don't think that's the case.  This case began in 2012.  You

19  know, his service seven years prior, there is nothing that he

20  said that would demonstrate any bias.  We shouldn't presume that

21  because someone has served in that theatre, that they are

22  therefore biased to this cause.

23         THE COURT:  All right.  Just a moment.

24         (OFF THE RECORD.)

25         THE COURT:  All right.  The motion to strike, what

1    number was that?  That was number 33, that's Mr. Pimenta.  The

2    motion to strike Mr. Pimenta is denied.  He was a

3    Corps of Engineers person over there mapping Iraq from 2004 to

4    2008, and nothing I heard in any of his answers would disqualify

5    him.

6              MR. MACMAHON:  Number 34, Pumo.  Mr. Pumo gave us a lot

7    of reasons to want to move to strike him.  He's involved in

8    diplomatic security and counterterrorism, he follows the media

9    very closely, he worked in Iraq.  He says he follows the press

10   very closely in this case.

11             And then, of course, his wife, which he told us about,

12   actually works in public affairs at the Pentagon, and she would

13   be following all of this very closely, including following ISIS

14   and others.  And I just think that he was -- he's too close to

15   the facts of this case, what happened to these hostages and

16   otherwise, to be a fair and impartial juror, based on the

17   answers that he very honestly gave to the Court.

18             THE COURT:  Mr. Fitzpatrick?

19             MR. FITZPATRICK:  Judge, on that last point, I would

20   agree that he's close to the facts of this case.  There were no

21   answers elicited from that juror regarding any facts of this

22   case.  At bottom, his final response was, "I can be fair and

23   impartial."  That is the standard.

24             These jurors are sworn under oath to give truthful

25   answers to the Court, and he said, after extensive questioning,

1    "I can be fair and impartial."  I think that resolves the issue,

2    from the government's point of view, Your Honor.

3            THE COURT:  All right.  I agree.  I recall now his

4    dialogue with the Court, and I think he persuaded me that he

5    could be fair and impartial.  So that motion to strike is

6    denied.

7            Who is your next motion, Mr. MacMahon?

8            MR. MACMAHON:  That's all, Your Honor.

9            THE COURT:  All right.  Now, here's how we will

10   proceed.  We cannot select a jury yet because we don't have

11   enough.  So we are going to have to proceed with the afternoon

12   group of 50.  I hope there will be 50.  Let me double check to

13   make sure.

14           (OFF THE RECORD.)

15           THE COURT:  All right, counsel, I have stricken the

16   following persons.  I want you to check it to make sure I'm

17   correct.  Number 31, Nguyen; number 49, Yoo; number 15, Franco;

18   number 2, Araujo; number 45, Weinstein; number 9, De Cola;

19   number 11, Donovan; number 7, Brown.

20           Have I omitted anybody, Mr. Fitzpatrick?  Do you want

21   me to read them again?

22           MR. MACMAHON:  If you could, please.

23           THE COURT:  31, Nguyen; 49, Yoo; 15, Franco; 2, Araujo;

24   45, Weinstein; 9, De Cola; 11, Donovan; 7, Brown.

25           Any others, Mr. Fitzpatrick?

1          MR. FITZPATRICK:  No, Your Honor.

2          THE COURT:  Mr. MacMahon?

3          MR. MACMAHON:  Not on our list, Your Honor.  Thank you.

4          THE COURT:  All right.  So this is how we will proceed.

5     I'm going to excuse these people to lunch, and I'll have them

6     return -- I think I'll have them return at 2 o'clock, maybe

7     2:30.  I'll think about that.  And they're instructed not to

8     speak to anybody about this case and don't allow anybody to

9     speak to them about the case.  Because there are reporters

10    around, and I will warn them of that.

11         When they return, I will be involved in the voir dire

12    of the remaining number.  We need over 40 to clear, so we have

13    how many in this group?  29.  So we have 29 in this group.

14    We're going to need at least 11 out of the next group in order

15    to pick a jury, and I have some optimism that we can do that.

16         I'm now going to take us off the ear phones.  I'm going

17    to then tell the jurors something I don't do typically, but I

18    will tell these jurors who are stricken that they're excused,

19    they don't need to come back.  And the remaining jurors, I will

20    instruct that they are not to speak to anybody or to allow

21    anybody to speak to them about the case, and I'll have them come

22    back at 2:30 this afternoon.

23         And then we will proceed at that time to complete the

24    voir dire for this new group, and then add whoever survives that

25    to this group, and that will be the pool from which you will

1    select a jury.  And you all can exercise your peremptory

2    challenges.

3              All right.  Any questions, Mr. Fitzpatrick?

4              MR. FITZPATRICK:  No, Your Honor.

5              THE COURT:  Mr. MacMahon?

6              MR. MACMAHON:  No, Your Honor.

7              THE COURT:  All right.  Let's remove...

8              (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

9              THE COURT:  All right.  Ladies and gentlemen, that

10   completes the voir dire for this group at this time.  But the

11   jury selection process is not yet complete, because we have

12   another group to deal with so that we have a sufficient number,

13   so that jurors can be selected and counsel will have an

14   opportunity to exercise their peremptory challenges.

15             But I will now tell you who is excused from this group.

16   And when I excuse you, you need not return.  If you are not

17   excused, you must return at 2:30, and you'll have to go and find

18   lunch somewhere.  If you're selected as a juror, one bright spot

19   is, your lunches will be provided for every day that you serve

20   as a juror.  Don't look for the Baked Alaska or the Pheasant

21   Under Glass, but there will be other things that I think will be

22   satisfying.

23             The following jurors are excused and need not return,

24   and we thank you for your service today.  We couldn't have

25   proceeded without you.  But you are excused, and you need not

1    return:  31, Nguyen; 49, Yoo; 15, Franco; 2, Araujo;

2    45, Weinstein; 9, De Cola; 11, Donovan; 7, Brown.

3             Now, if I did not read your name, you must return at

4    2:30.  And when you return at 2:30, report on the third floor to

5    the jury assembly room.  You'll be greeted there by people who

6    know what we're doing.  And as soon as we're ready to have you

7    rejoin the group up here, you'll be brought up here and we'll

8    proceed to complete the jury selection process.

9             During this recess, those of you whose names I did not

10   read - that is, those of you who must remain - you'll have to

11   deal and get your own lunch, and be back by 2:30.  Now, do not

12   discuss this matter with anyone and do not allow anybody to

13   discuss it with you.  And I say that because there are members

14   of the press and they're doing their job.  They're trying to get

15   information, and they may try to speak to you.  Don't speak to

16   them.  And if they were here, I would tell them don't speak to

17   these persons or you will excite my ire, which they shouldn't

18   want to do.

19            Anyway, don't speak to anybody about this case, and

20   I'll ask you about that when you do return.  It's very important

21   that you not speak to anybody about this case.  Don't call up

22   anybody, don't look up anything on the internet, don't look up

23   anybody's name or anything.  Stay completely free of any

24   information about this case between now and the end of the jury

25   selection process.  And if you're selected, it will go on beyond

1    that.  But it's important to the integrity of the process that

2    you adhere to that instruction.

3            All right.  So I will recess now.  Those of you that I

4    have read the names of, you know who you are.  I'll read them

5    one more time:  Nguyen, Yoo, Franco, Araujo, De Cola, Donovan,

6    and Brown.  You may go home with our thanks.  The rest of you,

7    find lunch and be back at 2:30, and we will proceed with this

8    matter at that time.  Thank you for your appearance and your

9    patience today.  We'll move this along as quickly as we can.

10           All right.  You may leave the courtroom at this time.

11           Ladies and gentlemen, I'm now going to recess until

12   1 o'clock.  That gives you 45 minutes to grab a bite.  And when

13   we begin again, we will have the second group here for the

14   voir dire process.

15           Now, we had plenty of room in here for family members

16   and others.  I didn't start out that way because I had no idea

17   how many people we would have in the courtroom.  We still have a

18   fairly large number in the afternoon group, so I will ask to

19   keep the number in here to the voir dire to the jury panel.  But

20   I want to assure people who are on the 10th floor that once we

21   select a jury, all of you can come down here rather than stay up

22   there.

23           All right.

24           COURT SECURITY OFFICER:  Judge, we have a juror who's

25   not sure he's excused, and one that said he raised his hand and

1    he didn't come forward.

2              THE COURT:  Bring them both back here, please.

3              The person who couldn't raise their hand, who's that?

4              COURT SECURITY OFFICER:  Judge, these two need to know

5    if they're excused.

6              THE COURT:  Yes.  You're number 7, Brown.

7              PROSPECTIVE JUROR:  My ticket said 17, so I was

8    confused.  Thank you very much.

9              THE COURT:  All right.  Would you come forward, please.

10   Come forward, if you would, please.  Talking to him doesn't do

11   any good.

12             PROSPECTIVE JUROR:  I just wanted to make sure that...

13             THE COURT:  All right.  Be seated if you would, please.

14   Take off your mask and tell me what your name is, please.

15             PROSPECTIVE JUROR:  Jiyoung Yoo.  I think I heard my

16   name was called, but I just --

17             THE COURT:  Yes, you were number 49.

18             PROSPECTIVE JUROR:  Yeah.

19             THE COURT:  You're excused.

20             PROSPECTIVE JUROR:  Thank you so much.  I just wanted

21   to confirm.

22             THE COURT:  Is there anybody else out there in doubt?

23             COURT SECURITY OFFICER:  No, Your Honor, that's it.

24             THE COURT:  So I'm recessing now until 1 o'clock, at

25   which time we will commence anew the voir dire process with this

1    new group.

2          COURT SECURITY OFFICER:  Your Honor, we still have this

3    juror here that said they raised their hand and didn't get a

4    question in.

5          THE COURT:  Oh, yes.  Come forward, please.  Have a

6    seat over here in the witness box, please.

7          May I have your name, please.

8          PROSPECTIVE JUROR:  Anna Kinney.

9          THE COURT:  Yes, Ms. Kinney.  You said you raised your

10   hand?

11         PROSPECTIVE JUROR:  I did.  I have been scheduled for

12   jury duty in Loudoun County three Wednesdays from now, and so

13   there's an overlap.

14         THE COURT:  This one pre-empts that one, and I'll make

15   sure of that.

16         PROSPECTIVE JUROR:  Okay.  Thank you.

17         THE COURT:  I'll have our clerk's office call Loudoun

18   County Circuit Court -- is that the court.

19         PROSPECTIVE JUROR:  Yes.

20         THE COURT:  And tell them, if you're selected -- now,

21   if you're not selected here, then you'll have to deal with them

22   separately.  If you're selected, I will ensure that you're not

23   troubled by them.

24         PROSPECTIVE JUROR:  Okay.  Thank you very much.

25         THE COURT:  You're welcome.  You know you have to be

1        back here at 2:30 on the third floor.

2                All right.  Court stands in recess until 1 o'clock.

3                (Recess taken at 12:19 p.m.)

4        THE COURT:  Good afternoon.  Let me thank the ladies

5   and gentlemen of the jury panel for their patience in this

6   matter.  This is United States against El Shafee Elsheikh, and

7   it is 20-CR-239.  And the record will reflect that counsel are

8   present, and the defendant is present and prepared to proceed.

9                The matter is at the jury selection stage, but I want

10  to take this opportunity at the outset to thank each of you for

11  your service as jurors.  Jury service is vitally important to

12  the flourishing and survival of our republic.  It is one of the

13  two cardinal duties that we have as Americans, voting and jury

14  service, and it is important that we fulfill those duties.

15               I do want to be clear that society, the court, me, are

16  all grateful for your service as jurors today.  This is the jury

17  selection portion, and it will take about two hours, maybe

18  three, and it is called typically the voir dire portion of the

19  trial.  That's a very ancient Norman French phrase for "tell the

20  truth."  Because it is in this stage of the trial that I will

21  ask questions of prospective jurors designed to elicit answers

22  that will enable me to determine whether any of you may be

23  disabled by any rule of law from serving as a juror.

24               We're going to begin with calling the roll.  And we

25  call the roll to ensure all of you are here who were required to

1    be here.  And also, when your name is called, please stand and

2    remain standing until the next name is called.  And we do that

3    so that the attorneys here can match a name with a face for

4    their use.

5         Following the calling of the roll, I will have an oath

6    administered to you to answer the Court's questions truthfully.

7    And following that, I will begin the process by asking you a

8    series of questions, and we will proceed from there.

9         All right.  The deputy clerk may call the roll, please.

10        COURTROOM CLERK:  Ladies and gentlemen of the jury, as

11   I call your name, please stand, answer "present," and be seated

12   as the next name is called.

13        Juror number 1, Julie Bae.

14        PROSPECTIVE JUROR:  (No verbal response.)

15        THE COURT:  You'll have to say "here" or "present," if

16   you would.

17        PROSPECTIVE JUROR:  Present.

18        COURTROOM CLERK:  Juror number 2, Jeromy Block.

19        PROSPECTIVE JUROR:  Present.

20        COURTROOM CLERK:  Juror number 3, Linda Bock.

21        PROSPECTIVE JUROR:  Present.

22        COURTROOM CLERK:  Juror number 4, Enriqueta Bond.

23        PROSPECTIVE JUROR:  Present.

24        COURTROOM CLERK:  Juror number 5, Laurence Bourne.

25        PROSPECTIVE JUROR:  Present.

1          COURTROOM CLERK:  Juror number 6, Stephan Brown.

2          PROSPECTIVE JUROR:  Present.

3          COURTROOM CLERK:  Juror number 7, Laura Buschman.

4          PROSPECTIVE JUROR:  Present.

5          COURTROOM CLERK:  Juror number 8, Jean Counts.

6          PROSPECTIVE JUROR:  Present.

7          COURTROOM CLERK:  Juror number 9,

8   Anita Crawford-Murphy.

9          PROSPECTIVE JUROR:  Present.

10          COURTROOM CLERK:  Juror number 10, Erica Denham.

11          PROSPECTIVE JUROR:  Present.

12          COURTROOM CLERK:  Juror number 12, Jimmy Edwards.

13          PROSPECTIVE JUROR:  Present.

14          COURTROOM CLERK:  Juror number 13, Jose Feliciano-Ruiz.

15          PROSPECTIVE JUROR:  Present.

16          COURTROOM CLERK:  Juror number 14, Mirenda Fields.

17          PROSPECTIVE JUROR:  Present.

18          COURTROOM CLERK:  Juror number 17, Harold Honegger.

19          PROSPECTIVE JUROR:  Present.

20          COURTROOM CLERK:  Juror number 19, Dae Kang.

21          PROSPECTIVE JUROR:  Present.

22          COURTROOM CLERK:  Juror number 20, Alfred Keyser.

23          PROSPECTIVE JUROR:  Present.

24          COURTROOM CLERK:  Juror number 21,

25   William McCluskey, Jr.

1              PROSPECTIVE JUROR:  Present.

2              COURTROOM CLERK:  Juror number 22, Gwendolin McCrea.

3              PROSPECTIVE JUROR:  Present.

4              COURTROOM CLERK:  Juror number 23, Elizabeth Mitchell.

5       Juror number 23, Elizabeth Mitchell.

6              THE COURT:  All right.  Show cause.  Next.

7              COURTROOM CLERK:  Juror number 24, Vicky Moffitt.

8              PROSPECTIVE JUROR:  Present.

9              COURTROOM CLERK:  Juror number 25, Blair Mohney.

10             PROSPECTIVE JUROR:  Present.

11             COURTROOM CLERK:  Juror number 26, Jennifer Murray.

12             PROSPECTIVE JUROR:  Present.

13             COURTROOM CLERK:  Juror number 27, Zachary Nau.

14             PROSPECTIVE JUROR:  Present.

15             COURTROOM CLERK:  Juror number 28, Oscar Novo.

16             PROSPECTIVE JUROR:  Present.

17             COURTROOM CLERK:  Juror number 29, Wayne Phoel.

18             PROSPECTIVE JUROR:  Present.

19             COURTROOM CLERK:  Juror number 30, Mary Price.

20             PROSPECTIVE JUROR:  Present.

21             COURTROOM CLERK:  Juror number 31, Hatim Reta.

22             PROSPECTIVE JUROR:  Present.

23             COURTROOM CLERK:  Juror number 32, Carlos Rodrigues.

24             PROSPECTIVE JUROR:  Present.

25             COURTROOM CLERK:  Juror number 33, Deanna Rohrig-Bunn.

```
 1                PROSPECTIVE JUROR:  Present.

 2                COURTROOM CLERK:  Juror number 34,

 3   Hayleigh Royston-Lee.

 4                PROSPECTIVE JUROR:  Present.

 5                COURTROOM CLERK:  Juror number 35, Russell Ruud.

 6                PROSPECTIVE JUROR:  Present.

 7                COURTROOM CLERK:  Juror number 36, Ashna Saxena.

 8                PROSPECTIVE JUROR:  Present.

 9                COURTROOM CLERK:  Juror number 37, Suzanne Small.

10                PROSPECTIVE JUROR:  Present.

11                COURTROOM CLERK:  Juror number 38, Domicyl Smertcov.

12                PROSPECTIVE JUROR:  Present.

13                COURTROOM CLERK:  Juror number 39, Ralph Stallings.

14                PROSPECTIVE JUROR:  Present.

15                COURTROOM CLERK:  Juror number 40, Yordanka Stefanova.

16                PROSPECTIVE JUROR:  Present.

17                COURTROOM CLERK:  Juror number 41, Niamh Strei.

18                PROSPECTIVE JUROR:  Present.

19                COURTROOM CLERK:  Juror number 42, Ann Marie Terzaken.

20                PROSPECTIVE JUROR:  Present.

21                COURTROOM CLERK:  Juror number 43, Daniel Theiss.

22                PROSPECTIVE JUROR:  Present.

23                COURTROOM CLERK:  Juror number 45, Kaitlin Walker.

24                PROSPECTIVE JUROR:  Present.

25                COURTROOM CLERK:  Juror number 46,
```

1    Jeffrey Wallhermfechtel.

2           PROSPECTIVE JUROR:  Present.

3           COURTROOM CLERK:  Juror number 47, Adrian White.

4           PROSPECTIVE JUROR:  Present.

5           COURTROOM CLERK:  Juror number 48, Paul Wolfgramm, Jr.

6           PROSPECTIVE JUROR:  Present.

7           COURTROOM CLERK:  Juror number 49, Daniel Chi Wu.

8           PROSPECTIVE JUROR:  Present.

9           COURTROOM CLERK:  And juror number 50, Esthar Zanganeh.

10          PROSPECTIVE JUROR:  Present.

11          COURTROOM CLERK:  Is there any juror whose name I have

12   not called?

13          THE COURT:  All right.  You may administer the oath to

14   the panel, please.

15          COURTROOM CLERK:  Ladies and gentlemen of the jury,

16   will you please stand, raise your right hand, and respond after

17   the oath by stating "I shall."

18          Do you swear that you shall true and perfect answer

19   made to such questions as may be propounded to you by the Court,

20   so help you God?

21          PROSPECTIVE JURY PANEL:  (Collectively.)  I shall.

22          COURTROOM CLERK:  Thank you.  Please be seated.

23          THE COURT:  All right.  Ladies and gentlemen, I'm now

24   going to proceed with the voir dire portion of the trial, the

25   beginning.  Voir dire is an ancient Anglo-French expression that

```
 1    lawyers have come to use in the last thousand years, which means
 2    literally to speak the truth.  It is that portion of the trial
 3    where I ask questions and panel members give me answers, and
 4    from those answers I determine whether anyone is disabled by any
 5    rule of law from serving as a juror in this case.
 6            There are two phases to the voir dire.  The first phase
 7    is, I will ask you a series of questions and you will provide
 8    answers from where you'll stand, and give me answers from where
 9    you're now located in the courtroom.  The court security
10    officers will bring a microphone to you and you'll provide
11    answers.  They're easy-to-answer questions.
12            The next phase, phase 2, you will be asked a series of
13    questions, and then you'll come forward one at a time to give
14    your answers here on the witness stand.  And those answers will
15    be heard only by the Court, court personnel, attorneys, and the
16    defendant.  No one else will hear them because we'll use
17    earphones.  And that's done to preserve the privacy of what you
18    may have to disclose in this process, and also to avoid having
19    any information that you have to provide from affecting or
20    infecting anyone else.
21            All right.  And I think, as I said, the whole process
22    will take about three hours.  All right.  The first question I
23    have is, I want to know -- well, let me do this.
24    Mr. Fitzpatrick, would you stand, introduce yourself and your
25    co-counsel to the panel, please.
```

1          MR. FITZPATRICK:  Thank you, Your Honor.  Good

2     afternoon, ladies and gentlemen.  My name is Dennis Fitzpatrick,

3     I'm an Assistant United States Attorney in the Eastern District

4     of Virginia.  To my right is my colleague, Raj Parekh, he's the

5     First Assistant United States Attorney in the Eastern District

6     of Virginia; to his right is Mr. John Gibbs, also an

7     Assistant United States Attorney within this district; in front

8     of me is our colleague, Alicia Cook, she is a trial attorney

9     with the National Security Division within the Department of

10     Justice; and to Ms. Cook's right is Aidan Grano-Mickelsen, who

11     is also an Assistant United States Attorney with our office.

12          THE COURT:  All right.  Ladies and gentlemen, now, do

13     you or any member of your family, so far as you know, know any

14     of these individuals, or have you had any business or social

15     dealings with any of them?

16          The record will reflect no hands.

17          MR. FITZPATRICK:  And, Your Honor, I failed to

18     recognize an important part of our team, Ms. Nicole Lopez, who

19     will be working with us in this trial.

20          THE COURT:  All right.  And where is she employed?

21          MR. FITZPATRICK:  She's employed within the Eastern

22     District of Virginia.

23          THE COURT:  Oh, she's your paralegal in the matter?

24          MR. FITZPATRICK:  Correct, Your Honor.

25          THE COURT:  Thank you for that.  Let me ask you again,

1    ladies and gentlemen, whether you or any member of your family,

2    so far as you know, know any of these individuals, or have had

3    any business or social dealings of any kind with any of them?

4    Again, the record will reflect no hands.  You may be seated.

5           Now, Mr. Fitzpatrick and his colleagues are members of

6    the U.S. Attorney's Office for the Eastern District of Virginia.

7    And I want to know whether you or any member of your family, so

8    far as you know, know any of the attorneys or employees of that

9    office, or whether you've had any business or social dealings of

10   any kind whatsoever with any of them.  All right.  The record

11   will reflect one hand.

12          All right.  Yes, sir?

13          PROSPECTIVE JUROR:  I'm an attorney for the

14   Department of Justice.  I do not currently have dealings --

15          THE COURT:  What is your name, please?

16          PROSPECTIVE JUROR:  Ann Marie Terzaken.  I don't

17   currently have any dealings with the U.S. Attorney's Office.  I

18   have had prior dealings with the National Security Division.  I

19   just wanted to...

20          THE COURT:  Yes, that's helpful.  Thank you.  You may

21   be seated.

22          All right.  Anyone else?  All right.  No one else.

23   Now, Mr. MacMahon, would you stand, introduce yourself and your

24   co-counsel, on behalf of the defendant?

25          MR. MACMAHON:  Yes, thank you, Your Honor.  My name is

1    Edward MacMahon, I'm an attorney here in Northern Virginia.

2    This is Nina Ginsberg with the law firm of DiMuro Ginsberg in

3    Alexandria, Virginia; that's Zach Deubler, who is also with the

4    firm of DiMuro Ginsberg; and Yancey Ellis is with

5    Carmichael Ellis & Brock, which is another law firm.

6            THE COURT:  Do you or any member of your family, so far

7    as you know, know any of these individuals, or have you had any

8    business or social dealings of any kind whatsoever with any of

9    them?

10           All right.  The record will reflect no hands.  You may

11   be seated.

12           Now, Ms. Ginsberg and Mr. Deubler are members of the

13   firm of DiMuro Ginsberg in Northern Virginia.  Do you or any

14   member of your family, so far as you know, know any of the

15   employees or attorneys of that firm, or had any business or

16   social dealings of any kind whatsoever with any of them?

17           And the record will reflect no hands are raised in that

18   regard.

19           I will also point out that Mr. Ellis, Yancey Ellis, and

20   I are unrelated in any familial way.  Which even if I tried to

21   say otherwise, he would deny it.  But we are not related.

22           Now, Mr. MacMahon, did I get your firm, or is it just

23   you?

24           MR. MACMAHON:  It's just me, Your Honor.

25           THE COURT:  All right.  And I think Mr. Deubler is

1    associated with Ms. Ginsberg.

2            MR. DEUBLER:  Correct, Your Honor.

3            THE COURT:  And Mr. Ellis?

4            MR. ELLIS:  Yes, sir.  Our firm is

5    Carmichael Ellis & Brock.

6            THE COURT:  Do you or any member of your family, so far

7    as you know, know any of the attorneys or employees of that

8    firm, or have you had any business or social dealings of any

9    kind whatsoever with any of them?

10           And the record will reflect no hands were raised.

11           The next question, ladies and gentlemen, is, I want to

12   know whether any of you have served in the past on any juries,

13   either grand juries or trial juries, in either local, state, or

14   federal courts.  If you would raise your hands, please.  We have

15   a few veterans here.

16           Could you stand and give me your name, please.

17           PROSPECTIVE JUROR:  Linda Bock.

18           THE COURT:  Ms. Bock, what juries have you served on in

19   the past?

20           PROSPECTIVE JUROR:  Over the years, a couple from

21   City of Alexandria, and some civil disputes in the past

22   two years.

23           THE COURT:  All right.  Let me see if I understood your

24   answer.  You might have to hold the microphone a little...

25           PROSPECTIVE JUROR:  Okay.  There we go.

1            THE COURT:  Thank you.  I'm old, and my ears don't work

2    as well as they once did.  In fact, nothing does as it once did.

3    But you're too young to know that.  It will come to all of us.

4            Tell me again what juries you've served on in the past.

5            PROSPECTIVE JUROR:  I've been called several times for

6    the City of Alexandria, and served on three separate juries

7    there, and one civil trial in the last two years, also in the

8    City of Alexandria.

9            THE COURT:  So you served on three juries in

10   Alexandria?

11           PROSPECTIVE JUROR:  Yes.

12           THE COURT:  And what was the nature of the cases on

13   which you served in Alexandria?

14           PROSPECTIVE JUROR:  One was a property dispute, one was

15   an attempted rape, and the other one was so long ago, I've

16   forgotten what it was.

17           THE COURT:  All right.  In those cases, was the jury on

18   which you served able to reach a unanimous verdict?

19           PROSPECTIVE JUROR:  (No verbal response.)

20           THE COURT:  You need only say "yes" or "no" --

21           PROSPECTIVE JUROR:  Yes.

22           THE COURT:  -- and explain.  But I don't want to know

23   what the verdict was, I just want to know whether it was

24   unanimous.

25           PROSPECTIVE JUROR:  Yes, it was.

112

1           THE COURT:  On all three?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  Then you said you served on a jury

4   elsewhere?

5           PROSPECTIVE JUROR:  No, just in the City of Alexandria.

6           THE COURT:  And have we covered the three times you

7   served?

8           PROSPECTIVE JUROR:  Yes.

9           THE COURT:  Any other jury service?

10          PROSPECTIVE JUROR:  No, sir.

11          THE COURT:  Thank you.  You may be seated have.

12          Next.

13          PROSPECTIVE JUROR:  The name is Jeromy Block.

14          THE COURT:  Yes.  What juries have you served on in the

15   past?

16          PROSPECTIVE JUROR:  Fairfax County.

17          THE COURT:  What was the nature of the case?

18          PROSPECTIVE JUROR:  It was a kidnapping.

19          THE COURT:  How long ago?

20          PROSPECTIVE JUROR:  22 years ago.

21          THE COURT:  Was the jury on which you served able to

22   reach a unanimous verdict?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  All right.  Any other jury service,

25   Mr. Block?

```
 1              PROSPECTIVE JUROR:  I've been called to Loudoun, but I
 2      was never picked.
 3              THE COURT:  I just want to know what juries you've
 4      served on.  Thank you, sir.
 5              Next.
 6              PROSPECTIVE JUROR:  My name is Enriqueta Bond.
 7              THE COURT:  Yes, Ms. Bond.
 8              PROSPECTIVE JUROR:  I served on a jury in Sangamon,
 9      Illinois on eminent domain.
10              THE COURT:  Was the jury on which you served able to
11      reach a unanimous verdict?
12              PROSPECTIVE JUROR:  It was.
13              THE COURT:  And, Ms. Bond, I understand you are a
14      scientist.  What is your area of science?
15              PROSPECTIVE JUROR:  Molecular biology and genetics.
16              THE COURT:  Thank you.  You may be seated.
17              Next.
18              PROSPECTIVE JUROR:  Yes, sir.  My name is
19      William McCluskey.
20              THE COURT:  Yes, Mr. McCluskey.  What juries have you
21      served on in the past?
22              PROSPECTIVE JUROR:  I served on a grand jury here in
23      the Eastern District 15 or more years ago, national security,
24      and unanimous decision.
25              THE COURT:  So the grand jury on which you served, was
```

114

1          it a grand jury or a trial jury?

2                    PROSPECTIVE JUROR:  It was a grand jury.

3                    THE COURT:  And was the grand jury on which you served

4          able to reach agreement on the issuance of true bills?

5                    PROSPECTIVE JUROR:  Yes, it did.

6                    THE COURT:  Were there any occasions in which the

7          grand jury decided or ruled not to issue a true bill?

8                    PROSPECTIVE JUROR:  No.

9                    THE COURT:  Thank you.  You may be seated.

10                   Anyone else with past jury service?  Yes, your name,

11         please?

12                   PROSPECTIVE JUROR:  Anita Crawford-Murphy.

13                   THE COURT:  Yes.  What juries have you served on in the

14         past?

15                   PROSPECTIVE JUROR:  Fairfax County.

16                   THE COURT:  All right.  And what cases were you on?

17                   PROSPECTIVE JUROR:  It was a trial, police dispute.

18                   THE COURT:  I'm sorry?

19                   PROSPECTIVE JUROR:  It was a trial.

20                   THE COURT:  And what was the trial?

21                   PROSPECTIVE JUROR:  It was a police dispute, a ticket.

22                   THE COURT:  And was the jury on which you served able

23         to reach a unanimous verdict?

24                   PROSPECTIVE JUROR:  The jury was...no.

25                   THE COURT:  I'm sorry?

```
 1                    PROSPECTIVE JUROR:  No.

 2              THE COURT:  It was not?

 3                    PROSPECTIVE JUROR:  It was not.

 4              THE COURT:  In other words, the jury was split, or

 5       hung?

 6                    PROSPECTIVE JUROR:  Correct.

 7              THE COURT:  And it was a civil case?

 8                    PROSPECTIVE JUROR:  Yes.

 9              THE COURT:  Rather unusual.  But any other jury

10       service?

11                    PROSPECTIVE JUROR:  No.

12              THE COURT:  Let me be sure.  You're Ms. Moffitt?

13                    PROSPECTIVE JUROR:  Murphy.  Crawford-Murphy.

14              THE COURT:  Ah, yes.  How do you wish to be addressed?

15                    PROSPECTIVE JUROR:  Ms. Murphy is fine.

16              THE COURT:  All right.  What I'm looking at says

17       Crawford.  They crossed out the Murphy.  And you prefer Murphy?

18                    PROSPECTIVE JUROR:  Correct.  That is my married name.

19              THE COURT:  All right.  Thank you, Ms. Murphy.

20          Anyone else with past jury service?  All right.  The

21       record will reflect that there are no others.

22          Next I want to know whether you or any member of your

23       immediate family is employed by any law enforcement agency, if

24       you would raise your hands, please.

25                    PROSPECTIVE JUROR:  Hello, my name is
```

1    Yordanka Stefanova.

2            THE COURT:  Yes, ma'am.  And who in your family, or if

3    you are, what law enforcement agencies are you or they employed

4    by?

5            PROSPECTIVE JUROR:  That's me, and I'm employed at the

6    Federal Bureau of Investigation.

7            THE COURT:  And you're a program manager there?

8            PROSPECTIVE JUROR:  Correct, sir.

9            THE COURT:  Do you have any law enforcement

10   responsibilities?

11           PROSPECTIVE JUROR:  Not myself, no.

12           THE COURT:  You don't go out and arrest people or

13   investigate people?

14           PROSPECTIVE JUROR:  I participate in the investigative

15   process, but I'm not law enforcement per se.

16           THE COURT:  All right.  Do you feel that being employed

17   by the FBI in the capacity that you've mentioned would prevent

18   or hinder you in any way from rendering a fair and an impartial

19   verdict in this case based only on the evidence that's presented

20   in the courtroom and the Court's instructions on the law?

21           PROSPECTIVE JUROR:  I will try to be fair always.

22           THE COURT:  All right.  Thank you.  You may be seated.

23           PROSPECTIVE JUROR:  Ann Marie Terzaken.  As I mentioned

24   before, Your Honor, I work for the Department of Justice.

25           THE COURT:  Yes.

1          PROSPECTIVE JUROR:  I don't have any other family

2    members who work for a law enforcement agency.

3          THE COURT:  All right.

4          Counsel, put on your earphones, please.

5          (BENCH CONFERENCE ON THE RECORD.)

6          THE COURT:  Mr. Fitzpatrick, can you hear me?

7          MR. FITZPATRICK:  Yes, Your Honor.

8          THE COURT:  Mr. MacMahon, can you hear me?

9          MR. MACMAHON:  Yes, Your Honor.

10         THE COURT:  All right, good.  Now, the reason I want to

11   do this is that I am advised that one of my law clerks last year

12   or the year before - I guess it was the year before that - he

13   was a law clerk to a Seventh Circuit judge last year, before

14   coming here.  But before that, he worked with, I believe, this

15   particular person's husband in a law firm.

16         So unless there is an objection by the government or

17   Mr. MacMahon, I'm going to excuse this panel member.

18         MR. MACMAHON:  That's number 42, Your Honor?

19         THE COURT:  Let me confirm that.

20         MR. FITZPATRICK:  Ms. Terzaken?

21         THE COURT:  Yes, that's correct.

22         MR. MACMAHON:  No objection from the defense,

23   Your Honor.

24         MR. FITZPATRICK:  We agree, no objection.

25         THE COURT:  All right.

```
 1                    (END BENCH CONFERENCE.)

 2               THE COURT:  Next?

 3               PROSPECTIVE JUROR:  Hayleigh Royston-Lee.

 4               THE COURT:  Yes, which question do you have an answer

 5     to, Ms. Royston-Lee?

 6               PROSPECTIVE JUROR:  Affiliation with law enforcement.

 7               THE COURT:  Yes.

 8               PROSPECTIVE JUROR:  My husband serves as a lieutenant

 9     with Fauquier County Sheriff's Office.

10               THE COURT:  And how long has he served as a lieutenant

11     with the police department there?

12               PROSPECTIVE JUROR:  He's been in law enforcement for

13     over 10 years, and served as a lieutenant for two of those.

14               THE COURT:  Does having a husband so employed, would

15     that prevent or hinder you in any way from rendering a fair and

16     an impartial verdict in this case based only on the evidence and

17     the Court's instructions on the law?

18               PROSPECTIVE JUROR:  No, sir.  I would strive to be

19     objective.

20               THE COURT:  Thank you.  You may be seated.

21               Next?

22               PROSPECTIVE JUROR:  Jeromy Block.

23               THE COURT:  Yes, Mr. Block.

24               PROSPECTIVE JUROR:  My brother-in-law is a Fairfax

25     County detective.
```

119

```
1              THE COURT:  And how long has he been a Fairfax County
2    detective?
3              PROSPECTIVE JUROR:  He's about to retire, so about
4    30 years with the county.  I've known him just over 10.
5              THE COURT:  Does the fact that you have a
6    brother-in-law who serves as a detective in the county, would
7    that prevent or hinder you in any way from rendering a fair and
8    an impartial verdict in this case based only on the evidence and
9    the Court's instructions on the law?
10             PROSPECTIVE JUROR:  No, sir.
11             THE COURT:  All right.  Thank you.
12             Anyone else?
13             PROSPECTIVE JUROR:  Yes, sir.  Stephan Brown.  I have
14   an uncle in law enforcement in California.  He a prison guard.
15             THE COURT:  And this uncle is a prison guard.  Is that
16   what you're saying?
17             PROSPECTIVE JUROR:  Yes, sir.
18             THE COURT:  And how long has he served in that
19   capacity?
20             PROSPECTIVE JUROR:  I believe at least 20, possibly
21   25 years.
22             THE COURT:  Do you feel that having an uncle who is so
23   employed would prevent or hinder you in any way from rendering a
24   fair and an impartial verdict in this case?
25             PROSPECTIVE JUROR:  No, sir.
```

120

```
 1              THE COURT:  Thank you.  Next.  Anyone else?
 2              PROSPECTIVE JUROR:  Daniel Wu.
 3              THE COURT:  Just a moment.  Let me find you.  Yes,
 4     Mr. Wu.
 5              PROSPECTIVE JUROR:  I have a stepbrother who I believe
 6     is just finished with training as a police officer.
 7              THE COURT:  As a what, sir?
 8              PROSPECTIVE JUROR:  Police officer.
 9              THE COURT:  In what county or city?
10              PROSPECTIVE JUROR:  I believe Arlington.  We don't talk
11     much.
12              THE COURT:  Do you feel that having a stepbrother who
13     is so employed would prevent or hinder you in any way in
14     rendering a fair and an impartial verdict in this case based
15     only on the evidence and the Court's instructions on the law?
16              PROSPECTIVE JUROR:  I do not.
17              THE COURT:  Thank you.  You may be seated.
18              Next?
19              PROSPECTIVE JUROR:  Deanna Rohrig-Bunn.
20              THE COURT:  Yes.  And what law enforcement affiliation
21     do you or a family member have?
22              PROSPECTIVE JUROR:  I have a brother-in-law in prison
23     corrections and I have a nephew in the sheriff's department,
24     both in Spotsylvania County.
25              THE COURT:  Do you feel having a brother-in-law and
```

1    nephew in law enforcement as you have described would prevent or

2    hinder you in any way from rendering a fair and an impartial

3    verdict in this case based only on the evidence and the Court's

4    instructions on the law?

5             PROSPECTIVE JUROR:  No, sir.  No, sir.

6             THE COURT:  Thank you.  You may be seated.  Anyone else

7    have any law enforcement affiliation or family affiliation with

8    law enforcement?

9             All right.  The record will reflect that no other hands

10   were raised.

11            Mr. McCluskey?

12            PROSPECTIVE JUROR:  Sir?

13            THE COURT:  Mr. McCluskey, you're retired, as I

14   understand it, from the government.

15            PROSPECTIVE JUROR:  That's correct.

16            THE COURT:  What did you do for the government?

17            PROSPECTIVE JUROR:  I worked for the

18   Department of Defense.

19            THE COURT:  All right.  And are you able to tell us, in

20   general, what you did?

21            PROSPECTIVE JUROR:  Yes.  I was responsible for doing

22   international science and technology cooperation with our

23   allies.

24            THE COURT:  All right.  So you're a scientist?

25            PROSPECTIVE JUROR:  Yes, sir.

1           THE COURT:  What is your area of science?

2           PROSPECTIVE JUROR:  I began with biological

3    oceanography some years ago.

4           THE COURT:  Thank you.  You may be seated.

5           Ms. Price, are you currently employed?

6           PROSPECTIVE JUROR:  No, I'm not.

7           THE COURT:  And what is your most recent employment?

8           PROSPECTIVE JUROR:  I've been a stay-at-home mother for

9    13 years.  It's been a long time.

10          THE COURT:  You're a stay-at-home mom.  That's the most

11   important job in the world.

12          PROSPECTIVE JUROR:  Yeah, it is.  But no actual

13   employment.

14          THE COURT:  I agree with that.  One of my sons and his

15   wife made an agreement three years ago that he would be the

16   stay-at-home parent, and I'm so proud of my son.  He did it.

17   Thank you.

18          See, I come from a generation where not only did we --

19   I never even changed a diaper.  But all of us in those days,

20   males, served in the military, and our goal was to be away when

21   any children were born.  The world has changed, thank goodness,

22   and it is far better.  I remember the doctor asking me if I

23   wanted to be in the delivery room, and I looked at him as if he

24   needed a -- is he crazy?  Of course not.

25          Now, of course, the world has changed, and, as I said,

1    for the better.  Not that I would make a different choice today,

2    but I'm a little more squeamish than the average person.

3           All right.  Just a moment.  The next question I have

4    for you, ladies and gentlemen, is I'm going to read to you a

5    list of names.  Pay careful attention to that list.  It's

6    lengthy, so I'm only going to read to you 10 names at a time and

7    I want to ask you at the end whether you know or have had any

8    business or social dealings of any kind with any of the persons

9    whose names I have read.

10          Now, if you need any identifying information or you

11   think you know the person, don't hesitate to ask.

12   Bruce Hoffman, Barry Goodman, Dan Godfrey,

13   William Van-Der-Reijden.  The last part of that is

14   R-E-I-J-D-E-N.  Matthew Husher; Federico Motka, M-O-T-K-A;

15   Jens Serup, S-E-R-U-P; Patricia Chavez Mejia; George Smith;

16   Jason Richards.

17          Now, do you or any member of your family, so far as you

18   know, know any of those persons, or have you had any business or

19   social dealings of any kind whatsoever with any of them.

20          PROSPECTIVE JUROR:  Your Honor, there's a neighbor of

21   mine whose name is Bruce Hoffman.

22          THE COURT:  Bruce Hoffman?

23          PROSPECTIVE JUROR:  Yeah.

24          THE COURT:  Just a moment.  And what is his address?

25          PROSPECTIVE JUROR:  Oak Lane in McLean, Virginia.

1          THE COURT:  And do you have any more information about

2     Bruce Hoffman that you can give me?  Do you know where he works?

3          PROSPECTIVE JUROR:  So I know he's a lawyer and he

4     works for -- I think he's jumped around in jobs.  I don't know

5     him well.  My husband knows him to some extent through work, but

6     I don't know much about it.

7          THE COURT:  All right.  I'll speak to you about that a

8     bit more in a few moments.

9          Anyone else need any identification for those first

10    10 names?  All right.  I'm going to read the second 10 names.

11         FBI Special Agent John Chiappone, C-H-I-A-P-P-O-N-E;

12    Peshwaz Faizulla, F-A-I-Z-U-L-L-A; Matthew Hamilton;

13    Michael Foley; Diane Foley; Radwan Safarjalany,

14    S-A-F-A-R-J-A-L-A-N-I [sic]; Marsha Mueller; Marcos Marginedas,

15    M-A-R-G-I-N-E-D-A-S.

16         Do you or any member of your family, so far as you

17    know, know any of those persons, or have you had any business or

18    social dealings of any kind whatsoever with any of them?  The

19    record will reflect no hands in that regard.

20         Let me read the third group of 10.  Art Sotloff,

21    S-O-T-L-O-F-F; Mohammed Almahmoud, A-L-M-A-H-M-O-U-D [sic];

22    Edward Kassig; Elliott Stempf, S-T-E-M-P-F; Anna Bartle,

23    B-A-R-T-L-E; Nicolas Hénin, H-E-N-I-N; Edouard Elias;

24    Didier Francois, F-R-A-N-C-O-I-S; Frida Saide, S-A-I-D-E; and

25    FBI Special Agent Dan Story.

1           Do you or any member of your family, so far as you

2   know, know any of those individuals, or have you had any

3   business or social dealings of any kind whatsoever with any of

4   them?  All right.  The record will reflect none.

5           And the further group of names, Tyler Treml, T-R-E-M-L;

6   Lea Mulla, M-U-L-L-A; Brian Driscoll; Ian Gallagher; FBI Special

7   Agent Brian Czekala, C-Z-E-K-A-L-A; Robert Johnston;

8   Donna Deweltz, D-E-W-E-L-T-Z; Professor Richard Rhodes; and

9   Daniel Ottosen.

10          Do you or any member of your family, so far as you

11  know, know any of those individuals, or have you had any

12  business or social dealings of any kind whatsoever with any of

13  them? No hands.  All right.

14          Counsel, pick up your earphones, please.  Wait a

15  minute, it's unnecessary.  Well, no, pick up your earphones,

16  please.

17          (BENCH CONFERENCE ON THE RECORD.)

18          THE COURT:  Mr. MacMahon, can you hear me?

19          MR. MACMAHON:  Yes, Your Honor.

20          THE COURT:  Who were the witnesses you gave me in the

21  prior group?

22          MR. MACMAHON:  I have to find them.

23          THE COURT:  Here they are, Mr. MacMahon.  See if I'm

24  correct.  Special Agent Andrew Miller, Special

25  Agent Daniel O'Toole, Douglas Lacey, and Bruce Koenig.

 1              MR. MACMAHON:  Yes.  And they're with a firm called

 2    Bek Tek, LLC.

 3              THE COURT:  All right.  And what does Bek Tek, LLC do?

 4              MR. MACMAHON:  It's -- Ms. Ginsberg has been doing the

 5    work on that, so if I can have her answer.

 6              THE COURT:  Yes, of course.

 7              MS. GINSBERG:  They're a voice analysis company.  They

 8    also have enhanced several of the videos that may be played

 9    today.

10              THE COURT:  So they're experts that you have retained?

11              MS. GINSBERG:  Yes, Your Honor.  It's not clear that

12    any of the people on that list will testify, but we've given it

13    to the Court in an abundance of caution.

14              THE COURT:  All right.  Thank you.  And I take it

15    you've given any expert reports you have in a timely fashion to

16    the government?

17              MS. GINSBERG:  Judge, we don't have any expert reports.

18    It is unlikely that either of those two will testify.  They've

19    been consulting experts.

20              THE COURT:  All right.

21              MS. GINSBERG:  We've told the government that it's

22    extremely unlikely that they will testify.

23              THE COURT:  All right.  Well, we'll cross that bridge

24    when we come to it.  The bridge I'm talking about is the bridge

25    of whether or not they testify as an expert witness.  You're

1    telling me it's extremely unlikely, there are no expert reports.

2    So I'll cross that bridge only if I come to it.

3            MS. GINSBERG:  We understand.

4            THE COURT:  Thank you.

5            (END BENCH CONFERENCE.)

6            THE COURT:  All right.  I have two additional names,

7    maybe four.  Special Agent Andrew Miller, Special

8    Agent Daniel O'Toole, Douglas Lacey, L-A-C-E-Y; and

9    Bruce Koenig, K-O-E-N-I-G.  Do you or any member of your family,

10   so far as you know, know any of those individuals, or have you

11   had any business or social dealings of any kind whatsoever with

12   any of them?  All right.  The record will reflect no hands.

13           Next, ladies and gentlemen, as you will recall when you

14   filled out a questionnaire for the clerk's office, you were

15   asked a number of questions relating to the pandemic and your

16   exposure to people in the pandemic.  And the purpose for that

17   was we have certain rules about who can come in the courthouse

18   and who cannot.

19           And the questions that I want to know whether you would

20   answer them any differently today are the following.  And all of

21   these questions you answered "no" previously, and I want to know

22   whether you would change your answer today to "yes."

23           The first one is, have you been diagnosed with COVID-19

24   or had contact with anyone who has been diagnosed with COVID-19;

25   next, have you been directed to quarantine or isolate; next,

1    have you experienced a fever or chills, persistent cough,

2    shortness of breath, or difficulty breathing, new loss of taste

3    or smell, or other flu-like symptoms.  And the final question

4    is, have you resided with or been in close contact with any

5    person in any of the above-mentioned categories.

6         Now, previously you answered "no" to all of those.  If

7    your answer has changed, I want you to raise your hand and

8    explain.  And the reason for that is, the rule is that if you

9    answer "yes" to any of those, you really can't come in the

10   courthouse without further examination.

11        All right.  The record will reflect no hands are

12   raised.

13        Now, next, ladies and gentlemen, I'm going to -- as a

14   preface to the next questions I'm going to ask, which are

15   Phase 2 of the voir dire, I'm going to read to you from the

16   indictment what the charges are against the defendant in this

17   case.  Now, let me hasten to instruct you that the indictment

18   from which I will read the charges is not evidence or guilt of

19   any kind whatsoever.  It is merely the government's means,

20   formal means, of accusing a defendant of a crime.  But it is not

21   itself proof or evidence of guilt of any kind whatsoever.

22        And I also hasten to instruct you that the defendant

23   has pled not guilty to those charges, and therefore must be

24   presumed by you to be innocent of those charges unless and until

25   the jury find otherwise.

```
 1              All right.  The first charge against the defendant is
 2     the following:  From in and around November 2012 and continuing
 3     to on or about February 7, 2015, Defendant El Shafee Elsheikh
 4     and Defendant Alexanda Amon Kotey, who are specially designated
 5     global terrorists and who will be first brought to and found in
 6     the Eastern District of Virginia, along with Mohammed Emwazi and
 7     others known and unknown to the grand jury, did conspire to
 8     seize, detain, and threaten to kill, injure, and continue to
 9     detain nationals of the United States of America traveling
10     outside the United States, including James Wright Foley, whose
11     death resulted from this offense; Kayla Jean Mueller, whose
12     death resulted from this offense; Steven Joel Sotloff, whose
13     death resulted from this offense; and Peter Edward Kassig, whose
14     death resulted from this offense, each in order to compel a
15     third person and a governmental organization, including but not
16     limited to the United States of America and any part of its
17     government, to pay a monetary ransom for the release of that
18     U.S. national, and to do and abstain from doing any act as an
19     explicit or implicit condition for the release of that person,
20     in violation of Title 18 U.S. Code, Section 1203.
21              So the first charge against the defendant is engaging
22     in a conspiracy to commit hostage-taking resulting in the death
23     of the hostages.
24              The next charge against the defendant is the following:
25     That from in, on, or about November 22nd, 2012, to on or about
```

1    August 19, 2014, the defendants, El Shafee Elsheikh and

2    Alexanda Amon Kotey, who will be first brought to and found in

3    the Eastern District of Virginia, Mohammed Emwazi, and others

4    known and unknown to the grand jury, all aided and abetted by

5    each other did seize, detain, and threaten to kill, injure, and

6    continue to detain James Wright Foley, a national of the

7    United States traveling outside the United States, in order to

8    compel James Wright Foley's parents and a governmental

9    organization, including but not limited to the United States of

10   America and any part of its government, to pay a monetary ransom

11   for the release of James Wright Foley, and to do and abstain

12   from doing any act as an explicit or implicit condition for the

13   release of James Wright Foley.  James Wright Foley's death

14   resulted from the commission of this offense, in violation of

15   Title 18, Sections 1203 and 2.

16           So the second charge against the defendant is

17   hostage-taking resulting in death of James Wright Foley.

18           The third charge against the defendant is the

19   following:  That from on or about August 4, 2013, to on or about

20   February 7, 2015, the defendants, Alexanda Amon Kotey and

21   El Shafee Elsheikh, who will first be brought to and found in

22   the Eastern District of Virginia, Mohammed Emwazi, and others

23   known and unknown to the grand jury, all aided and abetted by

24   each other, did seize, detain, and threaten to kill, injure, and

25   continue to detain Kayla Jean Mueller, a national of the

1    United States of America traveling outside the United States, in

2    order to compel Kayla Jean Mueller's parents and a governmental

3    organization, including but not limited to the United States of

4    America and any part of its government, to pay a monetary ransom

5    for the release of Kayla Jean Mueller, and to do and abstain

6    from doing any act as an explicit or implicit condition for the

7    release of Kayla Jean Mueller.  Kayla Jean Mueller's death

8    resulted from the commission of this offense, in violation of

9    Title 18 U.S. Code, Sections 1203 and 2.

10           So.  In other words, the third charge against the

11   defendant is hostage-taking resulting in death; in this case,

12   the death of Kayla Jean Mueller.

13           The next charge against the defendant is the following:

14   That from on or about August 4, 2013, to on or about

15   September 2nd, 2014, the defendants Alexanda Amon Kotey and

16   El Shafee Elsheikh, who will be first brought to and found in

17   the Eastern District of Virginia, Mohammed Emwazi, and others

18   known and unknown to the grand jury, all aided and abetted by

19   each other, did seize, detain, and threaten to kill, injure, and

20   continue to detain Steven Joel Sotloff, a national of the

21   United States of America traveling outside the United States, in

22   order to compel Steven Joel Sotloff's parents and a governmental

23   organization, including but not limited to the United States of

24   America and any part of its government, to pay a monetary ransom

25   for the release of Steven Joel Sotloff, and to do and abstain

1    from doing any act as an implicit or explicit condition for the

2    release of Steven Joel Sotloff.  Steven Joel Sotloff's death

3    resulted from the commission of this offense, in violation of

4    Title 18 U.S. Code, Sections 1203 and 2.

5              So that's the next charge against the defendant; namely

6    hostage-taking resulting in the death, in this case, of

7    Steven Joel Sotloff.

8              The next charge against the defendant is the following:

9    That from on or about October 2nd, 2013, to on or about

10   November 16, 2014, the defendants, Alexanda Amon Kotey and

11   El Shafee Elsheikh, who will be first brought to and found in

12   the Eastern District of Virginia, Mohammed Emwazi, and others

13   known and unknown to the grand jury, all aided and abetted by

14   each other, did seize, detain, and threaten to kill, injure, and

15   continue to detain Peter Edward Kassig, a national of the

16   United States of America traveling outside the United States, in

17   order to compel Peter Edward Kassig's parents and a governmental

18   organization, including but not limited to the United States of

19   America and any part of its government, to pay a monetary ransom

20   for the release of Peter Edward Kassig, and to do and abstain

21   from doing any act as an explicit or implicit condition for the

22   release of Peter Edward Kassig.  Peter Edward Kassig's death

23   resulted from the commission of this offense, in violation of

24   Title 18 U.S. Code, Sections 1203 and 2.

25             The next charge against the defendant is the following:

1    That from in and around November 2012 and continuing to on or

2    about February 7, 2015, the defendants, Alexanda Amon Kotey and

3    El Shafee Elsheikh, who will be first brought to and found in

4    the Eastern District of Virginia, Mohammed Emwazi, and others

5    known and unknown to the grand jury, did conspire to commit

6    murder, as defined by Title 18 U.S. Code, Section 1111(a), by

7    unlawfully killing James Wright Foley, Kayla Jean Mueller,

8    Steven Joel Sotloff, Peter Edward Kassig, nationals of the

9    United States, while these nationals were outside of the

10   United States, each killing being willful, deliberate,

11   malicious, and premeditated and with malice aforethought, in

12   violation of U.S. Code, Section 2332(b)(2).

13          In other words, this defendant is charged with engaging

14   in a conspiracy to murder United States citizens outside of the

15   United States, in violation of 18 U.S.C. 2332(b)(2).  And I

16   mentioned the names already, James Wright Foley,

17   Kayla Jean Mueller, Steven Joel Sotloff, Peter Edward Kassig.

18          The next charge against the defendant is the following:

19   That from in and around November 2012 and continuing to on or

20   about February 7, 2015, the defendants, Alexanda Amon Kotey and

21   El Shafee Elsheikh, who will first be brought to and found in

22   the Eastern District of Virginia, and Mohammed Emwazi, and

23   others known and unknown to the grand jury, did conspire to

24   provide material support or resources, as that term is defined

25   by Title 18 U.S. Code, Section 2339(a), namely personnel,

```
 1    including themselves, and services, knowing and intending that

 2    they were to be used in preparation for and in carrying out a

 3    violation of Title 18 U.S. Code, Section 1203, hostage-taking,

 4    and Title 18 U.S. Code, Section 2332(a), murder.

 5           And the deaths of James Wright Foley,

 6    Kayla Jean Mueller, Steven Joel Sotloff, Peter Edward Kassig,

 7    each a citizen of the United States, as well as the deaths of

 8    British and Japanese nationals resulted from the commission of

 9    this offense, in violation of Title 18 U.S. Code 2339(a).

10           So that's the seventh charge against the defendant,

11    namely a conspiracy to provide material support or resources to

12    terrorists, hostage-taking, and murder resulting in the death of

13    the persons I named.

14           The last charge against the defendant is the following:

15    That from in or about 2012 and continuing thereafter, up to and

16    including in or about January 2018, in offenses committed

17    outside of the jurisdiction of any particular state or district

18    of the United States, the defendants, Alexanda Amon Kotey and

19    El Shafee Elsheikh, who will be first brought to and found in

20    the Eastern District of Virginia, Mohammed Emwazi, and others

21    known and unknown, did conspire to provide material support or

22    resources, as that term is defined in Title 18 U.S. Code,

23    Section 2339(a), namely personnel, including themselves, and

24    services to a Foreign Terrorist Organization, namely ISIS, which

25    at all relevant times was designated by the United States
```

1   Secretary of State as a Foreign Terrorist Organization pursuant

2   to Section 219 of the Immigration and Naturalization Act,

3   knowing that ISIS was a designated Foreign Terrorist

4   Organization, that ISIS engages and has engaged in terrorist

5   activity, and that ISIS engages and has engaged in terrorism.

6        The deaths of James Wright Foley, Kayla Jean Mueller,

7   Steven Joel Sotloff, Peter Edward Kassig, each a citizen of the

8   United States, as well as the deaths of British and Japanese

9   nationals, resulted from the commission of this offense, all in

10  violation of Title 18 U.S. Code, Section 2339(b).

11       Those are the eight charges against this defendant in

12  the indictment.  Let me reiterate that the indictment is not

13  itself proof or evidence of guilt, it is merely the government's

14  means of formally accusing a defendant of a crime.  And as I

15  said also earlier, the defendant has pled not guilty to these

16  offenses, and therefore must be presumed by you to be innocent

17  of those charges unless and until the jury find otherwise.

18       Now, with that in mind, ladies and gentlemen, I'm going

19  to ask you a series of questions, and this time you won't give

20  your answers from where you're sitting or standing, but I'll

21  have you come forward one at a time.  The court security

22  officers will have you come forward one at a time and give your

23  answers up here from the witness stand in the relative privacy

24  of bench and counsel, because we'll be using earphones and

25  you'll have earphones on too.  This is done to preserve your

1     privacy - that is, to preserve the confidentiality of

2     information that you may have to provide - and also to avoid

3     having any information that may disable you from serving as a

4     juror from also disabling others.

5          All right.  The first group -- and I ask them in a

6     series of three or more so that it won't be evident which you

7     have an affirmative answer to.  If your answer is "no," you need

8     not come forward.

9          Have you seen or read or heard or know anything at all

10    about this case from any source whatever, from the news media,

11    from the internet, or from any source.

12         Next question:  Were you or any member of your family,

13    so far as you know, acquainted with or know any of the victims

14    in this case, namely James Foley, Kayla Mueller, Steven Sotloff,

15    or Peter Kassig.

16         Third question, do you or any members of your family

17    currently reside in Iraq or Syria.

18         If you have affirmative answers to any of those

19    questions, I want you to come forward.  Does anyone have an

20    affirmative answer to any of those?  Yes, come forward, please.

21         (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

22         THE COURT:  All right, sir.  Can you hear me?

23         PROSPECTIVE JUROR:  Yes, I can.

24         THE COURT:  May I have your name, please, sir.

25         PROSPECTIVE JUROR:  Alfred John Keyser.

```
 1                    THE COURT:  Is that with a K?

 2                    PROSPECTIVE JUROR:  Yes, it is.

 3                    THE COURT:  All right.  Mr. Keyser, which question do

 4      you have an affirmative answer to?

 5                    PROSPECTIVE JUROR:  It was the question regarding had

 6      we read about or heard about the case.

 7                    THE COURT:  And have you?

 8                    PROSPECTIVE JUROR:  Yes, I have.

 9                    THE COURT:  From where or what source?

10                    PROSPECTIVE JUROR:  The newspaper and internet.

11                    THE COURT:  All right.  And have you formed any

12      opinions about what you've heard?

13                    PROSPECTIVE JUROR:  None.  Just the facts of the case,

14      and, you know, I have no idea who did it.  I didn't follow it up

15      to this point.  It was in the news at the time.

16                    THE COURT:  Now, do you understand, sir, that this case

17      must be decided on the basis of the evidence presented and the

18      Court's instructions on the law; that is, on the basis of the

19      evidence presented in this courtroom in this trial?  Do you

20      understand that?

21                    PROSPECTIVE JUROR:  Yes, sir.

22                    THE COURT:  And do you understand that everything you

23      may have seen or read or heard about the case in the media is

24      not evidence in this case, and must not be considered?  Do you

25      understand that?
```

1              PROSPECTIVE JUROR:  Yes, sir.

2              THE COURT:  Do you feel you can put to one side

3    everything you've read or seen or heard about this case, and

4    decide this case fairly and impartially based only on the

5    evidence and the Court's instructions on the law?

6              PROSPECTIVE JUROR:  I do.

7              THE COURT:  Do you have anything else you want to tell

8    me about what you saw --

9              PROSPECTIVE JUROR:  No, sir.

10             THE COURT:  -- or read about this case?

11             PROSPECTIVE JUROR:  No.  It was prominent in the media

12   at the time, so I don't have any other feelings about it.

13             THE COURT:  Do you understand clearly that anything you

14   saw is not evidence in the case, and must be disregarded?

15             PROSPECTIVE JUROR:  Yes, sir, I do.

16             THE COURT:  Are you able to do that.

17             PROSPECTIVE JUROR:  Yes, I am.

18             THE COURT:  And are you able then to decide this case

19   fairly and impartially based only on the evidence and the

20   Court's instructions?

21             PROSPECTIVE JUROR:  Yes, I am.

22             THE COURT:  Thank you, Mr. Keyser.  You may return to

23   your seat.

24             PROSPECTIVE JUROR:  You're welcome, sir.

25             THE COURT:  Can you hear me, sir?

1     PROSPECTIVE JUROR:  Yes, I can.

2     THE COURT:  May I have your name?

3     PROSPECTIVE JUROR:  Laurence Bourne.

4     THE COURT:  Which questions do you have an affirmative

5 answer to?

6     PROSPECTIVE JUROR:  I've heard press reports about the

7 Foley case and the Mueller case, and possibly the Sotloff.

8     THE COURT:  When you say "press reports," you mean on

9 the radio or TV?

10     PROSPECTIVE JUROR:  Correct.  And maybe newspapers from

11 several years ago.

12     THE COURT:  All right.  Do you understand that this

13 case must be decided on the basis of the evidence presented

14 here?

15     PROSPECTIVE JUROR:  Yes, I do.

16     THE COURT:  And anything you may have seen or read or

17 heard in the press or TV or anything else, that's not evidence,

18 and may not, cannot be considered.  Do you understand that?

19     PROSPECTIVE JUROR:  Yes, sir, I do.

20     THE COURT:  Do you feel you can put to one side

21 everything you heard or saw about this case, and not consider it

22 when you decide whether the government has proved its case

23 beyond a reasonable doubt?

24     PROSPECTIVE JUROR:  Yes, I do.

25     THE COURT:  Now, you're an attorney?

1          PROSPECTIVE JUROR:  Yes, I am.  Retired.

2          THE COURT:  Oh, I see.  That's what that means.  And

3    what was the nature of your practice before you retired?

4          PROSPECTIVE JUROR:  I was an appellate litigator for

5    the Federal Communications Commission.

6          THE COURT:  I see.  Have you had any special training

7    in criminal law?

8          PROSPECTIVE JUROR:  No, I have not.

9          THE COURT:  Have you ever represented a defendant in a

10   criminal case?

11         PROSPECTIVE JUROR:  In private practice as a very young

12   attorney, I had a pro bono case.

13         THE COURT:  And that must have been a year or two ago?

14   All right, sir.  So at this time you're retired, you're not in

15   the law at all?

16         PROSPECTIVE JUROR:  No, I'm not.

17         THE COURT:  Do you feel that there's anything about

18   your legal training that would prevent or hinder you in any way

19   from rendering a fair and an impartial verdict in this case

20   based only on the evidence and the Court's instructions on the

21   law?

22         PROSPECTIVE JUROR:  I do not.

23         THE COURT:  Now, you've told me that you did see or

24   hear things in the past about this case, or aspects of this

25   case.  I want to be very clear that you understand that

1    everything you saw and heard is not evidence in this case, and

2    may not be considered in this case.

3              PROSPECTIVE JUROR:  Yes, sir, I understand that.

4              THE COURT:  And do you feel you can put to one side

5    everything that you saw or heard about this case, and decide it

6    solely on the basis of the evidence you see and hear presented

7    in the courtroom and the Court's instructions on the law?

8              PROSPECTIVE JUROR:  Yes, sir, I can.

9              THE COURT:  And do you believe you can be fair and

10   impartial in that exercise?

11             PROSPECTIVE JUROR:  I do.

12             THE COURT:  Thank you.  You may return to your seat.

13             Can you hear me?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  May I have your name, please?

16             PROSPECTIVE JUROR:  Deanna Rohrig-Bunn.

17             THE COURT:  All right.  I'm sorry, give me your last

18   name again.

19             PROSPECTIVE JUROR:  Rohrig-Bunn.

20             THE COURT:  Yes, Ms. Rohrig-Bunn, tell me which

21   question you have an answer to.

22             PROSPECTIVE JUROR:  The first one.

23             THE COURT:  Yes, ma'am.

24             PROSPECTIVE JUROR:  I feel like I've heard that name or

25   seen it in the paper.  Not recently, but I do seem to remember

1    something about it.

2         THE COURT:  Which name are you referring to?

3         PROSPECTIVE JUROR:  The defendant's name.

4         THE COURT:  Do you know what it is you saw?

5         PROSPECTIVE JUROR:  I don't, sir.  It just seems to

6    click something in my memory, that's all.

7         THE COURT:  Well, I want to be sure that you understand

8    an important legal principle; that anything you may have seen or

9    read or heard about this case is not evidence in this case.  The

10   only thing that's evidence in this case is what you see and hear

11   presented in this trial and this courtroom.  Do you understand

12   that?

13        PROSPECTIVE JUROR:  Yes, sir.

14        THE COURT:  So I want to ask whether you can put to one

15   side everything that you may have seen or read or heard about

16   this case, and judge this case fairly and impartially based only

17   on the evidence presented here and the Court's instructions on

18   the law.

19        PROSPECTIVE JUROR:  Yes, sir.

20        THE COURT:  All right.  So you believe you can be a

21   fair and an impartial juror?

22        PROSPECTIVE JUROR:  Yes, sir.

23        THE COURT:  I'm sorry, if you could give me, once more,

24   your last name.

25        PROSPECTIVE JUROR:  Rohrig-Bunn, R-O-H-R-I-G, B-U-N-N.

1           THE COURT:  Yes, I see it now.  You're a budget

2    analyst?

3           PROSPECTIVE JUROR:  Yes, for Northrop Grumman.

4           THE COURT:  Thank you, Ms. Rohrig-Bunn.  You may return

5    to your seat.

6           (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

7           THE COURT:  I'm going to go on to the second group of

8    three questions.  There may be four.  I want to know, have you

9    or any member of your family so far as you know, had any

10   business or social dealings or contacts with ISIS, or with any

11   member of ISIS.

12          Next, have you or any member of your family, so far as

13   you know, had any contacts or been involved in any way with the

14   Syrian Defense Force, or the Kurds.

15          Have you or any member of your family, so far as you

16   know, been involved in any way with a terrorist, or any

17   designated Foreign Terrorist Organization.

18          And finally, have you or any member of your family ever

19   been kidnapped or held hostage by anyone for ransom or for any

20   other reason.

21          If you have an affirmative answer to any of those

22   questions, raise your hand and I'll have you come forward one at

23   a time.  One hand over here.

24          (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

25          THE COURT:  Yes, ma'am.  Can you hear me?

1          PROSPECTIVE JUROR:  Yes.  Yes, I can, sir.  My name

2     Yordanka Stefanova.

3          THE COURT:  Ms. Stefanova, which question do you have

4     an affirmative answer to?

5          PROSPECTIVE JUROR:  I believe it was the last one,

6     where you asked if we have any dealings with ISIS.  I don't have

7     any dealings with, but we do investigate counterterrorism crises

8     and cases on a daily basis.  So in my department manager job

9     role, I investigate such cases pretty much on a daily basis by

10    providing foreign language support to all the counterterrorism

11    cases that are under my purview.

12         THE COURT:  And for whom do you work?

13         PROSPECTIVE JUROR:  I work for the language services

14    department of the FBI.

15         THE COURT:  I see.  You may remove your earphones for a

16    moment.

17         Counsel, Mr. Fitzpatrick, any further questions you

18    think I should ask this person?

19         MR. FITZPATRICK:  No further questions, Your Honor.

20         THE COURT:  What's your view on whether she should be

21    stricken?

22         MR. FITZPATRICK:  We agree she can be stricken,

23    Your Honor.

24         THE COURT:  Any objection, Mr. MacMahon?

25         MR. MACMAHON:  No objection, Your Honor.  Thank you.

1          THE COURT:  All right.  She is stricken.

2          Thank you.  You may step down.

3          May I have your name, please.

4          PROSPECTIVE JUROR:  My name is Paul Wolfgramm.

5          THE COURT:  All right, sir.  And Mr. Wolfgramm, which

6    questions do you have an affirmative answer to?

7          PROSPECTIVE JUROR:  I suppose the first one relating to

8    ISIS.  I wanted to disclose that while attending William & Mary

9    law school, while a writer on their Constitutional Law Journal,

10   I published a note on a counterterrorism technology.  And in my

11   current work for Lockheed Martin Corporation, I support a

12   variety of programs, some of which are Department of Defense and

13   Homeland Security programs.

14         So I don't have any direct affiliations or knowledge of

15   any members of ISIS or the Syrian resistance movement, but I did

16   want to disclose that I have some, you know, work with, you

17   know, in the counterterrorism fields, just in those capacities.

18         THE COURT:  What's the title of the article you wrote?

19         PROSPECTIVE JUROR:  "Power and Responsibility" -- it

20   was on advanced scanning technologies.  I'm embarrassed, I don't

21   recall the exact title.

22         THE COURT:  When you say scanning technologies, is your

23   area of expertise electronics, IT work?

24         PROSPECTIVE JUROR:  I'm currently -- I negotiate

25   nondisclosure agreements for Lockheed Martin Corporation.  In

1    the note, it was on a laser scanning technology that could be

2    installed in airports to detect explosives, among other

3    contraband.

4            THE COURT:  All right.  And tell me again what your

5    current duties are.

6            PROSPECTIVE JUROR:  I work for Lockheed Martin

7    Corporation in the legal department.  I negotiate nondisclosure

8    agreements, primarily with private companies, other defense

9    contracting contractors and subcontractors, and occasionally

10   advise on our -- advise our team members who do have

11   communications with the government consumer, you know, perhaps

12   in the DoD or the Department of Homeland Security.

13           THE COURT:  All right.  And am I correct that on the

14   precise question I asked, whether you knew or had any business

15   or social dealings with any members of ISIS or ISIS in any

16   capacity, your answer would be "no"?

17           PROSPECTIVE JUROR:  Correct.  No.

18           THE COURT:  Now, tell me this.  Are you a member of the

19   bar?

20           PROSPECTIVE JUROR:  I am not, no.

21           THE COURT:  So you're not currently practicing?  Law.

22           PROSPECTIVE JUROR:  Correct.  I work as nonattorney

23   staff.

24           THE COURT:  And have you ever practiced law in the

25   criminal area?

 1              PROSPECTIVE JUROR:  No, sir.

 2              THE COURT:  All right.  You may remove your earphones

 3      for just a moment, please.

 4              Mr. Fitzpatrick, Mr. MacMahon, do you have anything

 5      further?  First, Mr. Fitzpatrick, do you want any more questions

 6      asked of this person?

 7              MR. FITZPATRICK:  No, Your Honor.

 8              THE COURT:  Mr. MacMahon?

 9              MR. MACMAHON:  No, Your Honor.

10              THE COURT:  All right.  Put it back on, please, sir.

11              Mr. Wolfgramm, you've heard now what this case is

12      generally about because you've heard the charges from the

13      indictment, which is not proof or evidence of guilt of any kind,

14      but it does give you a sense of what the government has to show

15      in this case.  Do you feel that you can sit and pay careful

16      attention to the evidence and render a fair and an impartial

17      verdict based only on the evidence and the Court's instructions

18      on the law?

19              PROSPECTIVE JUROR:  Yes, sir.

20              THE COURT:  All right.  Thank you, sir.  You may return

21      to your seat.

22              Can you hear me?

23              PROSPECTIVE JUROR:  Yes, sir.

24              THE COURT:  May I have your name, please, sir.

25              PROSPECTIVE JUROR:  Stephan Brown.

148

 1            THE COURT:  Tell me which questions you have an answer

 2    to.

 3            PROSPECTIVE JUROR:  Family contact with ISIS and the

 4    Syrian Defense Forces.

 5            THE COURT:  All right.  Tell me about that.

 6            PROSPECTIVE JUROR:  My father is an Air Force commander

 7    in Western Iraq, and I believe in either 2019 or 2020, handled

 8    combat operations against ISIS.  And also detainee exchanges, I

 9    believe.

10            THE COURT:  And this was your father?

11            PROSPECTIVE JUROR:  Yes, sir.

12            THE COURT:  And am I correct that he was an aviator, or

13    a pilot, as we would call them in the Navy?

14            PROSPECTIVE JUROR:  No, sir.  He was a squadron

15    commander for airfield operations.

16            THE COURT:  Oh, I see.  He was not the pilot, then?

17            PROSPECTIVE JUROR:  No, I believe he commanded the

18    entire Air Force side of the base.

19            THE COURT:  And what did he do with respect to ISIS?

20            PROSPECTIVE JUROR:  So I believe he facilitated a

21    prisoner exchange of basically captured ISIS personnel to either

22    the Turks or the Kurds, and he also handled basically outgoing

23    air strikes against ISIS positions in Western Iraq.

24            THE COURT:  And what if any relationship did he have

25    with the Kurds?

1        PROSPECTIVE JUROR:  I am not clear.  I believe any

2    relationship he had would have been official only.

3        THE COURT:  All right.  Do you feel that having a

4    father who is so employed -- during what period of time?

5        PROSPECTIVE JUROR:  I believe this was 2019 or 2020.

6        THE COURT:  During that period of time, would that

7    prevent or hinder you in any way from rendering a fair and an

8    impartial verdict in this case based only on the evidence and

9    the Court's instructions on the law?

10       PROSPECTIVE JUROR:  No, sir.

11       THE COURT:  Do you have answers to any of the other

12   questions the Court put to you?

13       PROSPECTIVE JUROR:  No, sir.

14       THE COURT:  Would you remove your earphones for a

15   moment, please?

16       PROSPECTIVE JUROR:  Yes, sir.

17       THE COURT:  Do you have any further questions,

18   Mr. Fitzpatrick, that you suggest I ask this person, who appears

19   to be a military analyst with the CIA?

20       MR. FITZPATRICK:  Well, I suppose the appropriate

21   question would be, has he worked on military operations in

22   Northern Syria as part of his job responsibilities.

23       THE COURT:  All right.  I'll ask that.

24       Mr. MacMahon, do you have information you would like to

25   have?

 1             MR. MACMAHON:  Your Honor, I would like to know if he

 2     got any information from his father about the details of any of

 3     these prisoner exchanges, especially with respect to

 4     Mr. Elsheikh.  Because even in the timeframe he's talking about,

 5     we're very close to the timeframe where the exchange was made

 6     where Mr. Elsheikh was sent to America from Kurdish custody.

 7             THE COURT:  All right.  I think I will ask both of

 8     those.  But I'm thinking more about this, and it seems to me

 9     that -- is there an agreement among the parties --

10             MR. MACMAHON:  I think there is an agreement that this

11     juror can be excused, Your Honor.  I don't want to speak for

12     Mr. Fitzpatrick.

13             MR. FITZPATRICK:  We agree, Your Honor.

14             THE COURT:  All right.

15             Thank you, sir.  You may return to your seat.

16             I think that's a sensible agreement.

17             (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

18             THE COURT:  That completes that group.  Let me go on to

19     the next group of questions.  Have you or any member of your

20     family worked for a charitable aid organization or media

21     organization in Iraq or Syria between 2012 and 2019?

22             Have you or any member of your family served in the

23     United States Armed Forces, or with any governmental agency in

24     Iraq or Syria, between 2012 and 2019?

25             And finally, do you have the ability to speak or

1    understand the Arabic or Kurdish languages.

2            If you have affirmative answers to those, come forward,

3    please.

4            COURT SECURITY OFFICER:  None, Your Honor.

5            THE COURT:  Next group of questions.  The defendant in

6    this case is an adherent of the Muslim faith.  Is there anything

7    about that fact which would prevent or hinder you in any way

8    from serving as a fair and an impartial juror in this case, and

9    reaching a fair and an impartial verdict based only on the

10   evidence presented and the Court's instructions on the law?

11           The next question is, this trial may last three and

12   perhaps as many as four weeks, no greater than that.  But three

13   or four weeks.  And I want to know whether there's anything

14   which would prevent or hinder you from serving as a juror for

15   that length of time.  That is, could you sit and pay careful and

16   close attention to the evidence as it's presented, and render a

17   fair and impartial verdict based on the evidence and the Court's

18   instructions on the law, given that it's a three to four-week

19   trial?

20           All right.  Come forward if you have answers to that.

21           (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

22           THE COURT:  Can you hear me, sir?

23           PROSPECTIVE JUROR:  Yes, I can.

24           THE COURT:  May I have your name, please?

25           PROSPECTIVE JUROR:  Laurence Bourne.

```
 1              THE COURT:  Mr. Bourne, which question do you have an
 2    answer to?
 3              PROSPECTIVE JUROR:  It's the second one.  I have
 4    nonrefundable plane tickets on April 23rd and April 30th.  I
 5    don't know how important that is, but --
 6              THE COURT:  It is important.  It's appropriate for you
 7    to bring that to my attention.  Where do these tickets go to?
 8              PROSPECTIVE JUROR:  Dallas and back.  And then May 15th
 9    I'm going to Los Angeles to visit my kids.
10              THE COURT:  All right.  Why are you going to Dallas?
11              PROSPECTIVE JUROR:  Visiting family.
12              THE COURT:  Now, these are nonrefundable?
13              PROSPECTIVE JUROR:  Correct.
14              THE COURT:  All right.  Remove your earphones for a
15    moment, please.
16              Mr. Fitzpatrick, do you have any more information you
17    think I should have this person divulge?
18              MR. FITZPATRICK:  No, Your Honor.  We would have no
19    objection to striking this juror.
20              THE COURT:  Mr. MacMahon?
21              MR. MACMAHON:  Same, Your Honor.
22              THE COURT:  All right.  I'll strike him.
23              Thank you.  You may return to your seat.  Next.
24              Can you hear me, sir?
25              PROSPECTIVE JUROR:  (No verbal response.)
```

153

1           THE COURT:  May I have your name, please?

2           PROSPECTIVE JUROR:  Jose Feliciano-Ruiz.

3           THE COURT:  I see your name.  Spell your last name,

4    please.  It's not on my list.

5           PROSPECTIVE JUROR:  Ruiz, R-U-I-Z.

6           THE COURT:  That's what's not on my list.  Which

7    question do you have an answer to?

8           PROSPECTIVE JUROR:  It's about the length of the trial.

9           THE COURT:  Yes, sir.

10          PROSPECTIVE JUROR:  I just start a new job, and I'm

11   afraid if I'm gone for that long, they'll -- I'll be replaced.

12   I won't be able to go back to it.

13          THE COURT:  Who is the employer?

14          PROSPECTIVE JUROR:  Amazon.

15          THE COURT:  And what do you do for them?

16          PROSPECTIVE JUROR:  Corporate receptionist.

17          THE COURT:  And how long have you had the job?

18          PROSPECTIVE JUROR:  A month.

19          THE COURT:  All right.  Would you remove your earphones

20   for a moment, please.

21          Mr. Fitzpatrick, what additional information would you

22   like to have?  It seems to me this is an entry level person who

23   has got a job, he's only had it for a short amount of time, and

24   he's concerned that if he serves on this jury, he won't have a

25   job.  I think his concern is valid, but I can ask him further

```
 1    questions.

 2              MR. FITZPATRICK:  No, I agree, Your Honor.  No

 3    objection if the juror is struck.

 4              THE COURT:  Mr. MacMahon?

 5              MR. MACMAHON:  No objection if the juror is struck,

 6    Your Honor.

 7              THE COURT:  All right.  He is stricken.

 8              You may step down, sir.  Thank you.

 9              Can you hear me, sir?

10              PROSPECTIVE JUROR:  Yes, I can hear you.

11              THE COURT:  May I have your name, please, sir.

12              PROSPECTIVE JUROR:  Oscar Novo.

13              THE COURT:  Spell your last name.

14              PROSPECTIVE JUROR:  N-O-V-O.

15              THE COURT:  Yes, Mr. Novo, you're an art instructor.

16    Is that right?

17              PROSPECTIVE JUROR:  Correct.

18              THE COURT:  Tell me which question you have an answer

19    to.

20              PROSPECTIVE JUROR:  Well, the issue is the question

21    about the three to four weeks.

22              THE COURT:  Yes.

23              PROSPECTIVE JUROR:  I have two part-time jobs, I don't

24    have a full-time job.  So in one of them as an art teacher, I'm

25    part-time employed as a contractor so I don't get paid during
```

1    the jury duty.  So it's just too long for me to afford not to be

2    able to work in those two jobs.  Neither of the two is full

3    time, so...

4              THE COURT:  All right.  Remove your earphones for a

5    moment.

6              PROSPECTIVE JUROR:  Sure.

7              THE COURT:  Mr. Fitzpatrick, any additional information

8    you need?

9              MR. FITZPATRICK:  No, Your Honor.  No objection if the

10   juror is struck.

11             THE COURT:  Mr. MacMahon?

12             MR. MACMAHON:  No objection as well, Your Honor.  Thank

13   you.

14             THE COURT:  He's stricken.

15             You may return to your seat.

16             What number was he?

17             MR. MACMAHON:  28, Your Honor.

18             THE COURT:  Thank you.

19             Can you hear me?

20             PROSPECTIVE JUROR:  Yes, sir.

21             THE COURT:  What is your name, please?

22             PROSPECTIVE JUROR:  Deanna Rohrig-Bunn.

23             THE COURT:  Yes, Ms. Rohrig-Bunn.  Do you prefer both

24   names?

25             PROSPECTIVE JUROR:  That's fine.

```
 1              THE COURT:  Which question do you have an answer to?
 2              PROSPECTIVE JUROR:  The first one, for the length of
 3      service.
 4              THE COURT:  Yes.
 5              PROSPECTIVE JUROR:  My mother-in-law was diagnosed with
 6      pancreatic cancer on Friday, and we find out tomorrow about her
 7      surgery and her care afterwards.  And they're looking to
 8      schedule something sooner rather than later.
 9              THE COURT:  Yes, I understand entirely.  Pancreatic
10      cancer requires prompt treatment.  And so this is your mother?
11              PROSPECTIVE JUROR:  My mother-in-law.
12              THE COURT:  Remove your earphones for a moment, please.
13              Mr. Fitzpatrick, any objection to striking this person?
14              MR. FITZPATRICK:  No, Your Honor.
15              THE COURT:  Mr. MacMahon?
16              MR. MACMAHON:  No, Your Honor.
17              THE COURT:  All right.  She is number...
18              MR. MACMAHON:  33.
19              THE COURT:  33.  And she is stricken.
20              Thank you.  You may return to your seat.
21              Can you hear me?
22              PROSPECTIVE JUROR:  Yes.
23              THE COURT:  May I have your name?
24              PROSPECTIVE JUROR:  Esthar Zangeneh.  I think I was the
25      last one on the list.
```

```
1              THE COURT:  Yes, you were.  Zangeneh.  Is that right?
2              PROSPECTIVE JUROR:  Yes.
3              THE COURT:  All right.  And you're a software test
4     engineer?
5              PROSPECTIVE JUROR:  Yes, correct.
6              THE COURT:  Tell me which question you have an answer
7     to.
8              PROSPECTIVE JUROR:  So I am going out of country on
9     May 13th, and since you said that the trial might take three to
10    four weeks, I just wanted to bring that up to you.
11             THE COURT:  May I ask where you're going?
12             PROSPECTIVE JUROR:  Yes, I'm going to Cancun, Mexico.
13             THE COURT:  So this is a vacation?
14             PROSPECTIVE JUROR:  Yes.
15             THE COURT:  Perfectly understandable.  You may not be
16    selected as a juror.  If you are, I think it may be done by the
17    13th of May, because I need to be elsewhere on the 13th of May.
18             PROSPECTIVE JUROR:  Okay.
19             THE COURT:  But you may not be selected.
20             PROSPECTIVE JUROR:  Okay.  Thank you.
21             THE COURT:  And I imagine I could be replaced.  We can
22    all be replaced.  Nobody is essential.  Thank you.  But
23    otherwise, if this lasts three weeks, until about the 1st of
24    May, I assume you can sit and pay careful and close attention to
25    the evidence, and render a fair and an impartial verdict based
```

1    only on the evidence and the Court's instructions on the law?

2              PROSPECTIVE JUROR:  Yes, sir.

3              THE COURT:  All right.  Thank you.  You may return to

4    your seat.

5              Can you hear me?

6              PROSPECTIVE JUROR:  Yes, sir.

7              THE COURT:  May I have your name, please?

8              PROSPECTIVE JUROR:  My name is Hayleigh Royston-Lee.

9              THE COURT:  Yes, let me find it.  One moment.

10   Ms. Royston-Lee, you're a registered nurse?

11             PROSPECTIVE JUROR:  I am, sir.  ICU.

12             THE COURT:  Do you have a specialty?  You say the

13   intensive care unit?

14             PROSPECTIVE JUROR:  Uh-huh.

15             THE COURT:  And which question do you have an answer

16   to?

17             PROSPECTIVE JUROR:  For your question of the duration,

18   three to four weeks, I will be out of the country from

19   April 20th until May 4th, on a vacation.

20             THE COURT:  Have you already made the reservations?

21             PROSPECTIVE JUROR:  Yes, sir, I have.

22             THE COURT:  And paid for the tickets?

23             PROSPECTIVE JUROR:  Yes, sir.

24             THE COURT:  Where are you headed?

25             PROSPECTIVE JUROR:  I'm going to an ice cold island

 1    called the Faroe Islands.

 2            THE COURT:  I know where the Faroe Islands are.  They

 3    belonged to Denmark.

 4            PROSPECTIVE JUROR:  Yes.

 5            THE COURT:  Yes, all right.  Remove your earphones,

 6    please.

 7            Mr. Fitzpatrick, do you have any reason I shouldn't

 8    excuse this person?

 9            MR. FITZPATRICK:  That's fine with the government,

10    Your Honor.  No objection.

11            THE COURT:  How about Mr. MacMahon?

12            MR. MACMAHON:  No, Your Honor.

13            THE COURT:  To what?

14            MR. MACMAHON:  Oh, no -- sorry.  Your question was if I

15    had any reasons to object, and I said, "No, Your Honor," meaning

16    no objection.

17            THE COURT:  Thank you, Mr. MacMahon.  Brings back

18    memories.  The Faroe Islands was the first question put to me by

19    a panel of three ambassadors in my foreign service entrance

20    examination.  And I knew the answer.  I didn't know the answer

21    to many of the other questions.

22            Thank you.  You may step down.

23            Actually, the question was, I was given a situation,

24    and they were speaking Danish and they were on a ship, and they

25    gave me the heading of the ship and they wanted to know where

1        the ship was going and why.  And I told them it was going to the

2        Faroe Islands, because that was owned by the Danes and the

3        language was Danish.  I got lucky.

4                Can you hear me?

5                PROSPECTIVE JUROR:  Yes.

6                THE COURT:  What is your name, please?

7                PROSPECTIVE JUROR:  It's Jean Counts.

8                THE COURT:  Yes.  It says you're in education with the

9        Fairfax County public schools.  Do you teach?

10               PROSPECTIVE JUROR:  I do.

11               THE COURT:  What do you teach?

12               PROSPECTIVE JUROR:  I teach government, ironically.

13               THE COURT:  Why is that ironic?  I think that's

14       wonderful.

15               PROSPECTIVE JUROR:  It is.  Being here is very fitting

16       to my job.

17               THE COURT:  I quite agree with you.  I quite agree.

18       It's an experience, and if you have it, it gives you an

19       experience that you can use to impart to your students.

20               PROSPECTIVE JUROR:  Absolutely.

21               THE COURT:  Which question do you have an answer to?

22               PROSPECTIVE JUROR:  I guess my question was, the three

23       to four-week timeframe that you set, is it soon?  I ask

24       because --

25               THE COURT:  Is it soon?  It's starting now.

1          PROSPECTIVE JUROR:  Oh, God.  Because I also coach at

2    my high school, and we travel next week for six days.  So I

3    didn't know if that was something -- I'm taking 25 kids off to

4    Florida, so I didn't know if that was something that would get

5    in the way.

6          THE COURT:  Yes, it would.  Because the trial starts

7    now.  This is part of the trial.  We'll be hearing evidence

8    tomorrow, and it goes for three weeks, at a minimum.  So it

9    would interrupt that.  What sport do you coach?

10         PROSPECTIVE JUROR:  I coach lacrosse.

11         THE COURT:  I see.  Well, I assume there are others who

12   can substitute for you if you're selected?  You may not be

13   selected, but if you are, can you make arrangements for someone

14   else to take your duties?

15         PROSPECTIVE JUROR:  Possibly.  I'm the head coach.

16   This is the problem.  I'm the person in charge, through the

17   school and through the county's eyes, through the risk

18   management and everything.  There's one other coach coming, but

19   she has a small child, so I'm not sure how much she can take

20   over with 23 kids.

21         THE COURT:  Yes.  Remove your earphones for a moment,

22   if you would, please.

23         Mr. Fitzpatrick, I can understand if there are a number

24   of coaches.  She's the head coach for a high school team.

25         MR. FITZPATRICK:  We agree, Your Honor.

1          THE COURT:  Mr. MacMahon?

2          MR. MACMAHON:  I'm very sympathetic to lacrosse

3    coaches, so I agree as well.

4          THE COURT:  I met a college lacrosse coach once, and I

5    came away from that meeting very grateful that I never played

6    college lacrosse.  He now coaches for the University of Denver.

7    You know who I'm talking about?

8          MR. MACMAHON:  Coach Tierney.

9          THE COURT:  Yes, I am.  He is one tough customer.

10         MR. MACMAHON:  I know him well, Your Honor.

11         THE COURT:  Did you play for him?

12         MR. MACMAHON:  No, no.  But I played in club games and

13   summer games where he was coaching, and he was a tough man.

14         THE COURT:  Very tough man.  Well, I see that the

15   parties are not in disagreement.  I can excuse this person?

16         MR. MACMAHON:  Yes, Your Honor.

17         MR. FITZPATRICK:  Yes.

18         THE COURT:  Thank you.  You may return to your seat.

19         (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

20         THE COURT:  I have one final overarching question.  I

21   think it's already been addressed, but I want to give you an

22   opportunity if you didn't.  You've now heard, from my summary of

23   portions of the indictment, what this case is about, you know

24   how long it will take.  I want to know whether there's any

25   reason why any of you couldn't sit and pay careful and close

1   attention to the evidence as it is presented, and then render a

2   fair and an impartial verdict based only on the evidence

3   presented and the Court's instructions on the law.

4          Now, if you've already been up here and told me what it

5   is that you need to tell me, you don't need to do it again.

6   You've done it once.  Anyone want to come back up here?  I'm not

7   surprised to see that there isn't -- oh, there's a very bold

8   gentleman.

9          (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

10         THE COURT:  All right.  Can you hear me?

11         PROSPECTIVE JUROR:  Yes, I can hear you, sir.

12         THE COURT:  What is your name?

13         PROSPECTIVE JUROR:  My name is Jimmy Edwards.

14         THE COURT:  Just a moment.  Let me find your name.

15   Mr. Edwards.  You're a software engineer?

16         PROSPECTIVE JUROR:  Yeah.  My concern is that my

17   English is not good enough to handle the legal stuff.  English

18   is not my native language.  I came to this country -- I mean,

19   for whatever has been going on in this court just now, I could

20   only follow maybe 80 or 85 percent.

21         THE COURT:  All right.  Thank you.  That's important

22   that you brought that to my attention.  If you're selected - and

23   you may not be selected - I give you the privilege of raising

24   your hand if you miss something and I'll have it repeated.

25   Actually, English was not my first language either, and most

1    people will tell you if they have enough contact with me, that

2    it's obvious.  That's after 60 years or 70 years.

3            All right, sir.  Thank you for bringing that to my

4    attention.  Remove your earphones for a moment, please.

5            PROSPECTIVE JUROR:  Thank you.

6            THE COURT:  Mr. Fitzpatrick?

7            MR. FITZPATRICK:  We would have no objection to

8    striking this juror.

9            MR. MACMAHON:  No objection, Your Honor.

10           THE COURT:  All right.  He's stricken.  One more.  Two

11   more after this.

12           Can you hear me?

13           PROSPECTIVE JUROR:  Yes.

14           THE COURT:  What is your name, please?

15           PROSPECTIVE JUROR:  Julie Bae.

16           THE COURT:  Yes, Ms. Bae.  What do you want to bring to

17   my attention?

18           PROSPECTIVE JUROR:  Yes, actually, my English is not

19   the clearest, so sometimes I can either misunderstand and

20   it's...yeah.

21           THE COURT:  All right.  What is your native language?

22           PROSPECTIVE JUROR:  Korean.

23           THE COURT:  All right.  And what's your occupation?

24   You're a financial professional?

25           PROSPECTIVE JUROR:  Yes.

1              THE COURT:  What do you do as a financial professional?

2              PROSPECTIVE JUROR:  I'm working at the National Life

3      Group with the -- I sell insurance and then tax saving plan.

4      But most of the client is Korean, so...

5              THE COURT:  All right.  Thank you, Ms. Bae.  You may

6      remove your earphones --

7              PROSPECTIVE JUROR:  Thank you.

8              THE COURT:  -- for a minute.  Stay there, but remove

9      your earphones.

10             Mr. Fitzpatrick?

11             MR. FITZPATRICK:  Same response, Your Honor.  No

12     objection if the juror is struck.

13             MR. MACMAHON:  No objection, Your Honor.

14             THE COURT:  Ms. Bae, you may step down.

15             Can you hear me?

16             PROSPECTIVE JUROR:  Yes, I can.

17             THE COURT:  May I have your name, please?

18             PROSPECTIVE JUROR:  Hatim Reta.

19             THE COURT:  Let me find your name here.  Give it to me

20     again, please.

21             PROSPECTIVE JUROR:  Hatim Reta.

22             THE COURT:  31, thank you.  Ah, yes, Hatim Reta.  Yes,

23     ma'am.  And what's your answer?

24             PROSPECTIVE JUROR:  My kids go to Fairfax County public

25     school, so next week is Spring Break so I may not have care for

1    Monday and Tuesday next week.  So I'm afraid I may not be able

2    to participate if I can on Monday and Tuesday next week, which

3    is the week of April 4th.

4         THE COURT:  What you're saying is you have two small

5    children and spring vacation is coming, and you are their sole

6    care provider?

7         PROSPECTIVE JUROR:  No, my husband also cares for them,

8    but he has to go to work on Monday and Tuesday next week.

9         THE COURT:  Well, can he stay home Monday and Tuesday

10   of next week while you serve on a jury for three weeks?

11        PROSPECTIVE JUROR:  I will ask him, but I'm not

12   100 percent sure.

13        THE COURT:  Well, what does your husband do?

14        PROSPECTIVE JUROR:  He's works for the World Bank as a

15   network engineer.

16        THE COURT:  All right.  How old are your children?

17        PROSPECTIVE JUROR:  Seven and nine.

18        THE COURT:  Good ages.

19        PROSPECTIVE JUROR:  Yeah.

20        THE COURT:  They still do what you tell them to do.

21        PROSPECTIVE JUROR:  They do, yeah.  They do sometimes.

22   Not all the time, but yeah.

23        THE COURT:  Be prepared.  The day is coming when they

24   won't.  Remove your earphones for a moment, please.

25        PROSPECTIVE JUROR:  All right.

```
 1              THE COURT:  Mr. Fitzpatrick, I think she could make
 2    other arrangements, but I'm not sure that it's a good thing to
 3    do.  But if the parties don't agree, I may well keep her on.
 4              What's your view, Mr. Fitzpatrick and Mr. MacMahon?  Do
 5    you want to discuss it?
 6              MR. FITZPATRICK:  I'll defer to Mr. MacMahon.
 7              MR. MACMAHON:  I was going to say, I'll defer to him.
 8    It's up to the Court, Your Honor.  If you want to excuse her, I
 9    won't object.
10              THE COURT:  I'm going to excuse her.  I think it's
11    difficult in a situation like this.  I could require it, but I
12    don't think it's good.
13              You may return to your seat.  Next.
14              Can you hear me, sir?
15              PROSPECTIVE JUROR:  Yes, Your Honor, I can.
16              THE COURT:  What is your name, please, sir?
17              PROSPECTIVE JUROR:  Russell Ruud.
18              THE COURT:  Yes, Mr. Ruud.  You're a software
19    developer?
20              PROSPECTIVE JUROR:  I am.
21              THE COURT:  And you work for SWIFT.  What is SWIFT?
22              PROSPECTIVE JUROR:  Society for Worldwide Interbank
23    Financial Telecommunication.
24              THE COURT:  About which, yes, we've heard a good deal
25    about SWIFT.  All right.  Go ahead, sir.
```

1           PROSPECTIVE JUROR:  So I relied on the kindness of two

2     other people to get me here this morning.  I have a broken toe,

3     and I probably should have come up when you said three to four

4     weeks.  But I was rationalizing that I could find some way to

5     get here.

6           THE COURT:  Where do you live?

7           PROSPECTIVE JUROR:  Manassas, right on the edge of the

8     district.  Prince William County.

9           THE COURT:  Well, Eastern District goes beyond that.

10          PROSPECTIVE JUROR:  A fair ways out, though.

11          THE COURT:  Can you make arrangements for someone to

12    drive you here?  A spouse, for example?

13          PROSPECTIVE JUROR:  I'm afraid not.  I have some people

14    that I could probably find a way to get me here, it would just

15    be difficult.  And I have an appointment for the broken toe next

16    week that I would prefer to be able to attend.  I don't know if

17    that's -- I don't know what the schedule of the court dates are,

18    if there was some time when I could get off during that week to

19    do that.

20          Also, I came because I would prefer not to be

21    disqualified, because I think this is important.  But this is

22    logistically difficult for me.

23          THE COURT:  How did you get here today?

24          PROSPECTIVE JUROR:  My housemate drove me to my

25    parents, and my mom drove me the rest of the way here.

```
 1              THE COURT:  I see.  Well, you may not be selected.  If
 2   you were, could your mother drive you every day?
 3              PROSPECTIVE JUROR:  Not likely.
 4              THE COURT:  It might bring back memories for her,
 5   driving her son every day.
 6              PROSPECTIVE JUROR:  Yes, as much as I would appreciate
 7   said memories.
 8              THE COURT:  All right.  Remove your earphones for a
 9   moment.
10              PROSPECTIVE JUROR:  Yes, sir.
11              THE COURT:  All right.  Mr. Fitzpatrick, Mr. MacMahon,
12   it's been 34-plus years.  I don't remember a broken toe in those
13   years, but it does seem to me that it presents a hardship for
14   him.  I assume he can't drive.  I didn't ask him, and I can do
15   that if you wish.
16              MR. FITZPATRICK:  No, Your Honor.  That's fine, we have
17   no objection if he's struck.
18              MR. MACMAHON:  No objection if he's struck, Your Honor.
19              THE COURT:  All right.  He's stricken.
20              You may step down.
21              Anyone else?
22              (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)
23              THE COURT:  Anyone else not have an opportunity to say
24   something that they wanted to say in response to the questions
25   I've asked?  And the record will reflect no hands.
```

1          The following persons may depart, with our thanks.  Let

2    me ask counsel.  As you know, I have reviewed what you provided

3    and I have conducted a voir dire that I think is adequate.  But

4    if there are any additional questions you think I should ask,

5    I'll put on the earphones, Mr. Fitzpatrick or Mr. MacMahon, and

6    I'll hear any other questions you think should be asked.

7          MR. FITZPATRICK:  Nothing further from the government.

8          MR. MACMAHON:  Same as before, Your Honor.  We would

9    prefer if you had asked all the questions in our voir dire.  I

10   would have one motion to strike.

11         THE COURT:  All right.  And I'll take that up right

12   now.

13         (BENCH CONFERENCE ON THE RECORD.)

14         MR. MACMAHON:  Juror number 48, I'm aware that in the

15   end he said he could be fair and impartial, but this is somebody

16   who works in the counterintelligence, counterterrorism field.

17         THE COURT:  For Lockheed Martin, as I recall.

18         MR. MACMAHON:  And Department of Defense and Department

19   of Homeland Security.  He appeared to know enough about ISIS to

20   be able to articulate what it was that he worked on or

21   otherwise.  And I just think that he's not an appropriate juror

22   in the case, that it's too close to know a lot of the issues

23   that may come up in this case.

24         THE COURT:  Mr. Fitzpatrick?

25         MR. FITZPATRICK:  Your Honor, I think at the end of his

1    dialogue with the Court he answered the question appropriately,

2    that he could be fair and impartial.  I mean, he works in

3    nondisclosure agreements in a contract position.  I don't know

4    if he's an analyst in the field currently.  He wrote a note in

5    law school, fairly common occurrence; obviously nothing that

6    disqualifies him from sitting on this jury panel.

7           THE COURT:  Mr. MacMahon, I don't see anything in the

8    answers to the questions I asked that would disqualify him.  I

9    don't think that someone who knows anything about ISIS is

10   disqualified, so I'm going to deny your motion to strike for

11   cause.

12          I have one question I'm going to ask another juror that

13   I missed.  So take your earphones off and I'll do that.

14          (END BENCH CONFERENCE.)

15          THE COURT:  Mr. White?  Is Mr. White here?  I'm not

16   sure I asked you.  We're going to bring a microphone to you.

17   Mr. White, I note that you're an attorney.  Is that correct?

18          PROSPECTIVE JUROR:  Yes, sir.

19          THE COURT:  And what is the nature of your law

20   practice?

21          PROSPECTIVE JUROR:  I'm an associate member of the

22   Virginia bar.  I don't practice actively.  I work at a law firm.

23          THE COURT:  You work where?

24          PROSPECTIVE JUROR:  I work at Wilmer Hale.

25          THE COURT:  But I take it you work as a lawyer?

1          PROSPECTIVE JUROR:  No, sir.  I work in the

2     administration of the firm.

3          THE COURT:  I see.  So you don't have an area of law

4     that you practice in?

5          PROSPECTIVE JUROR:  That's correct.

6          THE COURT:  Have you ever represented a person in a

7     criminal defense situation?  That is, have you ever been a

8     defense lawyer in a criminal case?

9          PROSPECTIVE JUROR:  No, Your Honor.

10          THE COURT:  Ever been a prosecutor?

11          PROSPECTIVE JUROR:  No, Your Honor.

12          THE COURT:  All right.  Is there anything about your

13     work as an executive officer at a law firm that would prevent or

14     hinder in any way from rendering a fair and an impartial verdict

15     in this case?

16          PROSPECTIVE JUROR:  No, Your Honor.

17          THE COURT:  Thank you.  You may be seated.  Put on the

18     earphone one last time.

19          (BENCH CONFERENCE ON THE RECORD.)

20          THE COURT:  Mr. Fitzpatrick, can you hear me?

21          MR. FITZPATRICK:  Yes, Your Honor.

22          THE COURT:  Mr. MacMahon, can you hear me?

23          MR. MACMAHON:  Yes, Your Honor.

24          THE COURT:  I'm going to now excuse the people I've

25     excused, and then I'm going to take a recess and I'm going to

1    have the court security officer bring everyone up from the

2    morning and the afternoon.

3            And then the next thing I will do is I will have the

4    deputy clerk call 12 names to sit in the jury box.  And then

5    you'll each have an opportunity to strike as many as you wish,

6    up to your limit of, I think it was nine for the government and

7    13 for the defendant.

8            I struck number 9.

9            MR. MACMAHON:  You struck number 9 from this morning,

10   Your Honor.

11           MR. FITZPATRICK:  That's correct.

12           (OFF THE RECORD.)

13           THE COURT:  Number 9 for this afternoon group, as I see

14   it, is a project manager for the CIA.  Did I ask him questions,

15   Mr. Fitzpatrick, relating to his business or his work at the

16   CIA?

17           MR. FITZPATRICK:  Your Honor, I think you may be

18   referring to another juror.  I believe number 9 is a female, and

19   I'm not sure we got into her specific work responsibilities.

20           THE COURT:  All right.  I did strike a person this

21   morning who was with the CIA.

22           MR. MACMAHON:  If I may, Your Honor.

23           THE COURT:  Yes.

24           MR. MACMAHON:  You struck juror number 6 this

25   afternoon, who is a CIA analyst.

1          THE COURT:  Yes, that's what I remember.  That's

2     Mr. Brown.

3          MR. MACMAHON:  Yes.

4          THE COURT:  Yes.  Any reason I need to ask...

5          (OFF THE RECORD.)

6          THE COURT:  All right.  Mr. Fitzpatrick, do you have

7     any problem with number 9, Crawford?

8          MR. FITZPATRICK:  No, Your Honor.

9          THE COURT:  Mr. MacMahon, any problem with number 9?

10         MR. MACMAHON:  On the list that I have, it doesn't say

11    that she works at the CIA.  But if she works at the CIA, I

12    wouldn't think it would hurt to ask her a few questions about

13    what she does.

14         THE COURT:  Yes, I think she does work at the CIA, so

15    I'll have her come forward.

16         MR. MACMAHON:  It doesn't say it on any of the

17    information I have, but out of an abundance of caution, I think

18    we should have her up here.

19         THE COURT:  Yes, I agree with you.

20         All right.  Number 9, Ms. Crawford, a hyphenated name

21    but it's scratched out on my list.  Who is that?  Yes, ma'am,

22    could you come forward, please?  Crawford-Murphy, yes, I see.

23         (INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

24         THE COURT:  I'm sorry, Ms. Crawford-Murphy, I should

25    have seen that in the first place.  Take a seat, for a moment,

1    if you would, please.  And put on the earphones if you would.

2              Now, Ms. Crawford-Murphy, can you hear me?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  For whom do you work?

5              PROSPECTIVE JUROR:  Central Intelligence Agency.

6              THE COURT:  Yes.  You're a project manager for the CIA?

7              PROSPECTIVE JUROR:  That's correct.

8              THE COURT:  And what do you do as a project manager for

9    the CIA?

10             PROSPECTIVE JUROR:  As an executive staff officer, I

11   manage the large scale organizational change.

12             THE COURT:  Do you have anything to do with the CIA's

13   work with respect to ISIS or the Kurds or Al-Qaeda or anything

14   like that?

15             PROSPECTIVE JUROR:  I do not.

16             THE COURT:  Tell me what it is, once again, you do.

17   I'm not familiar with that.

18             PROSPECTIVE JUROR:  I am, in reference, an executive

19   staff officer for the director's area.  So we manage HR learning

20   processes, or any project matter assigned by the director's

21   area.

22             THE COURT:  So is it fair to say that you don't have

23   anything to do with the development of intelligence or the

24   analysis of information or anything of that sort?

25             PROSPECTIVE JUROR:  That is correct.

1           THE COURT:  All right.  Would you remove your earphones

2      for a moment, please.

3           All right.  Mr. Fitzpatrick, I didn't hear anything

4      that raises any concerns about her ability to serve, and I will

5      ask her a final question to ensure she can serve.  But did you

6      have any more questions about her?

7           MR. FITZPATRICK:  No, Your Honor.  The government

8      thinks she's a suitable juror.

9           THE COURT:  Yes, I think the reason, Mr. MacMahon, is

10     that sometimes these lists are inadequate, and I ask for them to

11     add more information, and it did add CIA to her.  Now, have you

12     heard anything that causes you to request more information from

13     her?

14          MR. MACMAHON:  No, Your Honor.

15          THE COURT:  All right.  Then I'm going to ask her a

16     final question, and if she says she can serve as a fair and an

17     impartial juror, then we'll go ahead.

18          All right.  Mr. MacMahon, is that suitable?

19          MR. MACMAHON:  Yes, Your Honor.

20          THE COURT:  Ms. Crawford-Murphy, you heard a lot about

21     what this case is about.  Does any reason suggest itself to you

22     why you would not be able to serve as a fair and an impartial

23     juror in this case, and render a fair and an impartial verdict

24     based only on the evidence and the Court's instructions on the

25     law?

 1          PROSPECTIVE JUROR:  No.

 2          THE COURT:  Do you think you can be fair and impartial?

 3          PROSPECTIVE JUROR:  I can.

 4          THE COURT:  Thank you.  You may return to your seat.

 5          (END INDIVIDUAL VOIR DIRE BENCH CONFERENCE.)

 6          THE COURT:  I'm going to read that list one more time

 7   to counsel.  Put on your earphones one more time.

 8          (BENCH CONFERENCE ON THE RECORD.)

 9          THE COURT:  Mr. Fitzpatrick, are you on?

10          MR. FITZPATRICK:  Yes.

11          THE COURT:  Mr. MacMahon?

12          MR. MACMAHON:  I am, Your Honor.

13          THE COURT:  I'm going to read to you the list of people

14   I have stricken from this second panel so we're on the same

15   page.  And they are as follows:  Bae, B-A-E; Bourne, number 5 --

16   number 1, Bae; number 5, Bourne; number 6, Brown; number 8,

17   Counts; number 12, Edwards; number 13, Feliciano-Ruiz;

18   number 28, Novo; number 31, Reta; number 33, something Bunn;

19   number 34, Royston-Lee; number 40, Stefanova; number 42,

20   Terzaken.

21          Does that list comport with yours, Mr. Fitzpatrick?

22          MR. FITZPATRICK:  Court's indulgence.

23          THE COURT:  Yes.  I'll read it again if you wish.

24          MR. FITZPATRICK:  No, that's fine, Your Honor.

25   Your Honor, I believe juror 35.

178

 1          THE COURT:  Yes, you're quite right.  Ruud, number 35,

 2     is also stricken.

 3          MR. FITZPATRICK:  With that, Your Honor, I think that's

 4     correct.

 5          THE COURT:  Now, Mr. MacMahon, do you want me to read

 6     the list again?

 7          MR. MACMAHON:  No, Your Honor.  I think that's the same

 8     ones I had.

 9          THE COURT:  I'm going to excuse these people and then

10     we'll proceed.  The way we'll proceed is we'll excuse those

11     people, thank them, and I'll take a very brief recess, 10 or

12     15 minutes.  The court security officer will bring the others up

13     from the morning session and we'll proceed with the jury

14     selection.

15          Any questions?

16          MR. FITZPATRICK:  No, Your Honor.

17          MR. MACMAHON:  No, Your Honor.

18          (END BENCH CONFERENCE.)

19          THE COURT:  All right.  Ladies and gentlemen, I think

20     we have completed the voir dire.  As a result of the voir dire,

21     the following persons are excused:  Bae, Julie Jungeun Bae,

22     number 1; Bourne, Laurence Bourne; Brown, Stephan James Brown;

23     Counts, Jean Marie Counts; Edwards, Jimmy Edwards; 13,

24     Feliciano-Ruiz; 28, Novo; 31, Reta; 33, Rohrig-Bunn; 34,

25     Royston-Lee; 40, Stefanova; and 42, Terzaken; and number 35,

1    Ruud, William Russell Ruud.

2          All right.  Those of you whose names I read are

3    excused.  You may depart.  But I want you to depart knowing that

4    the Court very much appreciates your participation.  We could

5    not have proceeded without you in this case today.  Your

6    participation was essential.  Thank you.  You may depart.

7          The rest of you remain here for a moment.  Actually,

8    longer than a moment.  I'm going to take a recess now, and the

9    recess will be until 3:35.  And the purpose of the recess will

10   be to combine the morning and the afternoon sessions.  So a

11   group of people will come up who were here in the morning and

12   went through what you've been through this afternoon.  And then

13   from that, counsel will proceed, and we'll finish the jury

14   selection process.

15         The first thing that will happen when you return is

16   that the deputy clerk will call 12 names for people to come and

17   sit in the jury box, and then we'll proceed with the jury

18   selection.  But you're free now for the next -- 3:35, return at

19   3:35, and you may take that recess.  There are bathrooms on more

20   than one floor.

21         COURT SECURITY OFFICER:  Yes, sir.  Bathrooms on all

22   floors.

23         THE COURT:  You may do that.  Court stands in recess

24   until 3:35.

25         (Recess taken at 3:20 p.m.)

1          THE COURT:  Ladies and gentlemen, thank you for your

2    patience.  We're now at the final stage of jury selection.  A

3    good number of you survived the morning session and returned at

4    2:30.  The rest of you survived the afternoon session and are

5    now here to be combined with the morning group.

6          So the next thing that will happen is, I will have

7    Ms. Randall, the deputy clerk, call 12 names at random; you'll

8    come and sit in the jury box here, and the attorneys will have

9    an opportunity to exercise their peremptory challenges.  And

10   after we pick 12, then we will pick alternates.  And then we'll

11   be done for today, I think.  It may take a while.

12         All right.  The deputy clerk may proceed.

13         COURTROOM CLERK:  Ladies and gentlemen of the jury, as

14   I call your name, please come forward and have a seat in the

15   jury box as directed by the security officer.  Juror number 50,

16   Laurie Younger, 9 a.m. group; juror number 19, Dae Kang,

17   p.m. group; juror number 3, James Bailes, 9 a.m. group; juror

18   number 20, Alfred Keyser, p.m. group; juror number 33, Joseph

19   Pimenta, 9 a.m. group; juror number 41, Niamh Strei, p.m. group;

20   juror number 36, Jody Redeker, 9 a.m. group; juror number 30,

21   Mary Price, 1 p.m. group; Juror number 14, Anne Fay,

22   9 a.m. group; juror number 4, Enriqueta Bond, 1 p.m. group;

23   juror number 16, James Hanover, 9 a.m. group; and juror

24   number 47, Adrian White, 1 p.m. group.

25         (Prospective jurors seated in jury box.)

1      COURTROOM CLERK:  Will the following jurors please

2  return to their seats in the courtroom:  Juror number 19,

3  Dae Kang, p.m. group; juror number 4, Enriqueta Bond,

4  p.m. group; juror number 41, Niamh Strei, p.m. group; juror

5  number 33, Joseph Pimenta, 9 a.m. group; juror number 30,

6  Mary Price, 1 p.m. group; juror number 36, Jody Redeker,

7  9 a.m. group; and juror number 16, James Hanover, 9 a.m. group.

8      (Stricken jurors return to courtroom.)

9      COURTROOM CLERK:  Ladies and gentlemen of the jury, as

10  I call your name, please come forward and have a seat in the

11  jury box as directed by the security officer.  Juror number 29,

12  Wayne Phoel, 1 p.m. group; juror number 50, Esthar Zangeneh,

13  1 p.m. group; juror number 22, John Kugelman, 9 a.m. group;

14  juror number 26, Jennifer Murray, 1 p.m. group; juror number 40,

15  Amanda Thomas, 9 a.m. group; juror number 46,

16  Jeffrey Wallhermfechtel, 1 p.m. group; and juror number 30,

17  Camille Morrison, 9 a.m. group.

18      (Prospective jurors seated in jury box).

19      COURTROOM CLERK:  Will the following jurors please

20  return to their seats in the courtroom:  Juror number 40,

21  Amanda Thomas, 9 a.m. group; and juror number 46,

22  Jeffrey Wallhermfechtel, 1 p.m. group.

23      (Stricken jurors return to the courtroom.)

24      COURTROOM CLERK:  Ladies and gentlemen of the jury, as

25  I call your name, please come forward and have a seat in the

1    jury box as directed by the security officer:  Juror number 24,

2    Vicki Moffitt, 1 p.m. group; and juror number 25, Samantha Lee,

3    9 a.m. group.

4              (Prospective jurors seated in the jury box.)

5              COURTROOM CLERK:  Will the following juror please

6    return to your seat in the courtroom:  Juror number 25,

7    Samantha Lee, 9 a.m. group.

8              Ladies and gentlemen of the jury, as I call your name,

9    please come forward and have a seat in the jury box as directed

10   by the security officer.  Juror number 20, Anna Kinney,

11   9 a.m. group.

12             MR. FITZPATRICK:  Could you repeat that, please?

13             COURTROOM CLERK:  Juror number 20, Anna Kinney,

14   K-I-N-N-E-Y, 9 a.m. group.

15             (Prospective juror seated in the jury box.)

16             COURTROOM CLERK:  Will the following juror please

17   return to your seat in the courtroom:  Juror number 20,

18   Anna Kinney, 9 a.m. group.

19             (Stricken juror returns to the courtroom.)

20             COURTROOM CLERK:  Ladies and gentlemen of the jury, as

21   I call your name, please come forward and have a seat in the

22   jury box as directed by the security officer:  Juror number 43,

23   Amy Vernon, 9 a.m. group.

24             (Prospective juror seated in the jury box.)

25             COURTROOM CLERK:  Will the following juror please

1    return to your seat in the courtroom:  Juror number 43,

2    Amy Vernon, 9 a.m. group.

3           (Stricken jury returns to the courtroom.)

4           COURTROOM CLERK:  Ladies and gentlemen of the jury, as

5    I call your name, please come forward and have a seat in the

6    jury box as directed by the security officer:  Juror number 27,

7    Guirlene Marc, 9 a.m. group.

8           (Prospective juror seated in the jury box.)

9           COURTROOM CLERK:  Will the following juror please

10   return to your seat in the courtroom:  Juror number 27,

11   Guirlene Marc, 9 a.m. group.

12          (Stricken juror returns to the courtroom.)

13          COURTROOM CLERK:  Ladies and gentlemen of the jury, as

14   I call your name, please come forward and have a seat in the

15   jury box as directed by the security officer:  Juror number 17,

16   Harold Honegger, 1 p.m. group.

17          (Prospective juror seated in the jury box).

18          COURTROOM CLERK:  Will the following juror please

19   return to your seat in the courtroom:  Juror number 17,

20   Harold Honegger, 1 p.m. group.

21          (Stricken juror returns to the courtroom.)

22          COURTROOM CLERK:  Ladies and gentlemen of the jury, as

23   I call your name, please come forward and have a seat in the

24   jury box as directed by the security officer:  Juror number 29,

25   Mark Mooney, 9 a.m. group.

1          (Prospective juror seated in jury box).

2          COURTROOM CLERK:  Will the following juror please

3    return to your seat in the jury box -- I'm sorry, please return

4    to your seat in the courtroom:  Juror number 29, Mark Mooney,

5    9 a.m. group.

6          (Stricken juror returns to the courtroom.)

7          COURTROOM CLERK:  Ladies and gentlemen of the jury, as

8    I call your name, please come forward and have a seat in the

9    jury box as directed by the security officer:  Juror number 38,

10   Joseph Suitt, 9 a.m. group.

11         (Prospective juror seated in the jury box).

12         COURTROOM CLERK:  Will the following juror please

13   return to your seat in the courtroom:  Juror number 38,

14   Joseph Suitt, 9 a.m. group.

15         (Stricken juror returns to the courtroom.)

16         COURTROOM CLERK:  Ladies and gentlemen of the jury, as

17   I call your name, please come forward and have a seat in the

18   jury box as directed by the security officer:  Juror number 10,

19   Erica Denham, 1 p.m. group.

20         (Prospective juror seated in the jury box.)

21         THE COURT:  You may call an additional four -- six.

22   I'm sorry, six.

23         COURTROOM CLERK:  Ladies and gentlemen of the jury, as

24   I call your name, please come forward and have a seat in the

25   jury box as directed by the security officer:  Juror number 9,

1    Anita Crawford-Murphy, 1 p.m. group; juror number 14,

2    Mirenda Fields, 1 p.m. group; juror number 47, Richard Winters,

3    9 a.m. group; juror number 22, Gwendolin McCrea, 1 p.m. group;

4    juror number 17, Lewis Hoge, 9 a.m. group; and juror number 44,

5    Derryck Walker, 9 a.m. group.

6                (Prospective jurors seated in the jury box.)

7                COURTROOM CLERK:  Will the following jurors please

8    return to their seats in the courtroom:  Juror number 44,

9    Derryck Walker, 9 a.m. group; juror number 9,

10   Anita Crawford-Murphy, 1 p.m. group; and juror number 47,

11   Richard Winters, 9 a.m. group.

12               (Stricken jurors return to the courtroom.)

13               COURTROOM CLERK:  Ladies and gentlemen of the jury, as

14   I call your name, please come forward and have a seat in the

15   jury box as directed by the security officer.  Juror number 26,

16   Eileen Liles, 9 a.m. group; juror number 39, Ralph Stallings,

17   1 p.m. group; and juror number 7, Laura Buschman, 1 p.m. group.

18               THE COURT:  It appears that counsel have either

19   exhausted their strikes or do not wish to take any more strikes.

20   Is that right, Mr. Fitzpatrick?

21               MR. FITZPATRICK:  Yes, Your Honor.

22               THE COURT:  And Mr. MacMahon?

23               MR. MACMAHON:  Yes, we exhausted our strikes,

24   Your Honor.

25               THE COURT:  All right.  You may swear the jury.

1          COURTROOM CLERK:  Will the defendant please stand and

2     face the jury.

3          Ladies and gentlemen of the jury, please stand and

4     raise your right hands.  You shall well and truly try, and true

5     deliverance make between the United States of America and

6     El Shafee Elsheikh, the defendant at the bar, whom you shall

7     have in charge, and a true verdict give, according to the

8     evidence, so help you God?

9          PROSPECTIVE JUROR:  (Collectively) I shall.

10          COURTROOM CLERK:  Thank you.  Please be seated.

11          THE COURT:  Ladies and gentlemen, I'm now able to

12     excuse the remainder of you.  I want to thank you for your

13     participation.  We could not have proceeded without your

14     participation here today, and for that we thank you.  You're

15     free now to leave, and I will see that you're not called soon in

16     the future.  You've served already a full day.  You may depart

17     at this time.

18          I have indicated there are people from the public in

19     the courtroom upstairs.  They may now come down here.  I think I

20     will take a 5-minute recess to allow that to occur, and then

21     I'll proceed to give you some preliminary instructions to guide

22     you in your participation in this trial.

23          I also want to fix a time of reporting in the morning,

24     and I want to know whether any of you have any child care

25     responsibilities that would be necessary to excuse you at 5:00.

187

1   Do any of you have such problems?  You do.  Do you have to be

2   released sharply at 5:00?

3            JUROR:  5:30.  It closes at 6:00.  I'm local.

4            THE COURT:  I may ask you to make other arrangements in

5   the future, because we may want to go sometimes to 5:30 or 6:00,

6   just to get things done.

7            Anyone else have a problem?  How about in the morning?

8   Some of you may come from some substantial distance away, and

9   getting here in the morning at 9:00 might be difficult.  Good.

10           JUROR:  I live in Fredericksburg.

11           THE COURT:  That's a problem.  Would 9:30 help you?

12           JUROR:  I can try and get here at 9:00, but, you know,

13   if there's a wreck on the interstate or something...

14           THE COURT:  Yes, of course.  Well, we would accommodate

15   that.

16           JUROR:  I live in Loudoun, the western part of Loudoun,

17   in Purcellville.

18           THE COURT:  Would it be a hardship to get here at 9:00?

19           JUROR:  Probably not, but if there's traffic...

20           THE COURT:  Of course we will accommodate any crashes.

21   Do you have to navigate 66?

22           JUROR:  No, I go the Greenway.

23           THE COURT:  How about you?

24           JUROR:  Straight up 95.

25           THE COURT:  That's even worse.  We will plan on

1    somewhere in the vicinity of between 5:00 and 6:00, and 9:00 in

2    the morning for now.

3           But we're going to take a recess now.  Now, during the

4    recess you are not to discuss the case among yourselves or with

5    anyone, or undertake any investigation on your own.  And that's

6    true for the duration of this.  You are not to discuss the

7    matter with anyone, and you are not to look up anything in books

8    or the internet.

9           When I first began presiding over cases, now nearly

10   35 years ago, I had a long list of references I would tell the

11   jury, don't look at this, don't look at that.  Well, of course,

12   nobody looks at books anymore, it's just those of us from that

13   generation that do that.

14          Don't look up anything on the internet.  Don't look up

15   anybody's name or anything else.  Because you're to decide the

16   case solely on the basis of the evidence presented here and the

17   Court's instructions on the law.  So don't undertake any

18   investigation on your own and don't do -- don't talk to anybody

19   about this case.

20          And there may well be people who want to talk to you

21   about it.  For example, there may be journalists outside, and

22   they will want to say something to you, ask you a question.

23   That's their job.  But it's wrong, from us.  We can't do that.

24   If they give you a problem, you let me know and I will have the

25   marshals take care of it.  Because they cannot pester you.  And

1    they know that, but they also have a job to do and they try to

2    do it.

3              All right.  I was going to take a brief recess, but do

4    we have everyone here from the 10th floor?

5              COURT SECURITY OFFICER:  As far as I know, Your Honor.

6              THE COURT:  All right.  Now that you've been sworn,

7    ladies and gentlemen, I'm going to give you some preliminary

8    instructions to guide you in your participation in this trial.

9    It will be up to you, and it will be your duty to find from the

10   evidence what the facts are.  You and you alone will be the sole

11   judges of the facts of this case.

12             You will then have to apply to the facts, as you find

13   them from the evidence in the case, the law that the Court will

14   give to you in the form of instructions at the end of the case.

15   And you must follow that law whether you agree with it or not.

16   Nothing the Court may say or do during the course of the trial

17   is intended to indicate, nor should it be taken by you as

18   indicating, what your verdict should be.  What your verdict is

19   is your sole and exclusive duty and responsibility.

20             Now, the evidence from which you may find the facts of

21   the case will come from the testimony of the witnesses, who will

22   testify from the witness stand directly across from you.  If you

23   look across, you'll see the witness stand some of you have

24   already sat in.

25             And the facts will also be determined by documents and

1    other things received into the record as exhibits.  And the

2    lawyers may agree or stipulate to certain facts, and any facts

3    that the lawyers may agree or stipulate to may be taken by you

4    and considered in arriving at your verdict.  So any facts that

5    the lawyers agree or stipulate to, or that the Court may

6    instruct you to find, may be considered and reviewed by you in

7    finding what the facts are.

8            There are certain matters that are not facts and must

9    not be considered by you.  Let me list those for you now.

10   First, the lawyers' statements.  The lawyers' arguments and the

11   lawyers' questions by themselves are not evidence; it is the

12   answers that are evidence to the questions.  So you should not

13   take the arguments and the statements and questions alone by the

14   lawyers as evidence.  They are not evidence.

15           Objections to questions are not evidence.  Lawyers have

16   an obligation to their client to make an objection when they

17   believe evidence is being offered that is contrary to the rules

18   of evidence.  You should not be influenced by the objection or

19   by the Court's ruling on it.  If the objection is sustained,

20   ignore the question.  If the objection is overruled, then you

21   may treat the answer to that question just as you would treat

22   the answer to any other question.

23           Testimony that the Court excludes or tells you to

24   disregard is not evidence and must not be considered by you.

25   And anything you may have seen or read or heard outside the

1    courtroom is not evidence and must be disregarded.  You're to

2    decide the case solely on the basis of the evidence presented

3    here in the courtroom.

4           And you will hear me every evening instruct you not to

5    discuss the matter with anyone, including your family members.

6    You'll hear me tell you tonight that your family members will be

7    very curious about what you've been doing today.  They'll want

8    to know all about it.  They'll ask you questions; you will be

9    tempted to answer those questions.  Avoid or resist the

10   temptation.  Don't answer the questions.  Simply tell them that

11   the judge has told you that you may not discuss the matter while

12   the case is being tried.

13          Now, when the case is over and we have a verdict, I

14   will give you some guidance then.  But you'll be free to speak

15   to whomever you please at that point in time.  I'll give you

16   some cautions about that.  In fact, I'll do it now, because I'll

17   do it again.

18          I'm always disturbed when I see in the media jurors

19   discussing what went on in the course of deliberations.  I think

20   when they do that, it does an injury to the deliberative

21   process.  When jurors exchange views in the course of their

22   deliberations, I think they do it expecting confidentiality.

23   They don't expect that everything they say and do is going to be

24   brooded about in the media.

25          So I think it's fair to say, and I will suggest it to

1   you -- I'm not going to issue an order, but I will suggest to

2   you that you have a duty of confidentiality to your fellow

3   jurors as to what went on in the course of deliberations.  But

4   it is a choice for you to make.

5          Now, let me go on.  There are two kinds of evidence

6   from which you may find the facts of this case.  There is direct

7   evidence and circumstantial evidence.  Direct evidence is direct

8   evidence of a fact, such as the testimony of an eyewitness to an

9   event.  Circumstantial evidence is other evidence which leads

10  you to believe that a fact has been shown.  It's proof of facts

11  from which you may infer or conclude that other facts exist.

12         I'll give you further instructions on these as well as

13  other matters at the end of the case, but for now you should

14  have in mind that you may consider both kinds of evidence, both

15  direct evidence and circumstantial evidence.

16         Now, it will be up to you to decide which witnesses to

17  believe, which witnesses not to believe -- which witnesses to

18  believe, which witnesses not to believe, and how much of each

19  witness' testimony to accept or reject.  You and you alone are

20  the sole judges of the credibility of the witnesses and the

21  weight and effect of their testimony.  And, as I said, I'll give

22  you further instructions on these as well as other matters at

23  the end of the case.

24         Now, as you know, this is a criminal case, and there

25  are three basic rules about a criminal case that you must keep

1    in mind.  First, the defendant is presumed innocent until proven

2    guilty.  The indictment against the defendant, as I told you

3    earlier, brought by the government, is only the formal means of

4    accusation.  It's nothing more.  It's not proof of guilt or

5    evidence of any kind.  The defendant therefore starts out with a

6    clean slate.

7         Second, the burden of proof is always on the government

8    until the end of the case.  The defendant has no burden to prove

9    his innocence, or to present any evidence or to testify.  And

10   since the defendant has the right to remain silent, the law

11   prohibits you, in arriving at your verdict, from considering

12   that the defendant may not have testified.

13        Now, the third rule for a criminal case is that the

14   government must prove a defendant's guilt beyond a reasonable

15   doubt.  And I'll give you further instructions on this point

16   later, but bear in mind that in this respect, a criminal case is

17   different from a civil case, which requires only a preponderance

18   of the evidence.

19        Now let me give you a few words about your conduct as

20   jurors.  First, I instruct you that during the trial, you are

21   not to discuss the case among yourselves or with anyone else.

22   And not until you retire to the jury room at the end of the case

23   to deliberate on your verdict are you to discuss the case among

24   yourselves.  Until then, you're simply not to talk about the

25   case.

1          And you're not to read or listen to anything touching

2     on the case in any way.  Avoid media reports on the case.

3     Remember, that's not evidence.  It's only what you see and hear

4     presented here this the courtroom that is the evidence in the

5     case.

6          If anyone should try to talk to you about it, bring it

7     to the Court's attention promptly and do not talk to them about

8     it.  It may be -- we'll figure out a way to do this, but there

9     may be media representatives outside who will do their best to

10    accost you once they identify you're on the jury and get you to

11    say something.  Do not talk to them.  And if it becomes a

12    problem, the court security officer and the deputy marshals will

13    escort you and we'll make sure nobody bothers you.  If you have

14    any trouble with that, let me know.  I'll take care of it.

15         Next, do not undertake any research or make any

16    investigation about the case on your own.  Don't look up

17    anything.  I had a case some years ago, not many years ago,

18    after computers became a way of life, and I found out that a

19    juror had looked up my name on the internet.  He was very

20    disappointed.  He was even more disappointed when I chastised

21    him for it.  Don't do it.  It is not part of this case.

22         Now, do not form any opinion on the case until all the

23    evidence is in.  Keep an open mind until you start your

24    deliberations at the end of the case.  And I am going to permit

25    you, of course, to take notes.  Tomorrow when you appear, there

1     will be booklets prepared with your name on them.

2             COURT SECURITY OFFICER:  Sir, they're under their

3     chairs right now.

4             THE COURT:  Their names are on them?

5             COURT SECURITY OFFICER:  No, but the books are there.

6             THE COURT:  Well, either we'll put the names on them

7     and we'll give them to the court security officer to hand out

8     tomorrow.  We'll put your names on there.  And you're at liberty

9     to take as many or as few notes as you wish.  And nobody is

10    going to look at your books.  I won't look at them, the court

11    security officer won't, nobody will.  I won't permit anybody to

12    look at them.  Only you will look at them.  And, as I said, you

13    may take as many notes or as few notes as you wish.

14            And you may wish to take notes about what a particular

15    witness said, and whether you were impressed with the witness or

16    not impressed or whatever.  And there will be somewhere in the

17    neighborhood of 30 to 40 witnesses, so you may wish to do that,

18    and you're forewarned in that regard.  And at the end of the

19    day, the books will be collected.

20            And, indeed, at each recess you'll hear the familiar

21    litany from me about refraining from discussing the matter among

22    yourselves or with anyone, or undertaking any investigation.

23    And the court security officer will either collect your books or

24    your books will be placed -- is there a cubbyhole in there?

25            COURT SECURITY OFFICER:  Yes, sir.

 1            THE COURT:  All right.  There will be a place for you

 2    to put your books in there at the recess.

 3            Of course, at the end of the trial you can take your

 4    books home.  You can do with them whatever you wish, throw them

 5    in the trash can or keep them as a keepsake.  Do whatever you

 6    want.  If we catch anybody trying to look at them, we'll take

 7    care of it.  They're your private books.  You do with them as

 8    you wish.  Nothing, if you wish.  Leave it blank.  It's entirely

 9    up to you.

10            Now, tomorrow, when the trial begins, the government

11    will have an opportunity to make its opening statement.  An

12    opening statement is neither evidence nor argument.  It is a

13    forecast of what the government intends to offer, and it's

14    offered to you to help you follow the evidence as it is

15    presented.  So you will hear -- who's going to do it,

16    Mr. Fitzpatrick?

17            MR. GIBBS:  It will be me, Judge.

18            THE COURT:  And you will hear him say several times,

19    "We will present evidence that," or, "You will hear evidence

20    that," or, "We're going to present a particular witness and

21    he'll tell you or she'll tell you this."  And that's what an

22    opening statement typically is for.  If I have people making

23    arguments, I will gently - I'll attempt to do it gently - tell

24    them to remember it's an opening statement and not argument.  So

25    the government will make its opening statement.  Then the

1    defendant has the opportunity to make an opening statement, but

2    the defendant isn't required to.

3            After that, the government will present its witnesses,

4    and the defense will have an opportunity to cross-examine those

5    witnesses.  And following that, the defendant may, if he wishes,

6    present witnesses.  He's not required to, but if he wishes to,

7    he may.  And the government may cross-examine those.

8            And after that, I will give you final instructions and

9    permit you to deliberate on your verdict.  The opening

10   statements will be on the order of 30 minutes to an hour.  I

11   can't be any more precise than that at this time.

12           Now, there will be evidence presented that will be

13   documentary, or evidence on these repeaters.  I think it should

14   be visible to everyone.  And you'll have the exhibits with you,

15   or the opportunity to review exhibits with you when you retire

16   to deliberate in the jury room.

17           Now, after the lawyers make their closing arguments, I

18   will give you final instructions on the law and permit you to

19   retire and deliberate on your verdict.

20           Now, tomorrow your lunches will be provided.  And, in

21   fact, I think you will be given menus tonight to indicate what

22   you would like.  As I may have suggested to you earlier, don't

23   spend a lot of time looking for the Baked Alaska or the Pheasant

24   Under Glass or the New York strip.  But at least it will be

25   nourishing in some ways.  And we'll have soft drinks available

1    for you for recesses and that sort of thing.

2           And I will take probably one recess in the morning, one

3    recess in the afternoon, mid morning, mid afternoon.  But I give

4    you the privilege of asking or calling for a recess at any other

5    time for a truly exigent reason.  If you really need a recess,

6    give me the sports "time" signal, or raise your hand, and I will

7    give you the recess and I will not ask you the reason for it.

8    I'll give you that privilege.  But I ask you not to avail

9    yourself of that privilege unless it's truly necessary to do so.

10          Now, anything further this evening, Mr. Fitzpatrick or

11   Mr. MacMahon?

12          MR. FITZPATRICK:  Not for the government, Your Honor.

13          MR. MACMAHON:  Not for the defense, Your Honor.

14          THE COURT:  All right.  Ladies and gentlemen, you may

15   now go home.  As I said, you'll get a chance to mark the menus

16   in here.  The books -- we'll put your names on the books and put

17   them in the cubbyholes tonight, and you'll get them tomorrow.

18   You will put your names on the booklets and you can choose which

19   cubbyhole you want in there.

20          What else?  Ordinarily the jury room is right here, but

21   we're going to allow you to use the larger area both as a

22   concession to the tail end of the pandemic, and also it doesn't

23   jam you up together.

24          And same seats tomorrow, if you would.  Remember your

25   seats.  Put your names on the books now, and when you go out,

1    you'll file out with the court security officer.  He'll show you

2    where the cubbyholes are.  You pick one and put it in there.

3         All right.  Good evening, and I will see you tomorrow

4    morning at 9 o'clock.

5         (Jury out at 4:55 p.m.)

6         THE COURT:  Anything further to be accomplished in this

7    matter this evening?  Let me see, I had the first two rows back

8    there for the families of the victims.  Is that adequate?

9         MR. FITZPATRICK:  Seems to be working well, Your Honor,

10   yes.

11        THE COURT:  If you need any more, you can spill over to

12   the two rows here.  And the first row entirely should be vacant,

13   as a security matter, for the time being.

14        MR. FITZPATRICK:  Understood.

15        THE COURT:  Anything else to be accomplished in this

16   matter today, Mr. Fitzpatrick?

17        MR. FITZPATRICK:  Not from the government, Your Honor.

18        THE COURT:  Mr. MacMahon?

19        MR. MACMAHON:  Not from the defense, Your Honor.  Thank

20   you.

21        THE COURT:  I thank counsel for your cooperation.

22   Court stands in recess until 9 o'clock tomorrow morning.

23        (Off the record at 4:56 p.m.)

24

25

1                    **CERTIFICATE OF OFFICIAL COURT REPORTER**

2

3          I, Rebecca Stonestreet, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter.

6

7

8

9    ___//Rebecca Stonestreet//___              __11/7/22_____

10   SIGNATURE OF COURT REPORTER                 DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25